Deborah J. Fox (SBN: 110929)
dfox@meyersnave.com
David Mehretu (SBN:269398_
dmehretu@meyersnave.com
Kristof D. Szoke (SBN: 331561)
kszoke@meyersnave.com
MEYERS NAVE
707 Wilshire Blvd., 24th Floor
Los Angeles, California 90017
Telephone: (213) 626-2906
Facsimile: (213) 626-0215

Attorneys for Defendant
SOUTHERN CALIFORNIA
ASSOCIATION OF GOVERNMENTS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| CITY OF HUNTINGTON BEACH, a California Charter City, and Municipal Corporation, the HUNTINGTON BEACH CITY COUNCIL, MAYOR OF HUNTINGTON BEACH, TONY STRICKLAND, and MAYOR PRO TEM OF HUNTINGTON BEACH, GRACEY VAN DER MARK,<br><br>           Plaintiffs,<br><br>       v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California, and individually; GUSTAVO VELASQUEZ in his official capacity as Director of the State of California Department of Housing and Community Development, and individually; STATE LEGISLATURE; STATE OF CALIFORNIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT; SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS; and DOES 1-50, inclusive,<br><br>           Defendants. | Case No. 8:23-cv-00421<br><br>**SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS' (SCAG) OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Crtrm.:   10D<br>Hon. Fred W. Slaughter<br><br>Trial Date:  None Set |

Case No. 8:23-cv-00421

SCAG'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND/OR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................... 1

II.     BRIEF SUMMARY OF SCAG'S RHNA PROCESS .................................... 1

III.    LEGAL STANDARD .................................................................................... 3

IV.     ARGUMENT ................................................................................................. 4

    A.     Huntington Beach Will Not Prevail on the Merits. ............................. 4

        1.     Huntington Beach Lacks the Alleged Constitutional Protections As A Matter of Law. ............................................ 4

        2.     Huntington Beach's Claims Are Likely To Be Dismissed Under *Younger* Abstention. .......................................... 5

    B.     Huntington Beach Will Not Suffer Irreparable Harm ......................... 6

    C.     Huntington Beach Fails to Meet the Remaining Elements for A TRO. ............................................................................................ 8

V.      CONCLUSION .............................................................................................. 8

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SCAG'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND/OR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

## I.    INTRODUCTION

The City of Huntington Beach Plaintiffs' application for a Temporary Restraining Order (TRO) should be denied because it is based on the fundamentally flawed legal premise that the U.S. Constitution's Free Speech and Due Process protections protecting persons (such as private individuals) extend to cities and town – i.e., the State's own political subdivisions.  However, under bedrock constitutional law, Huntington Beach – including its officials acting in their official capacity – have no constitutional protections from the State. This alone invalidates and undermines all of Huntington Beach's federal claims in this case. As such, Huntington Beach's application for a TRO must fail because Huntington Beach cannot establish that it is likely to prevail on the merits.

Huntington Beach also fails to establish that it will suffer an irreparable injury to support this extraordinary relief.  This is because, *inter alia*, Southern California Association of Governments (SCAG) has no enforcement powers over Huntington Beach nor ability to levy fines.

In sum, as more fully discussed below, Huntington Beach's TRO application should be denied.[1]

## II.    BRIEF SUMMARY OF SCAG'S RHNA PROCESS

California is suffering from a prolonged and dire housing crisis.  The housing shortage continues to intensify with almost daily reports of an increasing population of unhoused residents, skyrocketing housing costs, and people making difficult choices to relocate both within and outside the State to find more affordable housing.  The Legislature has recognized this ongoing problem and declared that increasing the supply of housing is of vital statewide importance of the very highest priority.  (*See* Cal. Gov't Code §§ 65580(a)

---

[1] After serving its complaint on SCAG at SCAG's headquarters in Los Angeles, Huntington Beach only served its TRO application packet and the Court's Minute Order on SCAG at one of its regional addresses, a location that consists of nothing more than a rented room.  As a result, SCAG only became aware of the Minute Order late this morning.

SCAG'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND/OR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

and 65581(a).)  The process enacted by the Legislature to address this high priority need for new housing is known as the Regional Housing Needs Assessment and is codified at Government Code § 65580 *et seq.* ("the RHNA Statute").  The RHNA Statute requires state, regional and local government entities to work together in an integrated process to provide and plan for new housing.  (*See id.*)

Huntington Beach's federal lawsuit tries to offer an untimely and legally flawed attack on the multi-tiered RHNA process.  The Legislature, however, designed the RHNA Statute to be immune from judicial review, to ensure that the vital need to provide for new housing is not bottlenecked or derailed by litigation.  Huntington Beach pursues this misguided effort to avoid its RHNA allocation of some 13,368 units that it received back in 2021, as part of a regional determination of 1,341,827 housing units that the California Department of Housing and Community Development ("HCD") allocated to the 6-County SCAG region for the 2021-2029 planning period known as the "6th RHNA Cycle."

Huntington Beach is just one of over 197 member jurisdictions located within SCAG's region which has a population in excess of 19 million residents.  This is exactly why the Legislature determined that SCAG's RHNA decisions are immune from judicial review.  (*See* Gov't Code §§ 65584, 65584.04, 65584.05, and 65585.)  The process called out in the RHNA Statute is the exclusive remedy for government entities (such as Huntington Beach) to challenge the RHNA numbers.  (*See id.*)

The already completed 6th Cycle RHNA has consumed hundreds of hours of SCAG's, and its constituent cities' and counties', time and efforts, including extensive public comment, stakeholder outreach and a multi-step review process with HCD.  SCAG's member jurisdictions have been using these RHNA figures in drafting the housing elements of their general plans which were required to be completed back in October 2021 as part of the 6th RHNA cycle.  The Legislature eliminated traditional judicial remedies for challenges to RHNA numbers at any step of the lengthy and integrated housing process.  (*See* Gov't Code § 65580 et seq.; *see also City of Irvine*, 175 Cal.App.4th at 513-516; *City of Coronado*, 80 Cal.App.5th at 41-43.)  Finding otherwise – through a federal action and request for a

1    TRO – would cripple the ability of the RHNA process to address the dire housing shortage

2    by creating both uncertainty and delay in planning for new housing.

3           In any event, Huntington Beach's application for a TRO – based on its improper

4    RHNA challenge for which courts lack jurisdiction – should be denied because Huntington

5    Beach fails to establish the elements of a TRO in the Ninth Circuit.

6    **III.    LEGAL STANDARD**

7           The purpose of a TRO is to preserve the status quo before a preliminary injunction

8    hearing may be held; its provisional remedial nature is designed merely to prevent

9    irreparable loss of rights prior to judgment.  (*Granny Goose Foods, Inc. v. Brotherhood of*

10   *Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974).)  The legal standard that applies

11   to a motion for a TRO is the same as a motion for a preliminary injunction.  (*See Stuhlbarg*

12   *Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001).)  To obtain a

13   TRO or preliminary injunction, the moving party must show: (1) a likelihood of success on

14   the merits; (2) a likelihood of irreparable harm to the moving party in the absence of

15   preliminary relief; (3) that the balance of equities tips in the moving party's favor; and (4)

16   that an injunction is in the public interest.  (*Winter v. Natural Res. Def. Council, Inc.*, 555

17   U.S. 7, 20 (2008).)  Injunctive relief is "an extraordinary remedy that may only be awarded

18   upon a clear showing that the plaintiff is entitled to such relief" (*Winter*, 555 U.S. at 22), and

19   the moving party bears the burden of meeting all four *Winter* prongs.  (*See DISH Network*

20   *Corp. v. FCC*, 653 F.3d 771, 776-77 (9th Cir. 2011).)  Consistent with this overriding

21   concern, the Ninth Circuit has stated that there are "very few" circumstances justifying the

22   issuance of an ex parte TRO.  (*Reno Air Racing Ass'n, Inc. v. McCord*, 452 F.3d 1126, 1131

23   (9th Cir.2006) (notice may be excused where it "is impossible either because the identity of

24   the adverse party is unknown or because a known party cannot be located in time for a

25   hearing," or where "the adverse party would dispose of evidence if given notice.").)

26   //

27   //

28   //

## IV.    ARGUMENT

### A.    Huntington Beach Will Not Prevail on the Merits.

#### 1.    Huntington Beach Lacks the Alleged Constitutional Protections As A Matter of Law.

Huntington Beach claims that the State's RHNA requirements force Huntington Beach to adopt certain state-mandated speech and that this violates the First Amendment and Due Process Clauses of the U.S. Constitution.  Huntington Beach is wrong.

Under bedrock constitutional law, Huntington Beach lacks the Free Speech and Due Process protections from State regulation that it claims.  Specifically, Local governments and state agencies have no First Amendment – or other constitutional – rights against state governments, because the state is entitled to control the conduct of its subdivisions; likewise, federal agencies have no First Amendment rights against the federal government. (*See Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 139 (1973) (Stewart, J., concurring) ("The First Amendment protects the press from governmental interference; it confers no analogous protection on the government"); *id*., at 139, n. 7 ("[the] Government is not restrained by the First Amendment from controlling its own expression.") (*See also Muir v. Alabama Educ. Television Comm'n*, 688 F.2d 1033, 1037 (5th Cir. 1982) (en banc) ("the First Amendment does not preclude the government from exercising editorial control over its own medium of expression"); *Serra v. U.S. Gen. Servs. Admin*., 847 F.2d 1045, 1048 (2d Cir. 1988) ("the Government may advance or restrict its own speech in a manner that would clearly be forbidden were it regulating the speech of a private citizen.); *NAACP v. Hunt*, 891 F.2d 1555, 1565 (11th Cir. 1990); *Student Government Ass'n v. Board of Trustees of the Univ. of Mass*., 868 F.2d 473, 481 (1st Cir. 1989); *Estiverne v. Louisiana State Bar Ass'n*, 863 F.2d 371, 377 n.8 (5th Cir. 1989); *Warner Cable Comm. v. City of Niceville*, 911 F.2d 634, 638 (11th Cir. 1990); *Aldrich v. Knab*, 858 F. Supp. 1480, 1491 (W.D. Wash. 1994).

4

Case No. 8:23-cv-00421
SCAG'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND/OR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

1  **2.    Huntington Beach's Claims Are Likely To Be Dismissed Under**
2     ***Younger* Abstention.**

3       Even if Huntington Beach had protectable constitutional interests here (it doesn't), it
4  is also unlikely to prevail on the merits because the Court should dismiss these proceedings
5  under the *Younger* doctrine of abstention due to the vital state housing interests at stake.

6       *Younger* abstention avoids unnecessary friction in state-federal relations when parties
7  on one side of a dispute file suit in state court and opposing parties file factually related
8  proceedings in federal court.  *United States v. Morros*, 268 F3d 695, 707 (9th Cir. 2001).  Its
9  purpose "is to avoid unnecessary conflict between state and federal governments."
10  (*Ibid*.)  *Younger* abstention is fully appropriate and necessary in the present circumstances,
11  where state court proceedings are (i) pending when the federal action is filed; (ii) implicate
12  important state interests; and (iii) provide adequate opportunity to raise the federal claims.
13  *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 US 423, 431 (1982).

14       With respect to parallel proceedings, *Younger* abstention is properly invoked if the
15  state proceedings were initiated "before any proceedings of substance on the merits have
16  taken place in the federal court."  *Hawaii Housing Auth. v. Midkiff,* 467 US 229, 238 (1984).
17  Here, the State of California and the California Department of Housing and Community
18  Development filed suit in Orange County Superior Court against Huntington Beach and its
19  officials on March 8, 2023 seeking a writ of mandate due to their failure to comply with state
20  housing laws.  A day later, on March 9, 2023, Huntington Beach filed the instant action in
21  this Court.  Huntington Beach's decision to bolt to federal court was clearly a response to
22  the State's earlier-in-time suit in Superior Court.

23       With respect to important state interests, California's pressing commitment in
24  ensuring cities are in compliance with state housing laws and not skirting their obligations
25  to build additional and badly-needed housing fully justifies abstention.  A wide variety of
26  state interests qualify as "important" for purposes of *Younger* abstention.  *See Ohio Civil*
27  *Rights Comm'n v. Dayton Christian Schools, Inc*., 477 US 619, 625-629 (1986).  Such vital
28  interests include education, family relations, property law, environmental regulations, and

matters relating to public health, including regulation of health care providers.  *See Harper v. Public Service Comm'n of West Va.*, 396 F3d 348, 352-353 (4th Cir. 2005) (collecting cases).)  The state court action easily invokes such critical interests.

Finally, the earlier parallel state proceedings in Orange County Superior Court provide Huntington Beach full opportunity to litigate its federal claims in state court.  State court proceedings are presumed adequate to raise the federal claim "in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.,* 481 US 1, 15 (1987); *Communications Telesystems Int'l v. California Pub. Utility Comm'*n, 196 F3d 1011, 1020 (9th Cir. 1999) (state judicial review deemed adequate despite court's practice of summarily denying petitions for review of CPUC decisions.)  Both suits are factually intertwined and relate to Huntington Beach's refusal to comply with valid California law.

## B.    Huntington Beach Will Not Suffer Irreparable Harm

In addition to the fact that Huntington Beach cannot prevail on the merits as a matter of law, Huntington Beach will not suffer irreparable harm unless the Court grants a TRO for numerous reasons.

First, Huntington Beach seeks an order from the Court "preventing the Defendants from taking any enforcement or punitive action against the City…during the pendency of this lawsuit." (TRO, 30:25-28.)  However, SCAG does not have any enforcement authority or ability to fine or punish Huntington Beach.

Second, even if SCAG could impose fines and other monetary penalties against the City (which it can't), it is well-established that monetary damages do not constitute irreparable harm and will not support the issuance of a TRO.  *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) (Monetary harm is not irreparable because money damages usually provide adequate compensation for monetary harm).

Third, Huntington Beach does not identify any *imminent* harm.  Rather, it merely points to potential harm – such as increased litigation with developers and housing rights organizations – that might occur at some yet to be identified future date.  However, a plaintiff

must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief. *Caribbean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

Fourth, the non-monetary harms that will allegedly befall the City in the event a TRO is not issued are also entirely speculative.  For example, Huntington Beach claims that in the event RHNA is enforced, Huntington Beach will be subjected to lawsuits from housing rights organizations and developers.  However, "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction." *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).)  "Subjective apprehensions and unsupported predictions ... are not sufficient to satisfy a plaintiff's burden of demonstrating an immediate threat of irreparable harm." *Id.* at 675–76.

Finally, equitable relief – such as the TRO Huntington Beach seeks here – is precluded where the party requesting such extraordinary relief is itself at fault for creating any alleged urgency to obtaining relief. *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F.Supp. 488, 492 (C.D. Cal. 1995) ("it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect"); *In re Intermagnetics America, Inc.,* 101 B.R. 191, 193 (C.D. Cal. 1989) ("Ex parte applications are not intended to save the day for parties who have failed to present requests when they should have, and should not be used as a way to 'cut in line' ahead of those litigants awaiting determination of their properly noticed and timely filed motions.").   Here, Huntington Beach has known about its RHNA obligations for years. (Compl. ¶ 14 ("Defendants. . . determined in 2021 that the City must rezone property to allow the development of 13,368 units").)  Huntington Beach has, therefore, failed to take appropriate action to ensure its conduct complies with State law, and cannot now complain that having to take measures to comply with state law constitutes  the sort of emergency circumstances that would justify the grant of a TRO.

7

Case No. 8:23-cv-00421

SCAG'S OPPOSITION TO PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER
AND/OR ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION

**C.      Huntington Beach Fails to Meet the Remaining Elements for A TRO.**

For the same reasons discussed above, the City has failed to establish that the balance of equities tips in its favor and that an injunction will be in the public interest.

**V.      CONCLUSION**

For the foregoing reasons, the City's TRO Application should be denied.

DATED:  March 20, 2023                    MEYERS NAVE

                                          By: _____
                                              DEBORAH J. FOX
                                              Attorneys for Defendant
                                              SOUTHERN CALIFORNIA ASSOCIATION
                                              OF GOVERNMENTS

5325108.1