Deborah J. Fox (SBN: 110929)
dfox@meyersnave.com
David Mehretu (SBN: 269398)
dmehretu@meyersnave.com
Kristof D. Szoke (SBN: 331561)
kszoke@meyersnave.com
MEYERS NAVE
707 Wilshire Blvd., 24th Floor
Los Angeles, California 90017
Telephone: (213) 626-2906
Facsimile: (213) 626-0215

Attorneys for Defendant
SOUTHERN CALIFORNIA
ASSOCIATION OF GOVERNMENTS

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| CITY OF HUNTINGTON BEACH, a California Charter City, and Municipal Corporation, the HUNTINGTON BEACH CITY COUNCIL, MAYOR OF HUNTINGTON BEACH, TONY STRICKLAND, and MAYOR PRO TEM OF HUNTINGTON BEACH, GRACEY VAN DER MARK,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California, and individually; GUSTAVO VELASQUEZ in his official capacity as Director of the State of California Department of Housing and Community Development, and individually; STATE LEGISLATURE; STATE OF CALIFORNIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT; SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 8:23-cv-00421-FWS-ADS<br>The Hon. Fred W. Slaughter<br><br>**SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS' NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Date:   July 27, 2023<br>Time:   10:00 a.m.<br>Crtrm.  10D<br><br>Compl. filed: March 9, 2023<br>First Am. Compl. filed: March 27, 2023<br><br>Trial Date:       None Set |

## **NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD HEREIN:

PLEASE TAKE NOTICE that on July 27, 2023, at 10:00 a.m. in Courtroom 10D of the United States District Court, Central District of California, Southern Division, located at 411 West Fourth Street, Santa Ana, CA 92701, Defendant Southern California Association of Governments will and hereby does move this court to dismiss with prejudice the First Amended Complaint for Declaratory and Injunctive Relief filed by Plaintiffs City of Huntington Beach, a California Charter City, and Municipal Corporation; the Huntington Beach City Council; Mayor of Huntington Beach, Tony Strickland; and Mayor Pro Tem of Huntington Beach, Gracey Van Der Mark (collectively "the City").

This motion will be made under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that the Court lacks subject matter jurisdiction to hear the matter and that additionally the City fails to state a claim upon which relief can be granted.

The City filed a Complaint in the United States District Court, Central District of California, Southern Division on March 9, 2023, and filed its First Amended Complaint on March 27, 2023.

This Motion will be based upon this Notice, upon the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice filed concurrently herewith, and upon all of the pleadings, records, and files of this proceeding, and upon other and further evidence, both oral and documentary, as may be produced at the hearing thereof.

/ / /

/ / /

/ / /

/ / /

/ / /

1    PLEASE TAKE FURTHER NOTICE that pursuant to the Order Granting the

2  Joint Stipulation to Set Briefing Schedule on Motions Challenging First Amended

3  Complaint, any response or opposition to this Motion must be filed with the Court

4  on or before June 6, 2023.  As set forth in L.R. 7-12, the failure to timely file and

5  serve an opposition or other response to this Motion may be deemed by the Court to

6  constitute consent to the granting of the Motion.

7    This Motion is made following the conference of counsel pursuant to L.R. 7-3

8  which took place on Monday, April 24, 2023.

9

10  DATED:  May 1, 2023                   MEYERS NAVE

11

12

13  By: _____

14  DEBORAH J. FOX

15  DAVID MEHRETU

16  KRISTOF D. SZOKE

    Attorneys for Defendant

    SOUTHERN CALIFORNIA

17  ASSOCIATION OF GOVERNMENTS

18

19

20

21

22

23

24

25

26

27

28

# **<u>TABLE OF CONTENTS</u>**

<u>Page</u>

I.  INTRODUCTION ................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................... 2

    A.  California's RHNA Laws............................................................... 2

    B.  The City's Lawsuit Against the State and SCAG................................ 3

III.  LEGAL STANDARD ............................................................................ 4

IV.  ARGUMENT ........................................................................................ 5

    A.  This Entire Action Must be Dismissed Because the City Lacks Standing to Challenge the RHNA Laws on Constitutional Grounds. ...................................................................................... 5

    B.  Each of the City's Federal Constitutional Claims Are Also Meritless. ................................................................................... 8

        1.  The City's First Amendment Claim Fails Because No "Speech" Has Been Burdened As a Matter of Law.................... 8

        2.  The City's Procedural Due Process Claim Fails Because the City Cannot Allege a Property Interest, and the RHNA Laws Provide Sufficient Process as a Matter of Law................. 10

        3.  The City's Substantive Due Process Claim Fails Because the City Cannot Allege a Protected Interest, and the RHNA Laws Have a Rational Basis to Accomplish a Legitimate Governmental Objective as a Matter of Law. .......... 12

        4.  The City's Commerce Clause Claim Fails Because the RHNA Laws Do Not Discriminate Against Out-of-State Commerce, Nor Excessively Burden Interstate Commerce as a Matter of Law. ...................................................... 13

    C.  Each of Plaintiffs' State Law Claims Are Meritless............................ 15

        1.  The City's "Home Rule" Claim Fails Because the RHNA Laws Constitute a Matter of Statewide Concern as a Matter of Law. ...................................................................... 15

        2.  The City's RHNA Allocation Claim Fails Because Judicial Review of the RHNA Allocations is Precluded. ....................... 16

        3.  The City's Separation of Powers Claim Fails Because the RHNA Laws Do Not Violate the State Constitution's Separation of Powers Clause as a Matter of Law..................... 17

        4.  The City's "Bill of Attainder" Claim Fails Because the RHNA Laws Do Not Constitute a Legislative Punishment. ....... 19

5.   The City's CEQA Claim Fails Because Complying with CEQA Cannot Constitute a CEQA Violation. ...........................20

6.   The City's "Special Statute" Claim Fails Because the Challenged Provisions of the RHNA Laws Have a Rational Basis to the Housing Needs of the Regions They Relate To. .....................................................................................21

7.   The City's Fraud Claim Fails Because the City Fails to Plead Fraud with Specificity and SCAG Has Statutory Immunity. ..................................................................................22

D.   The City's Suit Should Also be Dismissed Under *Younger* Abstention. ...........................................................................23

V.   CONCLUSION ...............................................................................25

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Federal Cases**

*Abagninin v. AMVAC Chem. Corp.*,
   545 F.3d 733 (9th Cir. 2008) ............................................................................ 4

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................... 4, 8

*B.C. v. Plumas Unified Sch. Dist.*,
   192 F.3d 1260 (9th Cir. 1999) ......................................................................... 4

*Bd. of Regents v. Roth*,
   408 U.S. 564 (1972) ...................................................................................... 10

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 4

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*,
   149 F.3d 971 (9th Cir. 1998) ..................................................................... 10, 11

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*,
   136 F.3d 1360 (9th Cir. 1998) ..................................................................... 6, 7

*City of Carmel-By-The-Sea v. U.S. Dep't of Transp.*,
   123 F.3d 1142 (9th Cir. 1997) ....................................................................... 20

*City of Los Angeles v. Cnty. of Kern*,
   581 F.3d 841 (9th Cir. 2009) ........................................................................... 4

*City of Los Angeles v. David*,
   538 U.S. 715 (2003) ...................................................................................... 10

*City of San Juan Capistrano v. California Pub. Utilities Comm'n*,
   937 F.3d 1278 (9th Cir. 2019) ..................................................................... 6, 7

*City of South Lake Tahoe v. California Tahoe Reg'l Plan. Agency*,
   625 F.2d 231 (9th Cir. 1980) .................................................................... 5, 6, 7

*City of Trenton v. State of New Jersey*,
   262 U.S. 182 (1923) ........................................................................................ 5

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Cleveland Bd. of Educ. v. Loudermill,*
    470 U.S. 532 (1985) ................................................................. 11

*DaimlerChrysler Corp. v. Cuno,*
    547 U.S. 332 (2006) ................................................................... 4

*Exxon Corp. v. Governor of Maryland,*
    437 U.S. 117 (1978) ................................................................. 13

*F.C.C. v. Beach Comm'n, Inc.,*
    508 U.S. 307 (1993) ................................................................. 12

*Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.,*
    805 F.2d 1353 (9th Cir. 1986) ............................................. 23, 24

*Gibson v. Berryhill,*
    411 U.S. 564 (1973) ................................................................. 24

*In re Gilead Scis. Secs. Litig.,*
    536 F.3d 1049 (9th Cir. 2008) ................................................... 4

*Hawaii Housing Auth. v. Midkiff,*
    467 U.S. 229 (1984) ................................................................. 24

*Herrera v. City of Palmdale,*
    918 F.3d 1037 (9th Cir. 2019) ................................................. 24

*Hicks v. Miranda,*
    422 U.S. 332 (1975) ................................................................. 24

*Hughes v. Oklahoma,*
    441 U.S. 322 (1979) ................................................................. 13

*Hunt v. Washington Apple Advert. Comm'n,*
    432 U.S. 333 (1977) ................................................................. 13

*Lee v. City of Los Angeles,*
    250 F.3d 668 (9th Cir. 2001) ..................................................... 4

*Lewis v. BT Inv. Managers, Inc.,*
    447 U.S. 27 (1980) ................................................................... 13

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ........................................................... 10, 11

*Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n,*
    457 U.S. 423 (1982) ....................................................................................... 23

*Minnesota v. Clover Leaf Creamery Co.,*
    449 U.S. 456 (1981) ....................................................................................... 13

*Nevada Comm'n on Ethics v. Carrigan,*
    564 U.S. 117 (2011) ..................................................................................... 8, 9

*Nunez v. City of Los Angeles,*
    147 F.3d 867 (9th Cir. 1998) ........................................................................ 12

*Nuveen Mun. High Income Opportunity Fund v. City of Alameda, Cal.,*
    730 F.3d 1111 (9th Cir. 2013) ...................................................................... 22

*Palomar Pomerado Health Sys. v. Belshe,*
    180 F.3d 1104 (9th Cir. 1999) ........................................................................ 7

*Pennzoil Co. v. Texaco, Inc.,*
    481 U.S. 1 (1987) .......................................................................................... 25

*Perez v. Nidek Co.,*
    711 F.3d 1109 (9th Cir. 2013) ........................................................................ 4

*Pharm. Rsch. & Mfrs. of Am. v. Cnty. of Alameda,*
    768 F.3d 1037 (9th Cir. 2014) ...................................................................... 14

*Pike v. Bruce Church, Inc.,*
    397 U.S. 137 (1970) ...................................................................................... 13

*Quinn v. Anvil Corp.,*
    620 F.3d 1005 (9th Cir. 2010) ........................................................................ 4

*In re R. M. J.,*
    455 U.S. 191 (1982) ........................................................................................ 8

*Romero-Ochoa v. Holder,*
    712 F.3d 1328 (9th Cir. 2013) ...................................................................... 12

*Roth v. United,*
    354 U.S. 476 (1957) ........................................................................................ 8

*Scott v. Pasadena Unified Sch. Dist.,*
    306 F.3d 646 (9th Cir. 2002) .......................................................................... 8

*Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.*,
 468 U.S. 841 (1984) ........................................................................ 19

*Smith v. State of Indiana*,
 191 U.S. 138, 149 (1903) ................................................................. 6

*Thomas v. Mundell*,
 572 F.3d 756 (9th Cir. 2009) ........................................................ 6, 7

*Trainor v. Hernandez*,
 431 U.S. 434 (1977) ........................................................................ 24

*United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt.
  Auth.*,
 550 U.S. 330 (2007) ................................................................. 13, 14

*United Mine Workers of America v. Gibbs*,
 383 U.S. 715 (1966) ........................................................................ 15

*United States v. Morros*,
 268 F.3d 695 (9th Cir. 2001) .......................................................... 23

*Washington v. Glucksberg*,
 521 U.S. 702 (1997) ........................................................................ 12

*Williams v. Mayor and City Council of Baltimore*,
 289 U.S. 36 (1933) ........................................................................... 5

*Yagman v. Garcetti*,
 852 F.3d 859 (9th Cir. 2017) .......................................................... 10

*Ysursa v. Pocatello Educ. Ass'n*,
 555 U.S. 353 (2009) ......................................................................... 5

**State Cases**

*Baggett v. Gates*,
 32 Cal. 3d 128 (1982) ...................................................................... 15

*Baldwin v. Cnty. of Tehama*,
 31 Cal. App. 4th 166 (1994) ............................................................ 21

*Birkenfeld v. City of Berkeley*,
 17 Cal. 3d 129 (1976) ...................................................................... 18

*Buena Vista Gardens Apartments Ass'n v. City of San Diego Planning Dept.*,
    175 Cal. App. 3d 289 (1985) .................................................................. 15

*California Renters Legal Advoc. & Education Fund v. City of San Mateo*,
    68 Cal. App. 5th 820 (2021) .................................................................. 16

*California State Emp. Ass'n v. Flournoy*,
    32 Cal. App. 3d 219 (1973) .................................................................. 19

*Carson Mobilehome Park Owners' Ass'n v. City of Carson*,
    35 Cal. 3d 184 (1983) .................................................................. 17

*City of Coronado v. San Diego Ass'n of Gov't*,
    80 Cal. App. 5th 21 (2022) .............................................................. 17, 19

*City of Irvine v. Southern California Ass'n of Governments*,
    175 Cal. App. 4th 506 (2009) ....................................................... 5, 7, 16

*City of Los Angeles v. City of Artesia*,
    73 Cal. App. 3d 450 (1977) .................................................................. 21

*Codding Enterprises v. City of Merced*,
    42 Cal. App. 3d 375 (1974) .................................................................. 7

*Endangered Habitats League, Inc. v. Cnty. of Orange*,
    131 Cal. App. 4th 777 (2005) .................................................................. 9

*Gerawan Farming, Inc. v. Agric. Lab. Rel. Bd.*,
    3 Cal. 5th 1118 (2017) .................................................................. 18

*Kugler v. Yocum*,
    69 Cal. 2d 371 (1968) .............................................................. 17, 18

*Law Sch. Admission Council, Inc. v. State of California*,
    222 Cal. App. 4th 1265 (2014) .................................................................. 19

*Lazar v. Superior Court*,
    12 Cal. 4th 631 (1996) .................................................................. 22

*Lesher Commc'n, Inc. v. City of Walnut Creek*,
    52 Cal. 3d 531 (1990) .................................................................. 16

*People v. Casa Co.*,
     35 Cal. App. 194 (1917) .................................................................. 19

*Ruegg & Ellsworth v. City of Berkeley*,
     63 Cal. App. 5th 277 (2021) ........................................................... 16

*Stansfield v. Starkey*,
     220 Cal. App. 3d 59 (1990) ............................................................ 23

*White v. State*,
     88 Cal. App. 4th 298 (2001) ...................................................... 21, 22

**Federal Statutes**

28 U.S.C.A. § 1367(c)(3) ...................................................................... 15

**State Statutes**

California Government Code
     § 818.8 ....................................................................................... 22, 23
     § 900.4 ........................................................................................... 5, 7
     § 6500 ............................................................................................ 5, 7
     § 34450 .............................................................................................. 7
     § 36932 .............................................................................................. 9
     § 36933 .............................................................................................. 9
     § 54950 .............................................................................................. 9
     § 65300 .............................................................................................. 9
     § 65302 .............................................................................................. 9
     § 65303 .............................................................................................. 9
     § 65580 ........................................................................................ 12, 18
     § 65581 .............................................................................................. 18
     § 65582 ................................................................................................ 7
     § 65584.01 ......................................................................................... 18
     § 65584.05 ......................................................................................... 11
     § 65584.08 ......................................................................................... 11
     § 65585 ............................................................................................. 1, 2
     § 65588 ................................................................................................ 2
     § 65589.5 ....................................................................................... 2, 18
     § 65913.4 ........................................................................................... 16

Public Resources Code § 21000 ........................................................... 20

**Rules**

Federal Rule of Civil Procedure
    12(b)(1) .......................................................................................... 4, 25
    12(b)(6) .......................................................................................... 4, 25

**Constitutional Provisions**

California Constitution
    Article IV § 16 .......................................................................... 21, 22
    Article XI § 3 ..................................................................................... 6
    Article XI § 5 .............................................................................. 6, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

In this lawsuit, the City of Huntington Beach, its Mayor and several additional elected officials (collectively "the City") improperly mount constitutional and companion state law challenges to statewide legislation – commonly referred to as the Regional Housing Needs Allocation (Gov't Code § 65585 et seq., hereinafter "RHNA Laws").  The RHNA Laws were adopted expressly to require the accommodation of, and ultimately foster development of, fair share housing throughout California.  The City names as defendants both the State, who is charged with setting the fair share number of housing units and administering enforcement of a timely and compliant housing element, and the Southern California Association of Governments ("SCAG"), the government entity statutorily obligated to allocate RHNA-mandated housing units among SCAG's 197 constituent jurisdictions within the Los Angeles, Ventura, Riverside, Orange, San Bernardino, and Imperial County areas.

However, the City's claims are legally deficient.  First, it is well-established that the City, and its elected officials, lack standing to challenge state statutes – such as the RHNA Laws at issue here – because political subdivisions of a state are categorically precluded from challenging state laws on federal constitutional grounds.  And, even if the City and its elected officials had standing to bring federal constitutional claims – and to be clear, they do not – the City's claims still fail as a matter of law because:

- A legislator's vote does not constitute "speech" under the First Amendment;
- There is no protected property interest to support a procedural due process claim;
- The RHNA Laws easily clear rational-basis scrutiny in support of the government action at play and, therefore, cannot form the basis of a substantive due process claim; and

- The RHNA Laws do not differentiate between in-state or out-of-state commerce, nor impose proscribed burdens on interstate commerce to support a Commerce Clause claim.

The City's state law claims – which must be dismissed for lack of subject matter jurisdiction since the City plaintiffs lack federal standing to begin with – fare no better on their merits, as fully discussed below.

Accordingly, the Court should dismiss the City's First Amended Complaint in its entirety without leave to amend.

## II.    FACTUAL BACKGROUND

### A.    California's RHNA Laws

The RHNA Laws – codified at sections 65585 et seq. of the Government Code – were intended by the State legislature to address the "housing supply and affordability crisis of historic proportions."  *See* California Gov't Code § 65589.5(a).[1]  Although the details and mechanics of the RHNA Laws are not at issue in this case, for purposes of context, the RHNA Laws provide a system for state, regional and local government entities to work together in an integrated process to plan and provide for new housing.  *See id.*  Under this process, California's Department of Housing & Community Development ("HCD") uses data generated by the Department of Finance to assign a target number for additional housing units in each region of the State, and then various regional councils of governments – such as SCAG – are required by law to allocate such housing units to specific cities and counties within their regions.

The RHNA Laws also require cities to review and update the housing element of their general plans during a periodic cycle in order to accommodate and comply with the RHNA housing units they are assigned.  *See* § 65588.  The current planning

---

[1] Statutory references are to the California Government Code unless otherwise noted.

cycle, known as "6th RHNA Cycle," spans 2021 through 2029.  *See* Dkt. No. 38 [First Amended Complaint, or "FAC"], ¶¶ 71-72.  In 2021, the City was allocated RHNA Units pursuant to this process (FAC ¶ 19) and was required to update its housing element by October 15, 2021.  Request for Judicial Notice ("RJN"), Ex. 1 at p. 4 [HCD Housing Element Update Schedule] & Ex. 2 at p. 5 [HCD Letter to Huntington Beach].

### B.       The City's Lawsuit Against the State and SCAG

On March 9, 2023, the City commenced this lawsuit asserting claims against the State of California, SCAG, and various other State defendants.  Dkt. No. 1.  The underlying basis for the City's claims is that various provisions of the RHNA Laws violate the City's constitutional rights and run afoul of various state laws.  FAC ¶¶ 1, 12, 21, 54.

On March 14, 2023, the City applied to this Court for a TRO.  Dkt. No. 10.  On March 20, 2023, SCAG and the state defendants filed their respective oppositions to the TRO on the grounds that, *inter alia*, the City lacked standing to assert constitutional claims challenging state laws, and because the City's claims were otherwise substantively deficient.  Dkt. Nos. 33 [SCAG's Opposition]; 31 [State Defendants' Opposition]; 29 [Legislature's Opposition].  On March 21, 2023, this Court denied the City's TRO application, finding that, *inter alia*, a TRO was not warranted because the City had not demonstrated a likelihood of success on the merits of their underlying claims, nor imminent irreparable harm.  Dkt. No. 35, at pp. 1, 6, 12-13.

On March 27, 2023, the City filed its FAC, which is now the operative complaint in the case.  Dkt. No. 38.

The FAC is fatally flawed and this action should be dismissed in its entirely without leave to amend.

/ / /
/ / /

## III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a complaint for failure to state a claim upon which relief can be granted.  To survive a motion to dismiss, a plaintiff must "show" it is entitled to relief by alleging factual content in its complaint that states a plausible claim for relief on its face, but mere labels and conclusions will not do.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In ruling on a Rule 12(b)(6) motion, a court can consider matters of public record that are subject to judicial notice and need not accept as true allegations that contradict matters subject to judicial notice.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001); *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Leave to amend may be denied if a court determines that "allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 742 (9th Cir. 2008).

Questions of standing may be raised by way of a motion to dismiss brought pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.  *See, e.g., Perez v. Nidek Co.*, 711 F.3d 1109, 1113-14 (9th Cir. 2013); *Quinn v. Anvil Corp.*, 620 F.3d 1005, 1014-15 (9th Cir. 2010).  Standing is a jurisdictional requirement that cannot be waived.  *City of Los Angeles v. Cnty. of Kern*, 581 F.3d 841, 845 (9th Cir. 2009).  Indeed, federal courts are required to examine jurisdictional issues such as standing sua sponte.  *B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999).  The party asserting federal jurisdiction has the burden of establishing standing under Article III.  *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006).  Courts scrutinize a plaintiff's allegations concerning standing under the same standard as with a Rule 12(b)(6) motion to dismiss.  *Perez*, 711 F.3d at 1113.

/ / /
/ / /

IV.     **ARGUMENT**

    **A.      This Entire Action Must be Dismissed Because the City Lacks Standing to Challenge the RHNA Laws on Constitutional Grounds.**

Neither the City nor its councilmembers possess Article III standing to challenge the RHNA Laws.  This is fatal to the City's federal claims and the action as a whole because the Court may not exercise supplemental jurisdiction over the City's state law claims where it lacks subject matter jurisdiction to hear the asserted federal claims.

It is well established that cities – as political subdivisions of the state – cannot assert violation of constitutional rights against the state.  *City of South Lake Tahoe v. California Tahoe Reg'l Plan. Agency,* 625 F.2d 231, 233 (9th Cir. 1980); *Ysursa v. Pocatello Educ. Ass'n,* 555 U.S. 353, 363 (2009); *City of Trenton v. State of New Jersey*, 262 U.S. 182, 188 (1923).  Rather, in the Ninth Circuit, there is a per se rule under which the U.S. Constitution's protections do not extend to a city with respect to its state because the city is deemed a "subordinate unit of government," created by the state to carry out delegated functions.  *Ysursa*, 555 U.S. at 363 ("[A] political subdivision, 'created by a state… has no privileges or immunities under the federal constitution which it may invoke in opposition to the will of its creator.'") (quoting *Williams v. Mayor and City Council of Baltimore*, 289 U.S. 36, 40 (1933).)  This rule applies regardless of whether the defendant is the state itself or another of the state's political subdivisions (as is SCAG).  *City of South Lake Tahoe*, 625 F.2d at 233; *see also City of Irvine v. Southern California Ass'n of Governments*, 175 Cal. App. 4th 506, 511 (2009), *as modified on denial of reh'g* (July 21, 2009) (recognizing that SCAG is a public agency existing pursuant to the Joint Exercise of Powers Act codified at sections 6500 et seq.); *see e.g.* § 900.4 (defining a local public entity as a "public agency" and "any other political subdivision" of the state, but not including the state itself).  For purposes of this per se rule, charter cities are considered political subdivisions of the state as well, and therefore are precluded

from asserting federal constitutional claims against the state. *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998); Cal. Const. art. XI, §§ 3, 5 (allowing for the creation of, and enumerating the powers and limitations of, charter cities).

This same rule also applies to city officials and elected representatives – regardless of whether they stylize their claims as being in their "personal" or "official" capacities – because a city officials' interests are deemed the same as, or derivative of, the interests of the city for which they serve. *Thomas v. Mundell,* 572 F.3d 756, 761 (9th Cir. 2009); *City of South Lake Tahoe*, 625 F.2d at 238 (citing *Smith v. State of Indiana,* 191 U.S. 138, 149 (1903).

For example, in *City of South Lake Tahoe*, the city, mayor, and city councilmembers of the City of South Lake Tahoe sought to enjoin the enforcement of certain land use regulations and regional and transportation plans adopted by the California Tahoe Regional Planning Agency, a political subdivision of the State of California. *Id*. at 232–33. The individual city official plaintiffs alleged that the regulations and plans violated various of their alleged federal constitutional guarantees, and that they possessed standing because their adoption and enforcement of the agency's allegedly unconstitutional regulations would constitute a violation of their oaths of office to uphold the U.S. Constitution. *Id.*

Citing the longstanding Supreme Court precedent holding that a political subdivision is precluded from challenging the validity of state laws on federal constitutional grounds, the Ninth Circuit squarely disagreed, and affirmed that the plaintiffs' challenge was defective for lack of standing. *Id*. at 233–34; *see also City of San Juan Capistrano v. California Pub. Utilities Comm'n*, 937 F.3d 1278, 1281 (9th Cir. 2019) (explaining that the rule adopted by *City of South Lake Tahoe* is a "per se" rule that does not depend on whichever particular constitutional provision might be invoked to challenge a statute or agency action.) The Ninth Circuit specifically refused to countenance the councilmember's contentions that they had

personal interests in the matter separate and apart from those of the city's, including on the grounds that those interests actually inured to the benefit of the city or its inhabitants, and thus were merely the city's interests. *Id*. at 238; *see also Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1108 (9th Cir. 1999) (district as political subdivision lacks standing); *Thomas*, 572 F.3d at 761 (officials lack standing); *City of San Juan Capistrano*, 937 F.3d at 1281 (city lacks standing).

Here, for purposes of federal standing analysis, the City of Huntington Beach is a political subdivision of the state of California. *Burbank-Glendale-Pasadena Airport Auth.*, 136 F.3d at 1364 (finding that charter cities are political subdivisions of the state of California for purposes of standing). This is true for both general law cities and charter cities as well. *Id.*; *see also Codding Enterprises v. City of Merced*, 42 Cal. App. 3d 375, 377 (1974) ("Charter cities are created pursuant to and derive their power or authority from the Constitution of the State of California"); § 34450 (authorizing charter cities to enact, amend, or repeal a charter for their governance). Accordingly, the City has no standing to assert federal constitutional challenges as to state law and as to SCAG's implementation of state law. *City of South Lake Tahoe*, 625 F.2d at 233; *see also City of Irvine*, 175 Cal.App.4th at 511; §§ 900.4, 6500 et seq., 65582 (establishing that SCAG is a political subdivision).

The Mayor, Mayor Pro Tem and City Councilmembers similarly lack standing. Although they allege that they are required to adopt a new housing element, that they are being forced to "speak" in their capacity as elected representatives of the City, and that the citizens of the City are being deprived of their property interests, the Ninth Circuit has already held that such interests are merely derivative of, or the same as, the City's interests and therefore the councilmembers lack standing as well. *See* FAC ¶¶ 123–126, 135, 179, 185, 202, 219, 230; *City of South Lake Tahoe*, 625 F.2d at 238–39; *Thomas*, 572 F.3d at 761.

In sum, both the City and its elected officials lack standing to challenge the RHNA Laws, which deprives this Court of jurisdiction to hear any of their claims –

including their state claims – asserted in this case.  *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002).  Dismissal of the entire action is therefore required.

### B.   Each of the City's Federal Constitutional Claims Are Also Meritless.

Even if the City plaintiffs possessed standing to assert federal constitutional challenges to the RHNA Laws, each of their federal claims are nevertheless meritless as further discussed below.

### 1.   The City's First Amendment Claim Fails Because No "Speech" Has Been Burdened As a Matter of Law.

The City claims that its free speech rights are burdened because, under the RHNA Laws, it is required to adopt findings, as part of adopting a new housing element, to the effect that more housing is needed in the city.  FAC at ¶¶ 123–135.  The City is wrong.  Actions taken by officials in furtherance of official functions, including a legislator's vote, are not considered "speech" entitled to protection under the First Amendment.

The First Amendment prohibits laws "abridging the freedom of speech," which, "as a general matter ... means that government has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Ashcroft*, 535 U.S. at 573 (quotations omitted.)  But the First Amendment has no application when what is restricted is not protected speech.  *See, e.g., Roth v. United,* 354 U.S. 476, 483 (1957) (obscenity not protected speech); *In re R. M. J.*, 455 U.S. 191, 202 (1982) (false commercial speech not protected).  This includes a legislator's vote, which is deemed to be simply an execution of their duties pertaining to the legislative process.  *Nevada Comm'n on Ethics v. Carrigan,* 564 U.S. 117, 126 (2011) (legislator's vote not protected by First Amendment as legislator casts his vote as trustee for his constituents and not as prerogative of personal power) (citing to *Coleman v. Miller*, 307 U.S. 433, 470 (1939) (finding that

1    the legislature votes as political representatives executing legislative process).)  The

2    Supreme Court has held that the actions by a legislator in furtherance of their

3    official functions do not fall within the realm of protected speech.  *Nevada Comm'n*

4    *on Ethics*, 564 U.S. at 127.

5        Here, no protected speech has been implicated because the City's act of

6    voting and adopting (or, in the case of the City in this matter, voting to *not* adopt)

7    the updated housing elements in compliance with the RHNA Laws is not "protected

8    speech" under Supreme Court precedent.  *Nevada Comm'n on Ethics*, 564 U.S. at

9    126 ("The legislative power… is not personal to the legislator but belongs to the

10   people; the legislator has no personal right to it.")  There is good reason for this

11   well-established rule: were the rule otherwise, virtually every legislative or

12   executive act that a city official personally disagreed with, but had to carry out in the

13   performance of their duties, would be transformed into a First Amendment

14   violation.

15       For example, ordinances adopted by a city council must be personally signed

16   by the mayor and attested to by the city clerk, even if they disagree with them

17   (§ 36932); the city clerk must then post or publish the ordinance, even if he or she

18   disagrees with it (§ 36933); the Brown Act requires city officials to conduct their

19   discussions as part of a city meeting openly in public, even if they do not wish to do

20   so.  §§ 54950 et seq.  The same is true where officials retain some discretion as to

21   how specifically to implement state mandates, such as the requirement that a city

22   create a comprehensive general plan.  § 65300 (cities in California, including charter

23   cities, must adopt a general plan consisting of at least seven mandatory elements

24   (land use, circulation, housing, conservation, open space, noise, and safety);

25   *Endangered Habitats League, Inc. v. Cnty. of Orange*, 131 Cal. App. 4th 777, 782

26   (2005); §§ 65302–65303.

27   / / /

28   / / /

In sum, the City has no standing to assert a First Amendment challenge, and moreover, such a claim fails because no "speech" has been burdened or compelled as a matter of law.

### 2. The City's Procedural Due Process Claim Fails Because the City Cannot Allege a Property Interest, and the RHNA Laws Provide Sufficient Process as a Matter of Law.

A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections.  *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998).  Courts look to sources such as state law to determine whether a constitutionally-protected property interest exists because property interests are "not created by the Constitution."  *Bd. of Regents v. Roth,* 408 U.S. 564, 577 (1972).  In order to possess a property interest, an individual must have more than "an abstract need or desire for it" or "a unilateral expectation of it"; rather, they must possess "a legitimate claim of entitlement to it."  *Id*.

Here, the City cannot allege a protected interest because only *private* interests are entitled to protection.  *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (setting forth three factor test for evaluating sufficiency of due process for government deprivation of interest, stating that the first factor is "the private interest that will be affected by the official action"); *City of Los Angeles v. David*, 538 U.S. 715, 716 (2003) (examining "[t]he first *Eldridge* factor, the 'private interest,'" which consisted of a "private individual's [monetary] interest"); *Yagman v. Garcetti*, 852 F.3d 859, 865 (9th Cir. 2017) (reviewing sufficiency of process by examining nature of private interest at stake).  Yet the City fails to allege the existence of any such private property or liberty interest and, accordingly, cannot satisfy the first prong of a due process challenge.

/ / /

/ / /

When, unlike here, a recognizable private property interest *is* at stake, due process requires that the person be given an opportunity to be heard "at a meaningful time and in a meaningful manner" before their property can be deprived by the government. *Brewster*, 149 F.3d at 984.  The determination of what procedures satisfy this due process standard depends upon the particular facts of the case. *Id*. at 983.  As such, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (internal quotation and citation omitted.)

The City's claim fails on this prong as well.  Even if the RHNA housing units allocated to the City can be said to implicate the City's "property rights," it is indisputable that the City received adequate process as a matter of law, including among other things:

- an administrative appeal process to challenge housing allocations (§ 65584.05);

- a minimum of fourteen public workshops to discuss SCAG's regional growth forecast and the methodology for same (§ 65584.08(f));

- receipt by the City of SCAG's draft allocation for the regional housing needs assessment 18 months ahead of time (§ 65584.05(a));

- a public hearing on appeal should SCAG reject the City's challenge to the allocation (§§ 65584.05(e) and 65584.08(i)); and

- a proposed final allocation, which included responses to all comments received on the proposed draft allocation and reasons for any significant revisions in the final allocation.  §§ 65584.05(f) and § 65584.08(h).

*See also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985).

Accordingly, the City's procedural due process challenge fails as a matter of law – both because the City cannot claim a deprivation of a constitutionally protected property interest, and the City was provided sufficient process as a matter of law.

**3.    The City's Substantive Due Process Claim Fails Because the City Cannot Allege a Protected Interest, and the RHNA Laws Have a Rational Basis to Accomplish a Legitimate Governmental Objective as a Matter of Law.**

For a substantive due process challenge, a plaintiff has the burden of first showing that there is a "government deprivation of life, liberty, or property." *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998).  Upon the showing of such a deprivation, a court must determine "whether there are 'plausible reasons for [the legislature's action]', and if there are, '[the] inquiry is at an end.'" *Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013) (citing to *F.C.C. v. Beach Comm'n, Inc.*, 508 U.S. 307, 313 (1993)); *Washington v. Glucksberg*, 521 U.S. 702, 703 (1997) (applying rational basis test for substantive due process challenge to a law).  Under such a review, the legislature need not actually articulate any purpose behind the statute.  Rather, it is presumed valid, and in order for a plaintiff to successfully challenge it, they must "negative every conceivable basis which might support it." *F.C.C.*, 508 U.S. at 315.

Here, as an initial matter, the City cannot allege that there is a government deprivation of a liberty or property interest as discussed in the procedural due process section above.  *See* Section IV, subsection B. 2. *supra*.

In any event, the RHNA Laws easily pass rational basis muster because the California legislature expressly provided the rational basis for the RHNA Laws, namely the legislature's findings that the RHNA Laws are important to planning to accommodate and facilitating the development of more housing for the state.  *See, e.g.* § 65580 (Legislature's findings regarding the importance of housing to statewide concerns).

Because the City does not allege a protected liberty or property interest and because there is a rational basis undergirding the RHNA Laws, Plaintiffs' substantive due process claim fails as a matter of law and must be dismissed.

4.    **The City's Commerce Clause Claim Fails Because the RHNA Laws Do Not Discriminate Against Out-of-State Commerce, Nor Excessively Burden Interstate Commerce as a Matter of Law.**

In order to assert a viable Commerce Clause claim, a plaintiff must either show that the statute discriminates between out-of-state interests versus in-state interests, or that any burdens on interstate commerce are "clearly excessive" in relation to the putative local benefits. *Pike v. Bruce Church, Inc.,* 397 U.S. 137, 142 (1970). A law is discriminatory, for Commerce Clause purposes, if it requires differential treatment of in-state and out-of-state economic interests. *Minnesota v. Clover Leaf Creamery Co*., 449 U.S. 456, 471 (1981). But, if the law treats in-state or out-of-state interests in the same manner, then no discrimination will be found. *United Haulers Ass'n, Inc. v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 342–43 (2007).

To illustrate, improper discrimination was held to occur where a law forbade a bank from providing investment advisory services if its principal offices were located out of state. *Lewis v. BT Inv. Managers, Inc*., 447 U.S. 27, 36 (1980); *see also Hughes v. Oklahoma*, 441 U.S. 322 (1979) (law prohibiting the out of state export of natural minnows did not violate the Commerce Clause); *Hunt v. Washington Apple Advert. Comm'n*, 432 U.S. 333, 350 (1977) (law imposing additional costs on Washington but not North Carolina apple shippers ran afoul of Commerce Clause).

A Commerce Clause challenge can also be made if the challenged law's incidental burdens on interstate commerce are "clearly excessive" in relation to the putative local benefits. *See Minnesota*, 449 U.S. at 471 (holding that total ban on the retail sale of plastic, nonreturnable, non-refillable milk containers imposed only minor burden on interstate commerce and that burden was not "clearly excessive" in light of substantial state interest in promoting conservation of energy); *Exxon Corp.*

1    *v. Governor of Maryland,* 437 U.S. 117, 127–28 (1978) (prohibition on oil
2    producers or refiners from operating any retail gas stations within state did not
3    impermissibly burden commerce where goal of statute was to prevent preferential
4    treatment of gas station operators during petroleum shortages).  In order to make
5    such a showing, a plaintiff must first show that the statute imposes a "substantial
6    burden" on interstate commerce before the court will even weigh them against the
7    local benefits.  *Pharm. Rsch. & Mfrs. of Am. v. Cnty. of Alameda*, 768 F.3d 1037,
8    1044 (9th Cir. 2014).

9         Here, the City's FAC offers nothing to establish that the RHNA Laws
10   discriminate against out of state commerce.  Rather, the allegations and judicially
11   noticeable facts establish that the RHNA Laws simply make no distinctions between
12   in-state or out-of-state commerce, but only require local municipalities to update the
13   housing elements of their general plan in periodic cycles by identifying a sufficient
14   amount of land to accommodate the RHNA allocation given to the municipalities.
15   This means that the intentional "discrimination" prong for a Commerce Clause
16   claim cannot be satisfied.  *See, e.g., United Haulers Ass'n, Inc.*, 550 U.S. at 342–43
17   (requirement that all in-state and out-of-state waste providers, when bringing waste
18   to county go to public-corporation-owned facilities, found not to be discriminatory).

19        The City also fails to allege facts from which it can be concluded that the
20   RHNA laws "substantially burden" interstate commerce, much less in a "clearly
21   excessive way" compared to any local benefits derived.  The City's suggestion that
22   it does defies common sense; even if California's housing laws had the effect of
23   incentivizing the construction of housing within California, that does not "impede"
24   or "burden" interstate commerce.  Were it otherwise, every state creating incentives
25   for businesses, such as through tax abatements, grants, or training programs, would
26   constitute a "burden" on interstate commerce.  That is not the law.

27        Accordingly, the City's Commerce Clause fails and must be dismissed.

28

### C.     Each of Plaintiffs' State Law Claims Are Meritless.

Although the City lacks standing to bring any of its federal claims – which alone is fatal to this action – the City's state law claims are nonetheless meritless as discussed below.[2]

### 1.     The City's "Home Rule" Claim Fails Because the RHNA Laws Constitute a Matter of Statewide Concern as a Matter of Law.

The California Constitution provides that a charter city may make and enforce ordinances and regulations in respect to municipal affairs subject only to their charter, but that in respect to all other matters, they are subject to the general laws of the state.  Cal. Const. Art. XI, § 5.  Under this rubric – colloquially known as the "home rule" – charter city ordinances and regulations relating purely to municipal affairs prevail over state laws on the same subject.  *Baggett v. Gates,* 32 Cal. 3d 128, 136 (1982).  However, if a statute relates to a matter of "statewide concern," charter cities yield to the applicable general state laws or regulations regardless of the provisions of their charter.  *Id.*  Whether a matter is deemed to be of "statewide concern" is a legal issue to be determined by the court.  *Buena Vista Gardens Apartments Ass'n v. City of San Diego Planning Dept.*, 175 Cal. App. 3d 289, 306 (1985).  However, the judiciary will accord great weight to the Legislature's evaluation of whether a matter is of statewide concern.  *Baggett*, 32 Cal. 3d at 136.

Here, the City cannot plead a "Home Rule" violation under the California Constitution as a matter of law because California courts have already found that the RHNA Laws and related housing development laws constitute matters of "statewide concern" for purposes of "home rule" challenges.  *See, e.g., Buena Vista Gardens*

---

[2]  In the alternative, the Court should decline to exercise supplemental jurisdiction over the City's state law claims.  28 U.S.C.A. § 1367(c)(3); *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial... the state claims should be dismissed as well.").

*Apartments Ass'n*, 175 Cal. App. 3d at 306-07 (upholding RHNA Laws to a home rule challenge on the grounds that the statute regulated matters of statewide concern and explaining that "these high pronouncements of statewide need for adequate housing do no more than iterate what is the common knowledge of all") (citation and brackets omitted); *California Renters Legal Advoc. & Education Fund v. City of San Mateo*, 68 Cal. App. 5th 820, 847–49 (2021) (upholding the constitutionality of the RHNA Laws against a home rule challenge); *Ruegg & Ellsworth v. City of Berkeley*, 63 Cal. App. 5th 277, 315 (2021) (upholding the constitutionality of section 65913.4, which streamlines the permit approval law for multifamily developments, against a home rule challenge); *Lesher Commc'n, Inc. v. City of Walnut Creek*, 52 Cal. 3d 531 (1990) (cities may not adopt ordinances and regulations that conflict either with their general plan or the state's planning and zoning laws).

Accordingly, the City's "home rule" claim fails and should be dismissed.

## 2. The City's RHNA Allocation Claim Fails Because Judicial Review of the RHNA Allocations is Precluded.

The City alleges that Defendants, including SCAG, violated various provisions of the RHNA Laws in arriving at the numbers used for the housing unit allocations.  FAC at ¶ 188.  As such, the City claims that the "RHNA Unit[] numbers of 13,368" imposed on it are "arbitrary and unlawful."  *Id*. at ¶ 198.  The City's claim is statutorily barred.

The Legislature has determined that the administrative procedure established under the RHNA Laws to calculate a municipality's allocation of the RHNA housing units shall be the exclusive remedy for a municipality to challenge that determination.  *City of Irvine,* 175 Cal. App. 4th at 510.  Thus, judicial review of the RHNA housing unit allocations and numbers themselves is precluded.  *Ibid*.  This restriction also applies to asserted procedural violations of the RHNA Laws, such as failures to conduct hearings or follow the proper protocols alleged to have been

committed by HCD or the regional planning agencies like SCAG.  *City of Coronado v. San Diego Ass'n of Gov't*, 80 Cal. App. 5th 21, 41 (2022), review denied (Sept. 14, 2022).

Here, because the City asserts a challenge to the City's RHNA housing unit allocations on the basis of asserted violations of the RHNA Laws, it is squarely precluded.  *City of Coronado*, 80 Cal. App. 5th at 41.  The City's RHNA allocation claim must therefore be dismissed.

> **3.    The City's Separation of Powers Claim Fails Because the RHNA Laws Do Not Violate the State Constitution's Separation of Powers Clause as a Matter of Law.**

The City asserts that through the RHNA Laws, the Legislature has unlawfully delegated its authority to administrative agencies.  FAC at ¶¶ 200–201.  This claim is meritless.

Under the California Constitution, an unlawful delegation of legislative authority occurs only when a legislative body (1) leaves the resolution of fundamental policy issues to others, or (2) fails to provide adequate direction for the implementation of a fundamental policy.  *Carson Mobilehome Park Owners' Ass'n v. City of Carson,* 35 Cal. 3d 184, 190 (1983).

In determining whether the resolution of a "truly fundamental issue" has been left by the legislative body to others, courts look to whether the Legislature has effectively abdicated the determination of a fundamental "end" or goal.  However, the Legislature is afforded significant latitude in delegating the "attainment of the ends, including how and by what means they are to be achieved."  *Kugler v. Yocum*, 69 Cal. 2d 371, 376 (1968).  Thus, "the Legislature may, after declaring a policy and fixing a primary standard, confer upon executive or administrative officers the 'power to fill up the details' by prescribing administrative rules and regulations to promote the purposes of the legislation and to carry it into effect."  *Ibid.*

Courts generally find that "constitutionally sufficient legislative guidance" exists, such that the legislature has not unlawfully delegated its authority, where the relevant statute states its purpose and provides a nonexclusive illustrative list of factors to be considered by the administering body. *Gerawan Farming, Inc. v. Agric. Lab. Rel. Bd*., 3 Cal. 5th 1118, 1149 (2017) (finding that non-exclusive list of factors for mediator to consider when developing a fair and reasonable agreement between the parties is "constitutionally adequate direction"); *Birkenfeld v. City of Berkeley,* 17 Cal. 3d 129, 168 (1976) (specifying that "just and reasonable" standard for rent control increases was a sufficiently articulated purpose).

Here the RHNA Laws do not leave the resolution of any fundamental policy issue to others, or fail to provide sufficient guidance to the administrative agencies for the implementation of that policy. Rather, the RHNA Laws were enacted to address a fundamental policy issue that the Legislature determined impacted the entire state and required coordinated action. *See* §§ 65580(a); 65581(a); 65589.5(a). The Legislature further provided the specific manner that HCD, in consultation with each regional council of governments, must determine the existing and projected housing needs for each region, by specifying components of the methodology, as well as detailing a list of factors and data points to be considered, including anticipated household growth and related data points. *See, e.g.,* § 65584.01. The RHNA Laws are also more than sufficient to provide adequate guidance to the administering agencies, and are themselves the determination of a fundamental policy question, not the unlawful delegation of it. *See Kugler*, 69 Cal. 2d at 376 (adoption of ordinance that wages for firefighters should be in parity with another jurisdiction, but leaving implementation and determination of such wages to others, was not unlawful delegation).

/ / /

/ / /

/ / /

Indeed, California courts have already rejected the City's position here, that SCAG and/or HCD are acting in an improper quasi-legislative or quasi-judicial capacity when determining and reviewing the RHNA allocations.  *City of Coronado*, 80 Cal. App. 5th at 40 (citing *City of Irvine*, 175 Cal. App. 4th at 520.)

Because the RHNA Laws do not impermissibly delegate legislative function as a matter of law, the City's unlawful delegation claim should be dismissed.

### 4. The City's "Bill of Attainder" Claim Fails Because the RHNA Laws Do Not Constitute a Legislative Punishment.

A "bill of attainder" is a legislative act that inflicts punishment without a judicial trial.  *California State Emp. Ass'n v. Flournoy*, 32 Cal. App. 3d 219 (1973), certiorari denied 94 S. Ct. 724.  In deciding whether a statute inflicts forbidden punishment, the U.S. Supreme Court has recognized three factors to be examined: "(1) whether the challenged statute falls within the historical meaning of legislative punishment; (2) whether the statute, 'viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes'; and (3) whether the legislative record 'evinces a congressional intent to punish.'"  *Law Sch. Admission Council, Inc. v. State of California*, 222 Cal. App. 4th 1265, 1298–99 (2014), as modified (Feb. 11, 2014) (quoting *Selective Serv. Sys. v. Minnesota Pub. Int. Rsch. Grp.,* 468 U.S. 841, 852 (1984).)

Here, the City's claim fails the first factor because the RHNA Laws do not fall within the historical meaning of legislative punishment, which included the death penalty, imprisonment, banishment, and punitive confiscation of property.  *Selective Serv. Sys.,* 468 U.S. at 852.  The City's claim fails the second factor because laws expressly intended to foster the development of more housing on a statewide basis furthers a nonpunitive legislative purpose as a matter of law.  *People v. Casa Co*., 35 Cal. App. 194, 199 (1917) (statute precluding certain uses of structures as nuisances not a bill of attainder since purpose of statute was not to punish but to simply abate nuisance); *Law Sch. Admission Council, Inc.*, 222 Cal.

App. 4th at 1299 (imposition of future civil penalties for non-compliance with statutory requirements not an unconstitutional legislative punishment for past conduct).

Finally, the City's claim is undermined by the fact that no punitive intent can be discerned anywhere in RHNA's legislative history.  *See, e.g.,* RJN Ex. 3 at p. 4 [Senate Floor Analysis of SB 1333 (Aug. 30, 2018) (stating that purpose of bill is to ensure that all cities follow the same laws on local planning and zoning to address housing shortage)].

Accordingly, since all three factors foreclose finding any punitive intent as construed under California law, the City's eighth cause of action must be dismissed.

### 5. The City's CEQA Claim Fails Because Complying with CEQA Cannot Constitute a CEQA Violation.

The City alleges that it will be forced to violate CEQA if the City adopts a CEQA-required statement of overriding consideration when the City adopts its RHNA-required housing element.  FAC at ¶¶ 219-220.  In other words, the City alleges that by complying with CEQA, the City will be forced to violate CEQA. This nonsensical claim is baseless and should be rejected.

Under CEQA (Public Resources Code § 21000, et seq.), "once an environmental impact has been declared to be 'significant,' . . . the agency is required to find that sufficient mitigation measures have been taken to lessen the project's impact."  *City of Carmel-By-The-Sea v. U.S. Dep't of Transp*., 123 F.3d 1142, 1164 (9th Cir. 1997). "If the agency finds that alternatives or mitigation measures are not feasible, the agency must adopt a statement of overriding considerations which states the specific reasons why 'the project's benefit outweighs the unmitigated effects.'"  *Id*.  (citing Pub. Res. Code, §§ 21002, 21002.1, 21081).

Here, in conducting a statutorily required environmental analysis in connection with adopting a compliant housing element, CEQA provides that the City may adopt a statement of overriding consideration if the city's environmental

analysis concludes that it cannot mitigate the environmental impacts, in order to ensure its housing element will not run afoul of CEQA.  *See* Pub. Res. Code § 21081(b).  To assert that adopting such measures as required to comply with CEQA somehow also constitutes a violation of CEQA is unsupported in law and common sense.  And to suggest that CEQA is violated, where individual councilmembers do not sincerely believe in any adopted statement of overriding consideration, is legally baseless as well.  Thus, Plaintiffs' CEQA cause of action fails and must be dismissed.

> **6.    The City's "Special Statute" Claim Fails Because the Challenged Provisions of the RHNA Laws Have a Rational Basis to the Housing Needs of the Regions They Relate To.**

The City alleges that counties within the San Francisco Bay Area received an extension from implementing certain provisions of RHNA, which constitutes an impermissible special statute.  FAC at ¶¶ 223-224.  The City's claim fails.

Article IV, section 16 of the California Constitution provides that: "(a) All laws of a general nature have uniform operation. (b) A local or special statute is invalid in any case if a general statute can be made applicable."  It is well settled, however, that Article IV, section 16 does not prohibit the Legislature from enacting statutes that are applicable solely to a particular county or local entity.  *See Baldwin v. Cnty. of Tehama*, 31 Cal. App. 4th 166, 177 (1994).  In determining whether "a general statute can be made applicable," the issue is not whether the Legislature could conceivably enact a similar statute affecting every locality.  *White v. State*, 88 Cal. App. 4th 298, 305 (2001).  Rather, it is whether "there is a rational relationship between the purpose of the enactment ... and the singling out of [a single] ... county affected by the statute."  *City of Los Angeles v. City of Artesia*, 73 Cal. App. 3d 450, 455 (1977).  The Legislature's determination that this rational relationship exists is entitled to great weight and will not be reversed unless the determination is arbitrary and without any conceivable factual or legal basis.  *Id*. at 456.

1    Here, the City's claims are meritless because the Legislature found when

2 enacting the challenged law, Assembly Bill 1537 in 2014, that special circumstances

3 justified the regional housing needs determination for the jurisdictions in question.

4 RJN, Ex. 4 at p. 14 [Assembly Bill 1537, Sec. 5 ("The Legislature finds and declares

5 that a special law is necessary and that a general law cannot be made applicable

6 within the meaning of Section 16 of Article IV of the California Constitution

7 because the special circumstances of certain areas of the state relating to regional

8 housing needs")]; RJN, Ex. 5 at p. 4 [Bill Analysis, AB 1537 (Aug. 19, 2014)

9 (discussing purpose of statute is to refine default density housing formula for cities

10 with residents less than 25,000)].  Thus, the provisions aimed at the Bay Area

11 jurisdictions in question survive rational basis scrutiny.  *See White*, 88 Cal. App. 4th

12 at 305 (Legislature's findings about interest of state to resolve Orange County

13 financial crisis sufficient to support statute).  In addition, the City fails to allege facts

14 establishing that SCAG was involved in the alleged "Special Statutes," all of which

15 involve Bay Area counties not subject to SCAG's involvement in the RHNA

16 process or its allocations concerning the City.  *See* FAC at ¶¶ 223-224.  In other

17 words, the regional allocation assigned by HCD to the relevant regional councils

18 concerning the Bay Area – for example, the Association of Bay Area Governments

19 – does not implicate SCAG.

20    Accordingly, the City fails to plead a special statute violation.

21    **7.    The City's Fraud Claim Fails Because the City Fails to Plead**

22    **Fraud with Specificity and SCAG Has Statutory Immunity.**

23    Under California law, it is well-established that fraud must be pled with

24 specificity and that general and conclusory allegations will not suffice.  *Lazar v.*

25 *Superior Court,* 12 Cal. 4th 631, 645 (1996).  In addition, public entities are also

26 statutorily immune to claims of fraud.  § 818.8 ("A public entity is not liable for an

27 injury caused by misrepresentation by an employee of the public entity, whether or

28 not such misrepresentation be negligent or intentional."); *Nuveen Mun. High Income*

1  *Opportunity Fund v. City of Alameda, Cal.*, 730 F.3d 1111, 1124 (9th Cir. 2013)

2  (city absolutely immune to fraud claim even though city alleged to have calculated

3  and approved of statements).

4        In this case, the City fails to allege its fraud claim with the requisite

5  specificity in order to show the "how, when, where, to whom, and by what means

6  the representations were tendered." *Stansfield v. Starkey*, 220 Cal. App. 3d 59, 73

7  (1990) (finding claim of fraud insufficiently pled where allegations failed to

8  establish when representations were precisely made, which representation was made

9  as to which defendant, or when plaintiff relied on such representations).

10        In any event, SCAG is statutorily immune to the City's claim because SCAG

11  is a public entity.  § 818.8.

12      **D.**    **The City's Suit Should Also be Dismissed Under *Younger***

13            **Abstention.**

14        *Younger* abstention avoids unnecessary friction in state-federal relations when

15  parties on one side of a dispute file suit in state court and opposing parties file

16  factually related proceedings in federal court.  *United States v. Morros*, 268 F.3d

17  695, 707 (9th Cir. 2001).  Its purpose "is to avoid unnecessary conflict between state

18  and federal governments." *Ibid*.  *Younger* abstention is appropriate and necessary

19  where state court proceedings (i) are pending when the federal action is filed; (ii)

20  implicate important state interests that are also implicated in the federal action; and

21  (iii) provide an adequate opportunity for a litigant to raise their federal claims.

22  *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982).

23  Although there is no litmus test for determining whether state interests are

24  sufficiently important, courts look to principles of federalism and comity, and ask

25  whether federal court adjudication would interfere with the state's ability to carry

26  out its executive, judicial, or legislative functions, such as when a state agency

27  initiates civil proceedings to enforce a statute or rule.  *Fresh Int'l Corp. v. Agric.*

28  *Lab. Rels. Bd.,* 805 F.2d 1353, 1360, n. 8 (9th Cir. 1986).  Where a court finds

*Younger* abstention appropriate, it must dismiss the federal case. *Gibson v. Berryhill*, 411 U.S. 564, 577 (1973); *Fresh Int'l Corp.*, 805 F.2d at 1356.  *Younger* abstention is appropriate even where the defendants in the state and federal actions are not identical, but are "sufficiently close [in] relationship or [have] sufficiently intertwined interests." *Herrera v. City of Palmdale*, 918 F.3d 1037, 1047 (9th Cir. 2019); *Hicks v. Miranda*, 422 U.S. 332, 337–38 (1975) (finding abstention appropriate in federal action brought by a theater, its owner, and employees even though not all plaintiffs were part of state proceedings).

Here, even if the City had standing to assert its claims (it doesn't), and even if it could state colorable substantive claims (it can't), the Court should still dismiss this action under the *Younger* abstention doctrine because all three prongs necessary to invoke *Younger* are at play.

First, at the time this federal case was filed on March 9, 2023, a case brought by the State of California and HCD against the City relating to the same RHNA issues at play in this federal case was already pending in California Superior Court (Orange County), having been filed on March 8, 2023.  (*See* RJN, Ex. 6 [March 8, 2023 Complaint]; *see also* RJN, Ex. 7 [April 10, 2023 Motion for Leave to File Amended Complaint, adding additional RHNA violations by the City]); *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 238 (1984) (*Younger* abstention is proper where state court proceedings are initiated before any proceedings of substance on the merits have taken place in federal court).

Second, the same vital state interests are implicated by both the state and present federal case – namely enforcement of compliance with statewide housing laws.  Indeed, where the state agency brings a civil action to enforce its interests, courts generally deem the matter to be of state interest and decline jurisdiction in accordance with principles of comity and federalism.  *Fresh Int'l Corp.*, 805 F.2d at 1360, n. 8 (finding important California state interest justifying abstention where proceedings initiated by state agency); *see also Trainor v. Hernandez*, 431 U.S. 434,

443 (1977) (emphasizing that the state brought suit in its sovereign capacity).

Finally, the pending state proceedings in Orange County Superior Court provide the City with an adequate opportunity to litigate its federal claims.  Indeed, state court proceedings are presumed under abstention jurisprudence to provide an adequate opportunity for parties to raise their federal claims.  *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987).

In sum, *Younger* abstention principles dictate that this case should be dismissed.

## V.   CONCLUSION

For the foregoing reasons, the First Amended Complaint should be dismissed without leave to amend pursuant to Rule 12(b)(1) because the City's lack  of standing deprives this Court of subject matter jurisdiction over this case.  In the event the Court finds that it has subject matter jurisdiction, the First Amended Complaint should be dismissed with prejudice under Rule 12(b)(6) because the City fails to state any cognizable claims and amendment would be futile, or in the alternative, the Court should dismiss this action without leave to amend under *Younger* abstention.

DATED:  May 1, 2023                    MEYERS NAVE

By:  _____
DEBORAH J. FOX
DAVID MEHRETU
KRISTOF D. SZOKE
Attorneys for Defendant
SOUTHERN CALIFORNIA
ASSOCIATION OF GOVERNMENTS

5333340