ROB BONTA
Attorney General of California
DANIEL A. OLIVAS
Senior Assistant Attorney General
DAVID PAI, Bar No. 227058
Supervising Deputy Attorney General
MATTHEW STRUHAR, Bar No. 293973
THOMAS KINZINGER, Bar No. 323889
Deputy Attorneys General
  1300 I Street, 15th Floor
  Sacramento, CA 95814
  Telephone: (916) 210-7246
  Fax: (916) 731-2121
  E-mail:    Matthew.Struhar@doj.ca.gov
             Thomas.Kinzinger@doj.ca.gov

*Attorneys for Defendants Gavin Newsom, in his official capacity as Governor of the State of California, and individually; Gustavo Velasquez, in his official capacity as Director of the State of California Department of Housing and Community Development, and individually; and the California Department of Housing and Community Development*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| **CITY OF HUNTINGTON BEACH, a California Charter City, and Municipal Corporation, the HUNTINGTON BEACH CITY COUNCIL, MAYOR OF HUNTINGTON BEACH, TONY STRICKLAND, and MAYOR PRO TEM OF HUNTINGTON BEACH, GRACEY VAN DER MARK,** | 8:23-cv-00421-FWS-ADS<br><br>**STATE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Date:        July 27, 2023<br>Time:        10:00 a.m.<br>Courtroom:   10D<br>Judge:       The Honorable Fred W. Slaughter<br><br>Trial Date:  None Set<br>Action Filed: March 9, 2023 |
| Plaintiffs, | |
| v. | |
| **GAVIN NEWSOM, in his official capacity as Governor of the State of** | |

1    **California, and individually; GUSTAVO VELASQUEZ in his official capacity as Director of the State of California Department of Housing and Community Development, and individually; STATE LEGISLATURE; STATE OF CALIFORNIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT; SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS; and DOES 1-50, inclusive,**

                          Defendants.

# TABLE OF CONTENTS

**Page**

Notice of Motion and Motion to Dismiss ...................................................... 1

Memorandum of Points and Authorities ...................................................... 3

Introduction ...................................................................................................... 3

Background ........................................................................................................ 4

    I.    The State's Housing Laws ...................................................... 4

    II.   The City's Actions Led to This Point ..................................... 6

        A.    Huntington Beach's Previous Failed Attempts to Flout State Housing Laws ............................................. 6

        B.    The City's Latest Efforts to Skirt Its Obligations, and HCD's Pending State-Court Lawsuit to Once Again Bring the City Into Compliance ..................... 7

        C.    The Instant Litigation .................................................. 8

Standard of Review ........................................................................................... 9

    I.    Federal Rule of Civil Procedure 12(b)(1) .............................. 9

    II.   Federal Rule of Civil Procedure 12(b)(6) .............................. 9

Legal Argument ................................................................................................. 9

    I.    This Case Is Not Justiciable ................................................... 9

        A.    Plaintiffs Lack Standing to Bring Their Claims ......... 9

        B.    This Court Should Abstain From Hearing This Case Under The Younger v. Harris Doctrine ..................... 11

        C.    The Eleventh Amendment Bars All of Plaintiffs' State-Law Claims, as Well as All Claims, State and Federal, Against Governor Gavin Newsom and the California Department of Housing and Community Development .......... 13

    II.   Plaintiffs Fail to State Any Claims for Relief ....................... 15

        A.    The City Cannot Hide Behind the First Amendment as an Excuse for Violating State Housing Laws ................ 15

        B.    The City's Due Process Claims Are Without Merit ......... 17

            1.    The City Has No Procedural Due Process Right to Challenge the State's Housing Laws or RHNA Allocation ....................................... 17

            2.    Plaintiffs' Substantive Due Process Claim Fails ........... 18

                a.    The City Has No Fundamental Right to Control Land Use ............................... 18

                b.    The State's Housing Laws Easily Pass Rational Basis Review ......................... 19

        C.    The City's Dormant Commerce Clause Claim is Without Merit .......................................................... 20

1

## TABLE OF CONTENTS
**(continued)**

2

**Page**

3         D.      The Court Should Dismiss All State Law Claims ................... 21

4  Conclusion ........................................................................................... 23

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

# TABLE OF AUTHORITIES

**Page**

CASES

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ........................................................................ 9

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*
  729 F.3d 937 (9th Cir. 2013) ......................................................... 14

*Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*
  149 F.3d 971 (9th Cir. 1998) ......................................................... 17

*Buckingham v. Sec'y of U.S. Dep't of Agr.*
  603 F.3d 1073 (9th Cir. 2010) ....................................................... 17

*Buena Vista Gardens Apartments Assn. v. City of San Diego Planning Dept.*
  175 Cal.App.3d 289 (1985) ........................................................... 19

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*
  136 F.3d 1360 (9th Cir. 1998) ....................................................... 10

*California Department of Housing and Community Development v. City of Huntington Beach et al.*
  (Orange County Superior Court, Case No. 30-2019-01046493) ................... 6, 7

*California Renters Legal Advoc. & Educ. Fund v. City of San Mateo*
  68 Cal.App.5th 820 (2021) ................................................... 3, 16, 19

*Chandler v. State Farm Mut. Auto. Ins. Co.*
  598 F.3d 1115 (9th Cir. 2010) ......................................................... 9

*City of Huntington Beach v. Newsom, et al.*
  (Los Angeles County Superior Court, Case No. 30-2019-01044945), Order Denying Petition for Writ of Mandate (Jan. 28, 2021) ........................................................................ 3

*City of Los Angeles v. David*
  538 U.S. 715 (2003) ...................................................................... 18

*City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency*
  625 F.2d 231 (9th Cir. 1980) ..................................................... 10, 11

**TABLE OF AUTHORITIES**
(continued)

Page

*City of San Juan Capistrano v. California Pub. Utilities Comm'n*
    937 F.3d 1278 (9th Cir. 2019) ........................................................ 10, 15

*Clark v. Cmty. for Creative Non-Violence*
    468 U.S. 288 (1984) ........................................................................ 15

*Coal. to Defend Affirmative Action v. Brown*
    674 F.3d 1128 (9th Cir. 2012) ........................................................ 14

*Communications Telesystems Int'l v. California Pub. Utility Comm'n*
    196 F.3d 1011 (9th Cir. 1999) ........................................................ 12

*CTS Corp. v. Dynamics Corp. of Am.*
    481 U.S. 69 (1987) .......................................................................... 20

*Dep't of Revenue v. Davis*
    553 U.S. 328 (2008) ........................................................................ 20

*Franceschi v. Yee*
    887 F.3d 927 (9th Cir. 2018) .......................................................... 18

*Gov't Employees Ins. Co. v. Dizol*
    133 F.3d 1220 (9th Cir. 1998) (en banc) ........................................ 22

*Harper v. Public Service Comm'n of West Va.*
    396 F.3d 348 (4th Cir. 2005) .......................................................... 12

*Hawaii Housing Auth. v. Midkiff*
    467 U.S. 229 (1984) ........................................................................ 12

*Herman Fam. Revocable Tr. v. Teddy Bear*
    254 F.3d 802 (9th Cir. 2001) .......................................................... 21

*Hunter v. City of Pittsburgh*
    207 U.S. 161 (1907) ........................................................................ 10

*Huth v. Hartford Ins. Co. of the Midwest*
    298 F.3d 800 (9th Cir. 2002) .......................................................... 22

*Johnson v. Riverside Healthcare Sys., LP*
    534 F.3d 1116 (9th Cir. 2008) ........................................................ 9

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

1

2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

3

4

*Lazy Y Ranch Ltd. v. Behrens*
    546 F.3d 580 (9th Cir. 2008) ................................................................. 9

5

6

*Mathews v. Eldridge*
    424 U.S. 319 (1976) ..................................................................... 17

7

8

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*
    457 U.S. 423 (1982) ..................................................................... 12

9

*Mullins v. Oregon*
    57 F.3d 789 (9th Cir. 1995) ............................................................. 18

10

11

*N. Star Int'l v. Ariz. Corp. Comm'n*
    720 F.2d 578 (9th Cir. 1983) ............................................................. 9

12

13

*Nat'l Ass'n of Optometrists & Opticians v. Harris*
    682 F.3d 1144 (9th Cir. 2012) ........................................................... 20

14

15

*Nevada Comm'n on Ethics v. Carrigan*
    564 U.S. 117 (2011) ..................................................................... 16

16

17

*Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*
    477 U.S. 619 (1986) ..................................................................... 12

18

19

*Palomar Pomerado Health Sys. v. Belshe*
    180 F.3d 1104 (9th Cir. 1999) ........................................................... 10

20

21

*Pennhurst State Sch. & Hosp. v. Halderman*
    465 U.S. 89 (1984) ................................................................. 13, 14

22

*Pennzoil Co. v. Texaco, Inc.*
    481 U.S. 1 (1987) ....................................................................... 12

23

24

*ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*
    754 F.3d 754 (9th Cir. 2014) ........................................................... 12

25

26

*Romero-Ochoa v. Holder*
    712 F.3d 1328 (9th Cir. 2013) ....................................................... 19, 20

27

28

*Ruegg & Ellsworth v. City of Berkeley*
    63 Cal.App.5th 277 (2021) ............................................................. 19

**TABLE OF AUTHORITIES**
**(continued)**

Page

*S. Pac. Co. v. State of Ariz.*
    325 U.S. 761 (1945) ..................................................................... 20

*Scott v. Pasadena Unified School Dist.*
    306 F.3d 646 (9th Cir. 2002) ........................................................ 22

*State Bldg. & Constr. Trades Council of California v. City of Vista*
    54 Cal. 4th 547 (Cal. 2012) .......................................................... 6

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*
    594 F.2d 730 (9th Cir. 1979) ......................................................... 9

*United States v. Morros*
    268 F.3d 695 (9th Cir. 2001) ........................................................ 11

*Williams v. Mayor & City Council of Baltimore*
    289 U.S. 36 (1933) ...................................................................... 10

*Ex Parte Young*
    209 U.S. 123 (1908) ..................................................................... 14

*Younger v. Harris*
    401 U.S. 37 (1971) ......................................................... 3, 11, 12, 13

**STATUTES**

28 United States Code
    § 1367(c)(2) ................................................................................ 22
    § 1367(c)(3) ................................................................................ 21

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Government Code

§ (i) ................................................................................. 23

§ 65302(c) ........................................................................ 4

§ 65302(c) ........................................................................ 15

§ 65580 ............................................................................. 4

§ 65580 ............................................................................. 20

§ 65580, *et seq.* ............................................................. 15

§ 65584(b) ....................................................................... 5

§ 65584 *et seq.* ............................................................. 4

§ 65584.05 ....................................................................... 18

§ 65584.05(a) ................................................................... 5

§ 65584.05(b) ................................................................... 5

§ 65584.05(e) ................................................................... 5

§ 65585(i) ......................................................................... 5

§ 65585(b) ........................................................................ 5

§ 65585(b)(3)(e) .............................................................. 5

§ 65585(f) ......................................................................... 5

§ 65585(f) ......................................................................... 23

§ 65585(h) ........................................................................ 5

§ 65588 ............................................................................. 4

§ 65589.5 ................................................................. 4, 5, 19, 20

§ 65589.5(d)(5) ........................................................ 5, 6, 8, 16

§ 65913.4 .......................................................................... 19

**CONSTITUTIONAL PROVISIONS**

California Constitution, Article V, § 1 ............................ 14

California Constitution, Article XI, § 5 ........................... 6

**COURT RULES**

Federal Rule of Civil Procedure 12(b)(1) ....................... i, 9

Federal Rule of Civil Procedure 12(b)(1) ....................... 1

Federal Rule of Civil Procedure Rule 12(b)(1) ............... 9

Federal Rule of Civil Procedure 12(b)(6) ....................... i, 9

# TABLE OF AUTHORITIES
## (continued)

Page

Federal Rule of Civil Procedure 12(b)(6) ..................................................................... 1

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on July 27, 2023 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 10D before the Honorable Fred Slaughter of the United States District Court for the Central District of California, located at 411 West 4th Street, Santa Ana, CA 92701, Defendants Governor Gavin Newsom, in his official capacity as Governor of the State of California, and individually, Gustavo Velasquez, in his official capacity as Director of the State of California Department of Housing and Community Development, and individually, and the State of California Department of Housing and Community Development will and hereby do move this Court to dismiss the First Amended Complaint and all claims therein, pursuant to rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

This motion to dismiss is made on the grounds that this Court lacks subject matter jurisdiction and that Plaintiffs fail to state a claim upon which relief can be granted. This motion is based on this Notice of Motion and Motion, the Memorandum of Points and Authorities, the Request for Judicial Notice, the papers and pleadings on file, and upon such matters that may be submitted at the hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 27, 2023 at 3:00 p.m. via teleconference, and pursuant to this Court's April 11, 2023 Order Granting Joint Stipulation to Set Briefing Schedule on Motions Challenging First Amended Complaint.

1    Dated: May 1, 2023                          Respectfully submitted,

2                                                ROB BONTA
                                                 Attorney General of California
3                                                DAVID PAI
                                                 Supervising Deputy Attorney General
4

5                                                */s/ Thomas Kinzinger*

6

7                                                MATTHEW T. STRUHAR
                                                 THOMAS P. KINZINGER
                                                 Deputy Attorneys General
8                                                *Attorneys for Defendants, Gavin*
                                                 *Newsom, in his official capacity as*
9                                                *Governor of the State of California,*
                                                 *and individually; Gustavo Velasquez,*
10                                               *in his official capacity as Director of*
                                                 *the State of California Department of*
11                                               *Housing and Community*
                                                 *Development, and individually; and*
12                                               *the California Department of Housing*
                                                 *and Community Development*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Plaintiffs City of Huntington Beach, Huntington Beach City Council, Mayor Tony Strickland, and Mayor Pro Tem Gracey Van Der Mark (collectively, the City or Plaintiffs) want to shirk their responsibility to meet their fair share of the state's housing needs, and this case is only the latest chapter in the City's longstanding defiance of state housing laws. Recognizing that "California has a housing supply and affordability crisis of historic proportions," a matter of statewide concern, state courts have consistently upheld California's housing laws against local challenges—including ones brought by Huntington Beach itself. *See California Renters Legal Advoc. & Educ. Fund v. City of San Mateo*, 68 Cal.App.5th 820, 830 (2021); *see also* Request for Judicial Notice (RJN), Ex. 1, *City of Huntington Beach v. Newsom, et al.* (Los Angeles County Superior Court, Case No. 30-2019-01044945), Order Denying Petition for Writ of Mandate (Jan. 28, 2021) (finding that California's housing laws "do not violate the municipal affairs doctrine of the California Constitution and may be enforced [against charter cities]") (no appeal taken).

Now, Plaintiffs try their hand in federal court, alleging baseless federal constitutional claims in yet another attempt to challenge the state's housing laws. However, Ninth Circuit law makes perfectly clear that cities, as political subdivisions, have no standing to sue the State in federal court for alleged constitutional violations. Even if Plaintiffs could establish standing, this case is a transparent attempt to interfere with an ongoing state-court lawsuit that the State has brought against Huntington Beach over the city's refusal to comply with state housing laws, including its failure to adopt a compliant housing element—the very subject of this case. Accordingly, this Court should abstain under the doctrine of *Younger v. Harris*. Finally, even if this Court were to reach the merits, each and every one of the numerous claims alleged in the First Amended Complaint (FAC)

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

fails as a matter of law. Even assuming the city could assert the First Amendment as grounds for refusing to comply with state housing laws, and it cannot, the challenged requirements do not restrict protected "speech." Plaintiffs' due process claims are similarly meritless, if not frivolous. And all of Plaintiffs' state-law claims are squarely barred by the Eleventh Amendment. Because the FAC's numerous defects cannot be cured by amendment, it should be dismissed without leave to amend.

## BACKGROUND

### I.   THE STATE'S HOUSING LAWS

Two state housing laws are at issue here. The first is Article 10.6 of the California Government Code, better known as the Housing Element Law. Cal. Gov. Code § 65580, et seq. The second, which is technically part of the Housing Element Law, is the Housing Accountability Act (HAA). § 65589.5.[1]

Under these laws, local governments must include a housing element as part of their general plan. § 65302(c). Housing elements, which must be updated every 5 to 8 years, set forth how local governments will control and foster the development of housing to accommodate growing regional housing needs for residents across all income levels (very low-, low-, moderate-, and above moderate-income). § 65588. This is commonly referred to as the Regional Housing Needs Allocation (RHNA) process.

The RHNA process plays a critical role in setting the stage for housing production and is designed to bring local zoning and planning into alignment with the state's regional housing needs. § 65584 *et seq*. Briefly, in each housing element cycle, the California Department of Housing and Community Development (HCD), relying on data supplied by the Department of Finance concerning projected household growth across all income levels, assigns a target number or goal for

---

[1] Unless otherwise specified, all further statutory references are to the California Government Code.

1   additional housing units to each region of the State. A final determination of

2   regional housing needs is made in consultation with the appropriate regional

3   council of governments. § 65584(b). Each regional council of government, such as

4   the Southern California Association of Governments (SCAG), of which the City is

5   a member, then allocates its assigned number of housing units to its member

6   jurisdictions. § 65584.05(a). The draft allocation is distributed to member

7   jurisdictions at least 18 months prior to the scheduled housing element revision

8   deadline. *Id.* Any member jurisdiction wishing to appeal its draft allocation must

9   then do so, to its regional council of government, within 45 days. § 65584.05(b).

10   Final allocations are adjusted based upon the results of the administrative appeals. §

11   65584.05(e).

12       In updating their housing elements, local governments must prepare a draft

13   housing element for review by HCD. § 65585(b). HCD reviews the draft and issues

14   findings on whether it substantially complies with the Housing Element Law.

15   § 65585(b)(3), (e). If it does not, then the local government may either conform the

16   proposed housing element to HCD's comments *or* adopt it without changes.

17   § 65585(f) (emphasis added). If it does the latter, it must explain why it believes

18   that its draft complies with the law. *Id*. HCD will then determine whether an

19   enforcement action is necessary. § 65585(h), (i).

20       The HAA helps enforce these obligations and ensures that each city is doing

21   its part to facilitate the development of affordable housing across the state. One way

22   it does so is through the "Builder's Remedy," a self-effectuating provision of the

23   HAA which prohibits cities from relying on outdated planning and zoning rules as a

24   basis for disapproving new affordable housing projects. § 65589.5(d)(5).

25   Specifically, when a local government fails to maintain a substantially compliant

26   housing element that meets or exceeds its allotted share of regional housing needs

27   by the relevant deadline—here, October 15, 2021—affordable housing developers

28   may invoke the "Builder's Remedy," which sharply limits a city's ability to deny

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

affordable housing projects. § 65589.5(d)(5). When the "Builder's Remedy" is invoked, a city may not deny a proposed affordable housing development solely on the grounds that it is noncompliant with local zoning or general plan standards.

## II.   THE CITY'S ACTIONS LED TO THIS POINT

This is not the City's first attempt to challenge state housing law. Instead, this action is part of the City's unsuccessful pattern of resistance to its obligations under state law.

### A.   Huntington Beach's Previous Failed Attempts to Flout State Housing Laws

In 2019, the City filed two lawsuits in state court seeking to prevent the enforcement of state housing law, including the Housing Element Law, against Huntington Beach. *See* RJN, Ex. 1. These lawsuits challenged state laws that, *inter alia*, reduced a city's authority to block housing projects if it did not meet its RHNA target and made charter cities subject to the full Housing Element Law for the first time. Huntington Beach argued that these laws represented an unconstitutional overreach into the City's "home rule" authority over municipal affairs. Cal. Const., art. XI, § 5, *see generally State Bldg. & Constr. Trades Council of California v. City of Vista*, 54 Cal. 4th 547, 556 (Cal. 2012). In an order denying both petitions, the Los Angeles Superior Court thoroughly considered and rejected Huntington Beach's arguments that these laws violated the municipal affairs provision of the California Constitution. RJN, Ex. 1. Huntington Beach did not appeal this decision.

Days after Huntington Beach filed its petitions for writs of mandate, HCD sued Huntington Beach for its failure to bring its fifth-cycle (2013 through 2021) housing element into substantial compliance with state law and for illegally downzoning property. *See* RJN, Ex. 2, *California Department of Housing and Community Development v. City of Huntington Beach et al.* (Orange County

Superior Court, Case No. 30-2019-01046493). After the City unsuccessfully demurred, it adopted a compliant fifth-cycle housing element. *Id.*

**B.  The City's Latest Efforts to Skirt Its Obligations, and HCD's Pending State-Court Lawsuit to Once Again Bring the City Into Compliance**

Despite these previous failed attempts to flout state housing requirements, the City has continued its pattern of defiance. On February 21, 2023, the City adopted a policy banning new housing accessory dwelling and duplex units on its residents' property, in clear violation of state laws requiring ministerial approval of such projects. *See* RJN, Ex. 3. The City has also failed to adopt a compliant sixth-cycle housing element.[2]

In the face of these violations, HCD and the Attorney General of California brought an enforcement action against the City on March 8, 2023, which is ongoing. *Id.* The complaint initially focused on the City's unlawful ban on accessory dwelling and duplex units, which the City quickly repealed. *Id.* at Ex. 4. On April 10, 2023, HCD and the Attorney General added a claim addressing the City's failure to adopt a compliant sixth-cycle housing element; a motion to amend the complaint is pending. *See id.* Ex. 4.

---

[2] HCD issued its final determination of the sixth-cycle allocation of 1,341,827 new housing units to SCAG on October 15, 2019. *See* RJN, Ex. 5. SCAG issued its draft RHNA allocations on or about September 11, 2020. *Id.* Huntington Beach appealed its RHNA allocation and argued *inter alia* that as a charter city it was exempt from RHNA law. *Id.* SCAG considered the City's appeal in a January 2021 hearing and ultimately denied it. *Id.* On July 1, 2021, SCAG issued its final distribution of RHNA allocations, with 13,368 units assigned to Huntington Beach. RJN, Ex. 6.

The City was required to adopt a compliant sixth-cycle housing element accounting for its RHNA target by October 15, 2021. *See* RJN, Ex. 7. It submitted a draft to HCD for review on August 1, 2022. *Id.* HCD informed the City that the draft element substantially complied with the Housing Element Law, but that the City Council would need to formally adopt it, and have it found in compliance, by October 15, 2022. *Id.* Otherwise, by law HCD could not find it in compliance until the City completed certain actions to implement the draft housing element. *Id.* The City has not adopted a compliant housing element as of the date of this filing.

State Defendants' Notice of Motion and Motion to Dismiss Complaint (8:23-cv-00421-FWS-ADS)

### C.   The Instant Litigation

In its FAC, the City raises eleven separate causes of action, alleging that Governor Gavin Newsom, HCD Director Gustavo Velasquez, and HCD itself (collectively, the "State Defendants") have violated the United States Constitution's First Amendment, the Fourteenth Amendment's guarantee of procedural due process, the Fourteenth Amendment's guarantee of substantive due process, the Commerce Clause, the California Constitution's provisions regarding charter city authority, the state's own housing laws, the California Constitution's provisions regarding separation of powers, the California Constitution's prohibition on bills of attainder, the California Environmental Quality Act, and the California Constitution's prohibition on special statutes. The City also alleges the State Defendants have somehow committed fraud. *See* FAC, *passim*.

The City filed a TRO application on March 14. *See* ECF No. 10. The TRO application cited the March 21 City Council meeting as cause for this Court's emergency intervention to protect the City from having to adopt its own proposed housing element and to avoid any consequences from the (already in effect) Builder's Remedy. *See* § 65589.5(d)(5). All defendants then in the case opposed the application. ECF No. 29, 31, 33. On March 21, the Court denied the application, holding, *inter alia*, that the City had not sufficiently shown it was entitled to *ex parte* relief, that it had not shown it was likely to succeed on the merits, and that it had not demonstrated a likelihood of irreparable harm. *See* ECF No. 35.

On March 27, the City filed its FAC, which is the operative complaint in this case. ECF No. 38. The FAC differs only slightly from the initial complaint, primarily adding allegations aimed at bolstering the City's First Amendment speech claims. FAC ¶¶ 123-126. As explained below, the FAC is still manifestly deficient and should be dismissed with prejudice.

# STANDARD OF REVIEW

## I.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) allows a party to raise the defense that the court lacks jurisdiction over the subject matter of a claim. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979). A Rule 12(b)(1) motion attacks the allegations of the complaint. In such cases, and similar to the standards applicable to Rule 12(b)(6) motions, the district court must accept the allegations of the complaint as true. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121-22 (9th Cir. 2010). However, where a Rule 12(b)(1) motion is brought, the "party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Id.* at 1122.

## II.   FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). To survive a motion to dismiss, a complaint must contain sufficient facts to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotation omitted). The court accepts as true all material allegations in the complaint and construes them in the light most favorable to the plaintiff. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

# LEGAL ARGUMENT

## I.   THIS CASE IS NOT JUSTICIABLE

### A.   Plaintiffs Lack Standing to Bring Their Claims

The Supreme Court has expressly held that municipal governments *do not have* federal constitutional rights vis-à-vis state governments. This is fatal to Plaintiffs' federal constitutional claims.

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

1       "A municipal corporation, created by a state for the better ordering of

2  government, has no privileges or immunities under the Federal Constitution which

3  it may invoke in opposition to the will of its creator." *Williams v. Mayor & City*

4  *Council of Baltimore*, 289 U.S. 36, 40 (1933). Rather, it is longstanding law that

5  states may control the conduct of their own subdivisions. Over a century ago, the

6  Supreme Court held that "[m]unicipal corporations are political subdivisions of the

7  state, created as convenient agencies for exercising such of the governmental

8  powers of the state as may be [e]ntrusted to them." *Hunter v. City of Pittsburgh*,

9  207 U.S. 161, 178 (1907). Thus, the United States Constitution does not protect

10  municipal corporations vis-à-vis the state: "[T]he state is supreme, and its

11  legislative body, conforming its action to the state Constitution, may do as it will,

12  unrestrained by any provision of the Constitution of the United States." *Id.* at 179.

13       Put simply, subject to the restraints established by its own state constitution,

14  California is entitled to govern the conduct of the city governments it created. Thus,

15  the City of Huntington Beach has no standing in federal court to challenge state

16  laws that govern its operations. "[P]olitical subdivisions of a state may not

17  challenge the validity of a state statute in a federal court on federal constitutional

18  grounds" because "they have no rights against the state of which they are a

19  creature." *Palomar Pomerado Health Sys. v. Belshe*, 180 F.3d 1104, 1107 (9th Cir.

20  1999); *see also City of San Juan Capistrano v. California Pub. Utilities Comm'n*,

21  937 F.3d 1278, 1280 (9th Cir. 2019) ("[W]e have consistently held that political

22  subdivisions lack standing to challenge state law on constitutional grounds in

23  federal court."); *City of S. Lake Tahoe v. California Tahoe Reg'l Plan. Agency,* 625

24  F.2d 231, 233–34 (9th Cir. 1980) (rejecting city's federal constitutional challenge to

25  state regulations for lack of standing). Huntington Beach's status as a charter city is

26  irrelevant to this analysis. *Burbank-Glendale-Pasadena Airport Auth. v. City of*

27  *Burbank*, 136 F.3d 1360, 1364 (9th Cir. 1998) (finding charter city did not have

28

1  standing because "charter cities in California generally are defined as political

2  subdivisions along with other governmental entities").

3         With respect to the City Council and the individual city executives, the

4  Complaint does not assert any constitutional interest separate and distinct from the

5  City's interests. Plaintiffs' First Amendment claim, for example, alleges that state

6  housing laws unconstitutionally compel councilmembers to engage in "speech"

7  about housing needs. But state housing laws impose obligations on *cities*, not on

8  city councilmembers: any interest of Plaintiff councilmembers is entirely derivative

9  of the City's interests. *See City of S. Lake Tahoe,* 625 F.2d at 237. Moreover, any

10  "personal dilemma" that a councilmember may harbor in complying with state law

11  cannot confer standing because the councilmember lacks any "concrete personal

12  injury" that differs from the consequences to the City. *Id.* In short, neither the

13  Council nor its members have standing to raise constitutional challenges to state

14  laws in federal court. *Id.*

15         Because the City lacks standing, all of Plaintiffs' federal claims necessarily

16  fail.

17     **B.   This Court Should Abstain From Hearing This Case Under The**
          ***Younger v. Harris* Doctrine**

18

19  Even if Huntington Beach had standing, this Court should dismiss Plaintiffs'

20  claims under the *Younger* doctrine of abstention due to the vital state interests at

21  stake.

22         *Younger* abstention avoids unnecessary friction in state-federal relations when

23  parties on one side of a dispute file suit in state court and opposing parties file

24  factually related proceedings in federal court. *See Younger v. Harris*, 401 U.S. 37

25  (1971); *United States v. Morros*, 268 F.3d 695, 707 (9th Cir. 2001). Its purpose "is

26  to avoid unnecessary conflict between state and federal governments." *Id. Younger*

27  abstention is appropriate where state court proceedings (1) are ongoing; (2)

28  implicate important state interests; and (3) provide adequate opportunity to raise the

federal claims as defenses. *Middlesex County Ethics Committee v. Garden State Bar Ass'n,* 457 U.S. 423, 431 (1982). The Ninth Circuit also considers whether the requested relief will "enjoin—or have the practical effect of enjoining—ongoing state proceedings." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 758 (9th Cir. 2014). All of these criteria are satisfied in this case.

With respect to parallel proceedings, *Younger* abstention is properly invoked if the state proceedings were initiated "before any proceedings of substance on the merits have taken place in the federal court." *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 238 (1984). Here, the State and HCD filed suit in Orange County Superior Court against Huntington Beach and its officials on March 8, 2023, seeking a writ of mandate due to their failure to comply with state housing laws. A day later, on March 9, 2023, Huntington Beach filed the instant action in this Court. Huntington Beach's decision to run to federal court was clearly a response to the State's earlier-in-time suit filed in state court, which remains pending.

With respect to important state interests, California's pressing commitment to ensuring cities are in compliance with state housing laws and not skirting their obligations to build additional, badly-needed housing fully justifies abstention. A wide variety of state interests qualify as "important" for purposes of *Younger* abstention. *See Ohio Civil Rights Comm'n v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 625-629 (1986). Such vital interests include, as here, property law concerns such as land use and zoning questions. *See Harper v. Public Service Comm'n of West Va.*, 396 F.3d 348, 352-353 (4th Cir. 2005) (collecting cases). The state court action clearly implicates these critical interests.

The parallel state proceedings in Orange County Superior Court also provide Huntington Beach a full opportunity to litigate any federal claims it may be entitled to bring. State court proceedings are presumed adequate to raise the federal claim "in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 15 (1987); *Communications Telesystems Int'l v. California Pub.*

1    *Utility Comm'n*, 196 F.3d 1011, 1020 (9th Cir. 1999) (state judicial review deemed

2    adequate despite court's practice of summarily denying petitions for review of

3    CPUC decisions). Both lawsuits are factually intertwined and relate to Huntington

4    Beach's refusal to comply with valid California law, including the Housing

5    Element Law and the RHNA allocation process. Plaintiffs have every right to raise

6    their purported federal claims as defenses in the pending state court action.

7         Finally, it is indisputable that the City's requested relief would have the

8    practical effect of enjoining ongoing state proceedings. Huntington Beach seeks

9    relief that would, *inter alia*, enjoin the State Defendants from enforcing RHNA

10   laws and declare the housing laws the State Defendants seek to enforce—including

11   the *entirety* of the California Planning and Zoning Laws set forth at California

12   Government Code § 65000 through 66300—to be unconstitutional under both the

13   California and United States Constitutions. *See* FAC, Prayer for Relief. It could not

14   be more obvious that the City's objective is to halt the state's pending lawsuit to

15   enforce the state's housing laws against the City.

16        This Court should not unnecessarily entangle itself in ongoing state court

17   proceedings and abstain from hearing this case under the *Younger* doctrine.

18   **C.    The Eleventh Amendment Bars All of Plaintiffs' State-Law**
19   **         Claims, as Well as All Claims, State and Federal, Against**
     **         Governor Gavin Newsom and the California Department of**
20   **         Housing and Community Development**

21        Assuming Plaintiffs have standing (which they do not) and should this Court

22   decline to abstain under the *Younger* doctrine, the Eleventh Amendment would still

23   bar all of Plaintiffs' state-law claims, as well as all claims, state and federal, against

24   Governor Newsom and HCD.

25        The Eleventh Amendment prohibits federal lawsuits against a state or a state

26   agency unless the state has consented to the suit or Congress has abrogated the

27   state's immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-100

28   (1984). "[T]he principle of sovereign immunity is a constitutional limitation on the

1   federal judicial power established in Art. III." *Id.* at 98. Plaintiffs have not alleged

2   that California has consented to this suit, or that Congress has abrogated the state's

3   Eleventh Amendment immunity. Nor could they in good faith. *See id.* (consent

4   must be "unequivocally expressed"). A suit against a state official is likewise barred

5   under the Eleventh Amendment when the state itself is the "real, substantial party in

6   interest." *Pennhurst*, 465 U.S. at 101. The "general rule is that relief sought

7   nominally against an officer is in fact against the sovereign if the decree would

8   operate against the latter." *Id.*

9       A narrow exception under *Ex Parte Young*, 209 U.S. 123 (1908), permits

10  citizens to sue state officers in their official capacities for prospective declaratory or

11  injunctive relief regarding the officers' alleged violations of *federal* law. *Coal. to*

12  *Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1133-34 (9th Cir. 2012)

13  (emphasis added). Suits attempting to enforce *state* law against a state or its

14  officials, however, do not fall within the *Ex Parte Young* exception. *Pennhurst*, 465

15  U.S. at 121. Thus, all of Plaintiffs' state-law claims (Claims for Relief 5 through

16  11) are squarely barred. *Id.*

17      The Eleventh Amendment also bars all claims, state *and* federal, against

18  Governor Gavin Newsom and HCD. To be amenable to suit, a state official "must

19  have some connection with the enforcement of the act [being challenged]." *Coal. to*

20  *Defend Affirmative Action*, 674 F.3d at 1134 (quoting *Ex Parte Young*). Such

21  connection "must be fairly direct; a generalized duty to enforce state law or general

22  supervisory power over the persons responsible for enforcing the challenged

23  provision will not subject an official to suit." *Id.*

24      Governor Newsom is not alleged to have any direct involvement in enforcing

25  the state housing laws at issue here, and his general duty to see that the laws of the

26  state are "faithfully executed" (Cal. Const., art. V, § 1) is not enough, without more,

27  to subject him to suit under *Ex Parte Young*. Thus, the Eleventh Amendment bars

28  any claims against him. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v.*

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

*Harris*, 729 F.3d 937, 943 (9th Cir. 2013). Further, as an agency of state government, HCD is also entitled to Eleventh Amendment immunity. *City of San Juan Capistrano*, 937 F.3d at 1281 ("The Eleventh Amendment bars claims against a state—including its agencies—in federal court.").

## II.   PLAINTIFFS FAIL TO STATE ANY CLAIMS FOR RELIEF

As set forth below, even if Plaintiffs were properly before this Court, their claims would still fail on the merits.

### A.   The City Cannot Hide Behind the First Amendment as an Excuse for Violating State Housing Laws

Plaintiffs First Amendment claim fails for the same reasons they lack standing. The City is a political subdivision of the state, subject to the state's control and direction, not just with respect to housing requirements, but myriad others. Thus, they cannot use the First Amendment as an excuse to violate state housing and zoning laws. A municipality is a creature of the state and as such is bound to comply with state law, subject only to limits imposed by the *state* constitution. *See* Section 1.A. *supra*. If cities could invoke the First Amendment to avoid their obligations under state housing laws, they could do the same for virtually any law, merely by contending the law forces them to take actions that they "disagree" with. California government and the constitutional order, which makes cities political subdivisions subject to the control and direction of the state, would collapse.

But even viewed through the lens of "free speech," the laws at issue here do not compel or restrict speech in any way, and the claim therefore fails as a matter of law. As the parties invoking the First Amendment, Plaintiffs have the initial burden of showing that it even applies. *See, e.g., Clark v. Cmty. for Creative Non-Violence*, 468 U.S. 288, 293 n.5 (1984). Here, the state laws at issue merely require the City to adopt and cyclically update a housing element as part of its general plan. §§ 65302(c), 65580, *et seq.* Failure to do so has consequences, but those

1   consequences do not punish cities for their *views* or "compel speech"; they impose

2   consequences on cities for maintaining *policies* that violate state law. *See, e.g.,*

3   § 65589.5(d)(5). If the City wants to control housing growth, it must do so in a

4   manner consistent with state law, which requires that it meet its fair share of

5   regional housing needs pursuant to clear and objective rules adopted in advance of a

6   proposed new development. *See California Renters*, 68 Cal.App.5th at 850. The

7   housing laws of which the City complains do not implicate, let alone violate, the

8   First Amendment merely by placing conditions on how local governments regulate

9   the production of housing.

10          Plaintiffs contend that the State is violating their First Amendment rights by

11   requiring the City to adopt legislation that includes certain declarations with respect

12   to the "need for housing," and take certain votes, at the time it adopts a housing

13   element. FAC ¶ 11. But legislators have no protectable First Amendment interest in

14   their votes on legislation. *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117

15   (2011). In *Carrigan*, the Supreme Court upheld a Nevada statute requiring a

16   legislator's recusal in the event of a conflict of interest. *Id*. at 125. According to the

17   Supreme Court, a legislative vote is an "apportioned share of the legislature's

18   power" to adopt or reject legislation. *Id*. at 125-26. "The legislative power thus

19   committed is not personal to the legislator but belongs to the people; the legislator

20   has no personal right to it." *Id*. at 126. A "legislator has no right to use official

21   powers for expressive purposes." *Id*. at 127. "[T]he act of voting symbolizes

22   nothing[,]" it is a "nonsymbolic act." *Id.* at 126, 127. Thus, requiring local

23   legislative bodies to vote on and adopt certain housing policies does not compel or

24   proscribe speech. Nor does requiring the City to make certain findings under

25   CEQA. *See* FAC ¶¶ 130-131. Indeed, if and when the City finally adopts a

26   compliant housing element, it may simply state that it was required to do so by state

27   law; nothing requires the City or city council members to "agree" with state law.

28

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

Indeed, Plaintiffs may publicly state their own views about state and local housing policies (including in the housing element itself), and nothing in the Housing Element Law prevents this. What they cannot do is openly defy state laws requiring the City to adopt land use policies consistent with the State's housing needs and imposed on them by the Legislature.

**B.    The City's Due Process Claims Are Without Merit**

**1.    The City Has No Procedural Due Process Right to Challenge the State's Housing Laws or RHNA Allocation**

Plaintiffs argue their procedural due process rights have been violated because they were excluded from providing input into the various legislative and administrative processes that resulted in its RHNA allocation, and because there is no judicial review of HCD's RHNA determination.

Even if the City possessed "due process" rights as against the State—and it does not—the City's procedural due process claims would fail on the merits. "A procedural due process claim has two distinct elements: (1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). "The base requirement of the Due Process Clause is that a person deprived of property be given an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 984. "[D]ue process does not always require an adversarial hearing . . . a full evidentiary hearing . . . or a formal hearing[.]" *Buckingham v. Sec'y of U.S. Dep't of Agr.,* 603 F.3d 1073, 1082–83 (9th Cir. 2010) (internal quotations and citations omitted). Rather, "[d]ue process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (internal quotation and citation omitted). An analysis of whether due process has been afforded looks to three factors:

[(1)] the *private* interest that will be affected by the official action; [(2)]

the risk of an erroneous deprivation of such interest through the
procedures used, and the probable value, if any, of additional or
substitute procedural safeguards; and [(3)] the Government's interest,
including the function involved and the fiscal and administrative burdens
that the additional or substitute procedural requirement would entail.

*City of Los Angeles v. David,* 538 U.S. 715, 716 (2003) (emphasis added).

Here, Plaintiffs argue that they do not have an opportunity to seek judicial review of their RHNA allocations. FAC ¶¶ 136-147. But there is no "private" interest at stake here, and constitutional due process does not always require judicial intervention. Indeed, as outlined above, Plaintiffs are afforded sufficient process to challenge their regional allocations under statute. *See* § 65584.05 (providing for an administrative appeal process for member cities and counties to challenge their housing allocations to their respective council of governments). In fact, Huntington Beach *already* pursued an appeal to SCAG during the RHNA allocation process, which was denied. *See* footnote 2 *supra*; RJN, Ex. 5. The City has *already been afforded* adequate procedural due process, and its argument to the contrary is both contradicted by judicially noticeable facts and frivolous.

### 2.     Plaintiffs' Substantive Due Process Claim Fails

#### a.     The City Has No Fundamental Right to Control Land Use

The City's substantive due process claim closely tracks its procedural due process claim and also fails as a matter of law. The Due Process Clause of the Fourteenth Amendment includes a substantive component that protects individual liberties from state interference. *Mullins v. Oregon*, 57 F.3d 789, 793 (9th Cir. 1995). But the range of liberty interests that are protected is narrow, and has largely been confined to deeply personal matters such as marriage, procreation, contraception, family relationships, child rearing, education, and a person's bodily integrity. *Franceschi v. Yee*, 887 F.3d 927, 937 (9th Cir. 2018). Plaintiffs do not

and could not allege violation of any such rights. A municipality's control over local zoning is simply not a liberty interest protected by substantive due process.

At base, Plaintiffs' substantive due process claim (like all of its claims in this case) is rooted in their belief that, as a charter city, Huntington Beach enjoys unfettered "home rule" authority to control local zoning and permitting decisions. Plaintiffs are flatly incorrect. As California courts have *repeatedly* explained, the Legislature can permissibly limit a charter city's authority and preempt local law when it deems a subject area to be of "statewide concern," as the Legislature has often done for housing, and as California courts have consistently upheld.[3] *See, e.g. California Renters*, 68 Cal.App.5th at 846-851 (upholding the constitutionality of the HAA against a "home rule" challenge); *Ruegg & Ellsworth v. City of Berkeley*, 63 Cal.App.5th 277, 315 (2021) (upholding the constitutionality of section 65913.4, a streamline permit approval law for multifamily developments, against a "home rule" challenge); and *Buena Vista Gardens Apartments Assn. v. City of San Diego Planning Dept.*, 175 Cal.App.3d 289, 306-307 (1985) (upholding the constitutionality of the Housing Element Law against a "home rule" challenge.) Plaintiffs do not have a "right" to control local zoning under the California Constitution, much less a *fundamental* right to control local zoning that is protected by the United States Constitution. Simply put, Plaintiffs have no likelihood of success on their substantive due process claim.

### b.   The State's Housing Laws Easily Pass Rational Basis Review

Even if Plaintiffs could raise a valid constitutional claim (and they do not), they do not allege any circumstances triggering a level of scrutiny beyond rational basis review, which the State's housing laws would easily meet. *Romero-Ochoa v. Holder*, 712 F.3d 1328, 1331 (9th Cir. 2013) (statute did "not implicate a

---

[3] In fact, one California court has already decided the *exact issue* of the Housing Element Law's constitutionality in a "home rule" challenge brought by Huntington Beach. *See* RJN, Ex. 1.

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

1   fundamental right or target a suspect class, so it is subject to rational basis review").

2   Rational basis review "does not provide 'a license for courts to judge the wisdom,

3   fairness, or logic of legislative choices.'" *Id.* (quoting *FCC v. Beach Commc'ns,*

4   *Inc.,* 508 U.S. 307, 313 (1993)). The issue is not whether the legislature has chosen

5   the best means for achieving its purpose, but only whether there are plausible

6   reasons for the legislature's action. *Id.* And in this case, the Legislature has

7   repeatedly explained its rationale for passing the various housing laws, applying

8   them to charter cities, and requiring cities to adequately zone for new housing via

9   the RHNA process. *See, e.g.* §§ 65580 (Legislature's findings with respect to

10  Housing Element Law); 65589.5(a) (Legislature's findings with respect to HAA).

11  The state's housing laws easily pass muster under rational basis review.

12      **C.   The City's Dormant Commerce Clause Claim is Without Merit**

13      The FAC does not state a viable dormant Commerce Clause claim. Dormant

14  Commerce Clause jurisprudence is primarily "driven by concern about economic

15  protectionism—that is, regulatory measures designed to benefit in-state economic

16  interests by burdening out-of-state competitors." *Dep't of Revenue v. Davis,* 553

17  U.S. 328, 337-338 (2008). "The principal objects of dormant Commerce Clause

18  scrutiny are statutes that discriminate against interstate commerce." *CTS Corp. v.*

19  *Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987). A state regulation does not

20  become vulnerable to invalidation under the dormant Commerce Clause merely

21  because it affects interstate commerce. *See S. Pac. Co. v. State of Ariz.,* 325 U.S.

22  761, 767, 65 S.Ct. 1515 (1945). And a critical requirement for proving

23  a violation of the dormant Commerce Clause is that there must be a *substantial*

24  *burden* on interstate commerce. *See Nat'l Ass'n of Optometrists & Opticians v.*

25  *Harris*, 682 F.3d 1144, 1148 (9th Cir. 2012).

26      The City claims that California's housing laws are an attempt to offer

27  "cheaper, more abundant housing than other states," and that the housing laws

28  "forc[e] Plaintiff(s), like other cities in California, to use and divert building

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

supplies and materials from other States" to build additional housing. FAC ¶¶ 165, 167. However, the city utterly fails to explain how California's housing laws, which require cities to rezone to *allow* the production of housing within California's own borders, directly regulate, discriminate against, or excessively burden interstate commerce. Neither does the City explain how California's laws requiring cities to zone for additional housing favor in-state economic interests over out-of-state interests. The housing laws have no requirement, for example, that California cities require homebuilders in their jurisdiction to use exclusively California-manufactured products. Any impact on interstate commerce is clearly indirect and negligible.

Plaintiffs have not and cannot plausibly plead that California's housing laws, which regulate purely in-state municipal governance, violate the dormant Commerce Clause. This claim should be dismissed.

### D.   The Court Should Dismiss All State Law Claims

In addition to its federal claims, the City contends that, *inter alia*, the State's housing laws violate the California Constitution, that the State's housing laws constitute an illegal bill of attainder, that the State is somehow forcing the City to violate CEQA, and that the State defendants have somehow engaged in fraud. As the City's complaint suffers from fatal jurisdictional defects and has not pled any viable federal claims, as discussed *supra*, this Court must dismiss the City's state law claims, even if they could survive the Eleventh Amendment (and they do not).

Where a district court dismisses all federal claims on the merits, it has discretion under 28 U.S.C. § 1367(c)(3) to adjudicate the remaining claims. *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001). However, if the court dismisses for lack of subject matter jurisdiction, it has *no* discretion and must dismiss *all* claims. *Id.* As explained above, the City does not have standing to pursue federal claims against the State Defendants in federal court. Thus, this Court lacks subject matter jurisdiction over the City's federal claims and

1   must dismiss the state law claims. *Scott v. Pasadena Unified School Dist.*, 306 F.3d
2   646, 664 (9th Cir. 2002). And even if the Court does not dismiss all federal claims,
3   it may and should refuse to exercise jurisdiction over state law claims that, as here,
4   would predominate over any remaining federal claim. 28 U.S.C. § 1367(c)(2).

5       This Court also has discretion to decline jurisdiction over Plaintiffs'
6   declaratory relief claims, and should do so here. Under the Federal Declaratory
7   Judgment Act, 28 U.S.C. § 2201(a), the exercise of jurisdiction in such cases is
8   committed to the "sound discretion of the federal district courts." *Huth v. Hartford*
9   *Ins. Co. of the Midwest*, 298 F.3d 800, 802 (9th Cir. 2002) (citations
10  omitted). "Even if the district court has subject matter jurisdiction, it is not required
11  to exercise its authority to hear the case." *Id*. In deciding whether to entertain a
12  declaratory relief action, courts consider how the action would affect the principles
13  of judicial economy, comity, and cooperative federalism that the Declaratory
14  Judgment Act was designed to advance. *Gov't Employees Ins. Co. v. Dizol*, 133
15  F.3d 1220, 1224 (9th Cir. 1998) (en banc). Three primary factors guide the court's
16  exercise of its discretion: a district court should (1) avoid duplicative litigation, (2)
17  discourage litigants from filing declaratory actions as a means of forum shopping,
18  and (3) avoid needless determination of state law issues. *Huth*, 298 F.3d at 803;
19  *Dizol*, 133 F.3d at 1225. "If there are parallel state proceedings involving the same
20  issues and parties pending at the time the federal declaratory action is filed, there is
21  a presumption that the entire suit should be heard in state court." *Dizol*, 133 F.3d at
22  1225.

23      These factors strongly weigh against exercising federal jurisdiction in this
24  case. This case is a transparent attempt to find a friendlier forum for the City's
25  baseless and repeatedly rejected "home rule" challenges to state housing laws.
26  Further, the City could just as well raise its arguments—however meritless—as
27  defenses in the enforcement action brought by the State Defendants and currently
28  pending in Orange County Superior Court. The City does not need federal

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

1  declaratory relief in advance of such an action, particularly given its specious bases

2  for asserting federal subject matter jurisdiction, and also because it could always

3  bring itself into compliance with the Housing Element Law by adopting and

4  implementing a compliant housing element. *See* § 65585(f), (i).

5      This case turns ultimately on questions of state, not federal, law, and because

6  any legitimate federal questions that may arise can be litigated in state court at the

7  appropriate time, this Court should decline to exercise jurisdiction over the entire

8  case.

9                              **CONCLUSION**

10     For the reasons above, the Complaint and all claims therein should be

11  dismissed without leave to amend.

12

13  Dated: May 1, 2023                    Respectfully submitted,

14                                        ROB BONTA
                                          Attorney General of California
15                                        DANIEL A. OLIVAS
                                          Senior Assistant Attorney General
16                                        DAVID PAI
                                          Supervising Deputy Attorney General

17

18                                        */s/ Thomas Kinzinger*

19                                        MATTHEW T. STRUHAR
                                          THOMAS P. KINZINGER
20                                        Deputy Attorneys General
                                          *Attorneys for Defendants, Gavin*
21                                        *Newsom, in his official capacity as*
                                          *Governor of the State of California,*
22                                        *and individually; Gustavo Velasquez,*
                                          *in his official capacity as Director of*
23                                        *the State of California Department of*
                                          *Housing and Community*
24                                        *Development, and individually; and*
                                          *the California Department of Housing*
25                                        *and Community Development*

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Governor Gavin Newsom, Gustavo Velasquez, and State of California Department of Housing and Community Development, certifies that this brief contains 6,963 words, which:

_x_ complies with the word limit of L.R. 11-6.1.

__ complies with the word limit set by court order dated ___.

Dated: May 1, 2023

Respectfully submitted,

ROB BONTA
Attorney General of California

*/s/ Thomas Kinzinger*

THOMAS P. KINZINGER
Deputy Attorney General
*Attorneys for Defendants, Gavin Newsom, in his official capacity as Governor of the State of California, and individually; Gustavo Velasquez, in his official capacity as Director of the State of California Department of Housing and Community Development, and individually; and the California Department of Housing and Community Development*

State Defendants' Notice of Motion and Motion
to Dismiss Complaint
(8:23-cv-00421-FWS-ADS)

# CERTIFICATE OF SERVICE

Case Name:   **City of Huntington Beach, et al.**          No.     **8:23-cv-00421**
                    **v. Gavin Newsom, et al.**

I hereby certify that on <u>May 1, 2023</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

- **STATE DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>May 1, 2023</u>, at Los Angeles, California.

<div style="display:flex; justify-content:space-between;">

D. Arana
Declarant

Signature

</div>

SA2023301426
65918486.docx