MICHAEL E. GATES, City Attorney (SBN 258446)
NADIN S. SAID, Senior Deputy City Attorney (SBN 309802)
Office of the City Attorney
2000 Main Street, P.O. Box 190
Huntington Beach, CA 92648
(714) 536-5555
Email:  Michael.Gates@surfcity-hb.org
Email:  Nadin.Said@surfcity-hb.org

Attorneys for Plaintiffs
CITY OF HUNTINGTON BEACH, HUNTINGTON
BEACH CITY COUNCIL, MAYOR TONY STRICKLAND
and MAYOR PRO TEM GRACEY VAN DER MARK

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CITY OF HUNTINGTON BEACH, a California Charter City, and Municipal Corporation, the HUNTINGTON BEACH CITY COUNCIL, MAYOR OF HUNTINGTON BEACH, TONY STRICKLAND, and MAYOR PRO TEM OF HUNTINGTON BEACH, GRACEY VAN DER MARK<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California, and individually; GUSTAVO VELASQUEZ in his official capacity as Director of the State of California Department of Housing and Community Development, and individually; STATE LEGISLATURE; STATE OF CALIFORNIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT; SOUTHERN | CASE NO. 8:23-CV-00421-FWD-ADSx<br><br>**PLAINTIFFS' COLLECTIVE OPPOSITION TO STATE DEFENDANTS' MOTION TO DISMISS COMPLAINT AND SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT; AND <u>REQUEST FOR HEARING FOR ORAL ARGUMENT</u>**<br><br>[Declarations of Mayor Tony Strickland and Mayor Pro Tem Gracey Van der Mark and Request for Judicial Notice filed concurrently herewith]<br><br>Date:   July 27, 2023<br>Time:  10:00 a.m.<br>Crtm:  10D |

1

1
2
3
4

CALIFORNIA ASSOCIATION OF
GOVERNMENTS; and
DOES 1-50, inclusive,

      Defendants.

5       Plaintiffs CITY OF HUNTINGTON BEACH (the "City"), HUNTINGTON

6  BEACH CITY COUNCIL, MAYOR OF HUNTINGTON BEACH TONY

7  STRICKLAND ("Mayor"), and MAYOR PRO TEM OF HUNTINGTON BEACH

8  GRACEY VAN DER MARK ("Mayor Pro Tem") (collectively "Plaintiffs") hereby

9  submit their collective Opposition to the State Defendants ("State") and Southern

10  California Association of Governments ("SCAG") (collectively "State Defendants")

11  Motion to Dismiss pursuant to the following grounds:

12    1. The City's Mayor, Tony Strickland, and Mayor Pro Tem, Gracey Van der

13       Mark, who are individuals elected to City Council by the people of

14       Huntington Beach pursuant to the City's Charter, have standing to sue the

15       State, its named actors, and SCAG in Federal Court for enumerated

16       Constitutional violations.

17    2. The City of Huntington Beach, distinctly both a Municipal Corporation and

18       a City Chartered under Article XI of the California Constitution, has

19       standing to sue the State, its named actors, and SCAG in Federal Court for

20       the enumerated Constitutional violations.

21    3. This Court may exercise supplemental jurisdiction to adjudicate the integral

22       State law claims.

23    4. Abstention is not appropriate here to prevent this Court from adjudicating

24       the issues presented in the Plaintiffs' federal Complaint.  The State's

25       pending State court action against the City is moot in part, not ripe in part,

26       and should soon be dismissed.  The two moot issues against the City *involve*

27       *Alternative Dwelling Units (ADU's) laws and SB 9 laws*, **which have**

28

***nothing to do with*** the Plaintiffs' Constitutional and RHNA Laws[1] based *federal Complaint.*  To be clear, the legal conflicts rest on entirely different sets of laws, with different facts and different issues presented.

5. The City has presented cognizable Federal and State claims that are of vast importance to the citizens, City Councils, and the entire State of California, such that this Court must hear and adjudicate the merits.

This Opposition is based on the Memorandum of Points and Authorities herein, Plaintiffs' Request for Judicial Notice, Declarations of Mayor Tony Strickland and Mayor Pro Tem Gracey Van der Mark, and the exhibits referenced within the Declarations and contained in the Request for Judicial Notice.

**PLAINTIFFS ALSO REQUEST A HEARING FOR ORAL ARGUMENT** by the City's attorneys, Michael E. Gates and Nadin Said, based upon the fact that this is a seminal case that will have widespread implications on the State's legislative authority with regard to Federal Constitutional rights and State Constitutional rights for years to come, and, there will be great value presented by such an opportunity for newer attorney, Nadin Said, to participate in this way in this Court.

Dated:       June 6, 2023          MICHAEL E. GATES, CITY ATTORNEY

                              By:_____*/s/  MICHAEL E. GATES*_____
                                   MICHAEL E. GATES, CITY ATTORNEY
                                   Attorney for Plaintiffs,
                                   CITY OF HUNTINGTON BEACH,
                                   HUNTINGTON BEACH CITY COUNCIL,
                                   MAYOR TONY STRICKLAND and
                                   MAYOR PRO TEM GRACEY VAN DER MARK

---

[1] "RHNA Laws" herein is the same as defined in the Complaint, including the extensive series of California Government Codes.

# **TABLE OF CONTENTS**

**Page(s)**

TABLE OF AUTHORITIES ..................................................................6

I.      INTRODUCTION ................................................................11

II.     PLAINTIFFS HAVE RIGHTS TO RELIEF BEYOND SPECULATION.....12

III.    PLAINTIFFS HAVE STANDING IN FEDERAL COURT ..........................13

     A.    Individual, Mayor Tony Strickland, Has Standing................................13

     B.    Individual, Mayor Pro Tem Gracey Van der Mark, Has Standing.......14

     C.    All Plaintiffs Have Standing ................................................14

     D.    The Chartered City of Huntington Beach has Standing ......................15

         i.     A Chartered City is not an Arm of the State .............................15

         ii.    The City is an Independent Municipal Corporation and is Chartered ................................................................16

         iii.   Cases City of South Lake Tahoe and Burbank-Glendale-Pasadena Airport Auth are Distinguishable and Inapplicable .........................17

     E.    Ex Parte Young Applies to Governor Newsom and Director Velasquez ................................................................19

V.      ABSTENTION IS NOT APPROPRIATE HERE ..........................................21

     A.    The Younger v. Harris Abstention Doctrine Does Not Apply ...........21

VI.     THERE ARE VIABLE FIRST AMENDMENT VIOLATIONS CLAIMS  .23

     A.     RHNA Laws, CEQA Violate First Amendment Rights of Plaintiffs..23

     B.    The Nev. Comm'n on Ethics v. Carrigan Case is Completely Inapplicable ................................................................26

VII.    THE RHNA LAWS ARE UNCONSTITUTIONALLY VAGUE .................27

VIII.   PROCEDURAL DUE PROCESS IS SUFFICIENTLY PLED .....................28

IX.     A MORE RESTRICTIVE REVIEW STANDARD IS APPLIED ................30

X.      RHNA LAWS VIOLATE FOURTEENTH AMENDMENT RIGHTS  ........30

XI.     COMMERCE CLAUSE VIOLATIONS ARE SUFFICIENTLY PLED .......32

XII.    SUPPLEMENTAL JURISDICTION SHOULD BE EXERCISED ..............34

XIII.   PLAINTIFFS' STATE CLAIMS WERE SUFFICIENTLY PLED ..............34

     A. The Violations of the California Const., Art XI. § 5 was Sufficiently Pled ................................................................34

## TABLE OF CONTENTS (CONT.)

**Page(s)**

B. Judicial Review Should Not Be Precluded ...................................36

C. State RHNA Laws Violate Separation of Powers .....................37

D. Plaintiffs' Bill of Attainder Claim is Sufficiently Pled ............................37

E. Plaintiffs Must Violate CEQA to Certify the Housing Element .................38

F. The RHNA Laws are a Special Statute  ...............................39

XIV.   LEAVE TO AMEND SHOULD BE AVAILABLE  ......................................40

XV.   CONCLUSION .............................................................40

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Arizona Students' Ass'n v. Arizona Bd. of Regents,*
    824 F.3d 858 (9th Cir. 2016) ..................................................20

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ....................12

*Balistreri v. Pacifica Police Dep't,*
    901 F.2d 696 (9th Cir. 1988) ..................................................40

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ...................................................12, 13

*Board of Education v. Allen,*
    392 U.S. 236 (1968) ...........................................................18

*Bond v. Floyd,*
    385 U.S. 116 (1966) ...................................... 14, 23-24, 26

*Boquist v. Courtney,*
    32 F.4th 764 (9th Cir. 2022)........................................ 14, 23-24

*Borough of West Mifflin v. Lancaster,*
    45 F.3d 780 (3rd Cir. 1995).................................................34

*Brewster v. Bd. Of Educ. Of Lynwood Unified Sch. Dist.,*
    149 F.3d 971 (9th Cir. 1998).................................................28

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank,*
    136 F.3d 1360 (9th Cir. 1998) ..........................................17-19

*Cahill v. Liberty Mut. Ins. Co.,*
    80 F.3d 336 (9th Cir. 1996).................................................12

*Cent. State Univ. v. Am. Ass'n of Univ. Prof.,*
    526 U.S. 124 (1999) ...........................................................31

*Chitwood v. Hicks,*
    219 Cal. 175 (1933).............................................................39

*City of Irvine v. Southern California Ass'n of Governments,*
    (2009)175 Cal.App.4th 506.............................................36-37

*City of Philadelphia v. New Jersey,*
    437 U.S. 617 (1978) ...........................................................33

## TABLE OF AUTHORITIES (CONT.)

**Page(s)**

## CASES (Cont.)

*City of South Lake Tahoe v. California Tahoe Reg'l Planning Agency,*
  652 F.2d 231 (9th Cir 1980).................................................................17

*City of Tucson v. U.S. West Commc'n, Inc.,*
  284 F.3d 1128 (9th Cir. 2002)...........................................................21

*Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.,*
  621 F.3d 554 (6th Cir. 2010)............................................................21

*Corporacion Insular de Seguros v. Garcia,*
  680 F. Supp. 476 (D.P.R. 1988) ........................................................22

*County of Amador v. El Dorado County Water Agency*
  (1999) 76 Cal. App. 4th 931 ............................................................38

*Culinary Studios, Inc. v. Newsom,*
  517 F. Supp. 3d 1042 (E.D. Cal. 2021) .............................................20

*Davis v. FEC,*
  554 U.S. 724 (2008) ...................................................................12-13

*Doe v. Regents of the Univ. of Cal.,*
  891 F.3d 1147 (9th Cir. 2018)..........................................................20

*Eason v. Clark County Sch. Dist.,*
  303 F.3d 1137 (9th Cir. 2002)......................................................15-16

*Erotic Serv. Provider Legal Educ. & Research Project v. Gascon,*
  880 F.3d 450 (9th Cir. 2018) ...........................................................31

*Ex Parte Young,*
  209 U.S. 123 (1908). .................................................................19-20

*Expressions Hair Design v. Schneiderman,*
  (2017) 137 S. Ct. 1144 ...................................................................23

*Garcetti v. Ceballos,*
  547 U.S. 410 (2006) .......................................................................23

*Gen. Motors Corp. v. Tracy,*
  519 U.S. 278 (1997) .......................................................................32

*Haw. Hous. Auth. v. Midkiff,*
  467 U.S. 229 (1984).......................................................................21

## <u>TABLE OF AUTHORITIES (CONT.)</u>

<u>Page(s)</u>

<u>CASES (Cont.)</u>

*Haytasingh v. City of San Diego*
    (2021) 66 Cal. App. 5th 429 ................................................. 16, 18-19

*Heller v. Doe,*
    509 U.S. 312 (1993) ....................................................................31

*Hooper v. Shinn,*
    985 F.3d 594 (9th Cir. 2021) .....................................................40

*In re D.N.,*
    14 Cal. 5th 202 (2022) ...............................................................37

*Italian Colors Rest. v. Becerra,*
    878 F.3d 1165 (9th Cir. 2018) ...........................................13, 24

*Kuba v. 1-A Agr. Ass'n,*
    387 F.3d 850 (9th Cir. 2004) .....................................................34

*Lane v. Franks,*
    573 U.S. 228 (2014) ...................................................................23

*Libertarian Party of L.A. Cty. v. Bowen,*
    709 F.3d 867 (9th Cir. 2013) ....................................................13

*Lopez v. Smith,*
    203 F.3d 1122 (9th Cir. 2000) ..................................................40

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...................................................................13

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ...................................................................28

*Mitchell v. Los Angeles,*
    861 F.2d 198 (9th Cir. 1989) ...............................................15-16

*Nat'l Council of La Raza v. Cegavske,*
    800 F.3d 1032 (9th Cir. 2015) ..................................................40

*Nev. Comm'n on Ethics v. Carrigan,*
    564 U.S. 117 (2011) ..............................................................26-27

# TABLE OF AUTHORITIES (CONT.)

**Page(s)**

## CASES (Cont.)

*Otis v. Los Angeles,*
52 Cal. App. 2d 605 (1942) .................................................................18

*Quackenbush v. Allstate Ins. Co.,*
517 U.S. 706 (1996) ...........................................................................21

*Reeves, Inc. v. Stake,*
447 U.S. 429 (1980) ...........................................................................33

*Riley's Am. Heritage Farms v. Elsasser,*
29 F.4th 484 (9th Cir. 2022) ..............................................................20

*River Vale v. Orangetown,*
403 F.2d 684 (2nd Cir. 1968) .............................................................29

*Romer v. Evans,*
517 U.S. 62035 (1996) .......................................................................31

*S.-Cent. Timber Dev., Inc. v. Wunnicke,*
467 U.S. 82 (1984) .............................................................................32

*Shurtleff v. City of Boston,*
142 S. Ct. 1583 (2022) .......................................................................23

*Steen v. Appellate Div. of Sup. Ct.,*
59 Cal.4th 1045 (2014) .......................................................................37

*Terminal Plaza Corp. v. City,*
177 Cal. App. 3d 892 (1986) ..............................................................30

*Thompson v. Davis,*
295 F.3d 890 (9th Cir. 2002) ..............................................................12

*Tingley v. Ferguson,*
47 F.4th 1055 (9th Cir. 2022) .............................................................13

*United Mine Workers v. Gibbs,*
383 U.S. 715 (1966) ...........................................................................34

*United States v. Osinger,*
753 F.3d 939 (9th Cir. 2014) ........................................................27-28

*Virginia v. Am. Booksellers Ass'n,*
484 U.S. 383 (1988) ...........................................................................13

## TABLE OF AUTHORITIES (CONT.)

**Page(s)**

**CASES (Cont.)**

*Wickard v. Filburn*,
   317 U.S. 111 (1942) ................................................................33

*Younger v. Harris*,
   401 U.S. 37 (1971) ................................................................21


**STATUTES AND OTHER AUTHORITY**

28 U.S.C. § 1367(a) ..................................................................34

Cal. Const., Art. III, § 3 ............................................................37

Cal. Const., Art XI. § 5 .......................................................18, 34-35

F.R.C.P. Rule 12(b)(6) ..............................................................12

Gov. Code § 15093 ..................................................................25

Gov. Code § 65583, *et. seq.* ...................................................27, 35

Gov. Code § 65584.04 ...............................................................29

Gov. Code § 65589.5 *et. seq.* ....................................................25

Gov. Code § 67040 ..................................................................17

Public Utilities Code section 21661.6 ..............................................19

U.S. Const. Art. I, § 8, cl. 3.  ...............................................32, 37

## I.   INTRODUCTION

The City of Huntington Beach Plaintiffs request this Court deny both Motions to Dismiss.  The State Defendants present several errors.  First, the State Defendants improperly *focus on policy* arguments to cast Huntington Beach as a bad actor for "shirking responsibility" and not delivering on its "fair share" of housing.  Even considering this improper *policy* argument, the Plaintiffs will prove that the City of Huntington Beach *has done more* to advance housing (including affordable housing) *than any other city in the region* over the past couple decades.  Plaintiffs will prove that this case is not about stopping affordable housing; it is about the State's violations of law and trampling of the Plaintiffs' constitutional rights.

Second, the State Defendants "lump" the individuals, Mayor, Tony Strickland, and Mayor Pro Tem, Gracey Van der Mark, in with (Municipal Corporation) "the City" when making lack of standing arguments.  Wrongly, the State Defendants are hoping this Court treats all Plaintiffs as a mere political subdivision of the State, thereby not appreciating their rightful standing to maintain their rightful constitutional violations claims. While case law, discussed in detail *infra*, is clear the Chartered City of Huntington Beach is *not* a political subdivision of the State, the individual Plaintiffs, the Mayor and Mayor Pro Tem, and the City Council Members cannot be denied their own standing, regardless.  The State Defendants cite *inapplicable* cases to argue the City is a political subdivision of the State and therefore has no standing.

 Third, the State Defendants dedicate considerable briefing to the City's "losing record" on prior legal challenges.  However, the constitutional challenges at bar to the State's RHNA Laws and various actions of the named State actors is different and unlike the City's other, previous challenges.  Fourth, the State Defendants have been sending heavy-handed messages to this Court, to other courts, and to cities throughout California that deference to the State's power and deference to its laws is expected.  The State essentially wants courts to certify that *regardless*

*of violations of Federal and State Constitutional rights*, the State's power to micromanage local zoning (which has historically been a matter of local control by City Councils) is supreme and only strict compliance with the State's unconstitutional overreach will be tolerated.

Plaintiffs properly allege and are prepared to prove that the State's recent Housing and RHNA Laws and the actions of the named State actors *force* Huntington Beach's City Council to vote *against their will* and in favor of certain State-mandated 13,368 units of high-density RHNA housing.  The effects of this State-mandated housing policy, over the objections of the City Council, would cause high-density housing to be built next to, or within, already-developed commercial and industrial zones, or where the City has already-developed residential zones for single-family homes, precisely what decades of City zoning code has sought to prevent.  The State Defendants are forcing its own policy decisions on the City while violating the Plaintiffs' constitutional rights.  Courts are a place of refuge and protection from such violations and Plaintiffs here seek this Court's help.

## II.   PLAINTIFFS HAVE RIGHTS TO RELIEF BEYOND SPECULATION

When considering a Motion to Dismiss under Rule 12(b)(6), the Court construes the claim in the light most favorable to the nonmoving party.  A Motion to Dismiss can be granted only if the complaint, with all factual allegations accepted as true, fails to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).  In reviewing a Motion to Dismiss under Rule 12(b)(6), the Court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996).

Here, the Plaintiffs' First Amended Complaint ("Complaint") sets forth more than sufficient factual allegations above the speculative level contemplated by *Bell Atlantic Corp. v. Twombly*.  The factual allegations demonstrate the claims to which the relief is not only plausible, but appropriate.  Under this standard, the City has met the requirements to overcome the Motions to Dismiss.

## III.  PLAINTIFFS *HAVE STANDING* IN FEDERAL COURT

The constitutional requisites under Article III for standing are that the plaintiff must personally have: 1) suffered some actual or threatened injury; 2) that injury can fairly be traced to the challenged action of the defendant; and 3) that the injury is likely to be redressed by a favorable decision.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992).  Importantly, standing is not "dispensed in gross," and accordingly, a plaintiff must demonstrate standing for each claim "he seeks to press and for each form of relief that is sought." *See Davis v. FEC*, 554 U.S. 724, 734 (2008).  When threatened enforcement efforts implicate First Amendment rights, the standing inquiry tilts dramatically towards finding of standing.  Even when "self-censorship" is alleged, without actual prosecution, there is a sufficient injury under Article III. V*irginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 393 (1988); *see also Libertarian Party of L.A. Cty. v. Bowen*, 709 F.3d 867, 870 (9th Cir. 2013) ("[A] chilling of the exercise of First Amendment rights is, itself, a constitutionally sufficient injury."). *Italian Colors Rest. v. Becerra*, 878 F.3d 1165 (9th Cir. 2018). "[T]he standing inquiry" is "relaxed" for First Amendment claims. *Tingley v. Ferguson*, 47 F.4th 1055, 1066 (9th Cir. 2022)

### A. Individual, Mayor Tony Strickland, Has Standing

The Mayor of Huntington Beach, Tony Strickland ("Mayor"), an individual, has alleged various constitutional violations, including of his First Amendment, for instance, within the Complaint.  In his most recent Declaration in support of Plaintiffs' Opposition to the Motions to Dismiss, the Mayor articulates how his free speech is being violated, and how the RHNA Laws process forces him, through

essentially State-compelled speech, to make *Statements* of Overriding Considerations in favor of implementing the State-mandated 13,368 high-density RHNA Units of housing in the City *against his will and over his objections.* See Decl. of Tony Strickland, ¶¶ 2-10.

Every individual is protected by the U.S. Constitution to his or her free speech. See *Bond v. Floyd*, 385 U.S. 116, 135-37, (1966); see also *Boquist v. Courtney*, 32 F.4th 764, 780 (9th Cir. 2022).  As an individual aggrieved by the operation of the State's RHNA Laws, and by the actions of the named State actors (those Defendants), the Mayor has articulated through pleading actual and ongoing and continuous harm, and threat of harm to his exercise of free speech.

**B. Individual, Mayor Pro Tem Gracey Van der Mark, Has Standing**

The Mayor Pro Tem of Huntington Beach, Gracey Van Der Mark ("Mayor Pro Tem"), also an individual, has alleged various constitutional violations, including of her First Amendment, for instance, within the Complaint.  In her most recent Declaration in support of Plaintiffs' Opposition to the Motions to Dismiss, Mayor Pro Tem articulates how her free speech is being violated, and how the RHNA Laws process forces her, through essentially State-compelled speech, to make *Statements* of Overriding Considerations in favor of implementing the State-mandated 13,368 high-density RHNA Units of housing in the City *against her will and over her objections.* See Decl. of Gracey Van der Mark, ¶¶ 2-17.  Every individual is protected by the U.S. Constitution to his or her free speech.  See *Bond, supra,* at 135-37; *Boquist, supra* at 780.  As an individual aggrieved by the operation of the State's RHNA Laws, and by the actions of the named State actors, the Mayor Pro Tem has articulated through pleading actual and ongoing and continuous harm, and threat of harm to her exercise of free speech.

**C. All Plaintiffs Have Standing**

In addition, the Huntington Beach City Council ("City Council" or "Council Members"), included among the "Plaintiffs," is the elected body of seven members,

elected by the people of the City pursuant to the City's Charter.  The Plaintiffs, all of them, have articulated a basis for standing in the Complaint.

Plaintiffs' allegations as pled in the Complaint of what constitutes State-compelled speech, in violation of the First Amendment, are clear, unambiguous, substantial, and viable.  Through its RHNA Laws and other actions by State Defendants, if the City does not comply with the State's mandates by taking certain prescribed (i.e., pre-ordained or "fixed") local legislative actions and adopt certain State-mandated speech (through adoption of the Statement of Overriding Considerations pursuant to the California Environmental Quality Act ("CEQA")), the State Defendants will commandeer control over City's zoning and the City will face excessive fines and fees as a penalty.  Second, the injury can be directly traced to the RHNA Laws, Governor Gavin Newsom, the State's Housing and Community Development Department, its Director Gustavo Velasquez, and SCAG.  Moreover, the State Defendants have created the RHNA Laws at issue, they enforce the RHNA Laws, and they have *forced* 13,368 high-density RHNA Units of housing on the City of Huntington Beach, which estimates show an increase in the City's housing by 50% in the next number of years.  This massive, unconstitutional power-grab by the State and the resulting high-density increase is damaging and harmful to the Plaintiffs and the Plaintiffs' injuries should be redressed by this Court.

**D. The Chartered City of Huntington Beach has Standing**

**i.   A Chartered City is not an Arm of the State**

To determine whether an entity is an arm of the state, there are the five factors to consider: (1) "whether a money judgment would be satisfied out of state funds," (2) "whether the entity performs central governmental functions," (3) "whether the entity may sue or be sued," (4) "whether the entity has the power to take property in its own name or only the name of the state," and (5) "the corporate status of the entity." *Mitchell v. Los Angeles*, 861 F.2d 198 (9th Cir. 1989); see also *Eason v. Clark County Sch. Dist.*, 303 F.3d 1137, 1141 (9th Cir. 2002).  In *Eason,* the Ninth

Circuit Court of Appeal held that the school district was not entitled to Eleventh Amendment immunity as it was not an arm of the state.

Similarly, here, considering the *Mitchell* and *Eason* factors, the City is not an arm of the State.  The City was not created by State law and does not seek funds from the State when a judgment is entered against it. See City's Charter, Request for Judicial Notice 1 ("RJN").  The City does not perform central government function and concerns itself with local matters based on local laws and regulations.  The City does, and has the power to, take property into its own name and has a corporate status.  Thus, under these factors, the City does not function as an arm of the State.

### ii.  The City is an Independent Municipal Corporation and is Chartered

The City is a Municipal Corporation and a Charter City[2] organized and existing under a freeholder's charter; and not a political subdivision of the State.  As such, the City exercises "Home Rule" powers over its Municipal Affairs, including without limitation local zoning and land use matters, as authorized by Article XI, Section 5 of the California Constitution.  In a recent 2021 case, the Court of Appeal made clear by comparing counties to **municipal corporations as chartered cities**:

> "It is the free consent of the persons composing them that brings into existence municipal corporations, and they are used for the promotion of their own local and private advantage and convenience, while it is the sovereign will [of the state] which brings into being counties as local subdivisions of the state; and the establishment of such political subdivisions of the state is accomplished without the solicitation, consent or concurrent action of the people residing within them. **Cities, therefore, are distinct individual entities, and are <u>not</u> connected political subdivisions of the state.**  As a matter of fact, **municipalities, and particularly charter cities, are in a sense independent political organizations and do not pretend to exercise any functions of the state.** They exist in the main for the purposes of local government."

*Haytasingh v. City of San Diego* (2021) 66 Cal. App. 5th 429, 436; emphasis added. *Haytasingh* is dispositive; the City has standing.

---

[2]  Online:  Charter, City of Huntington Beach: https://library.qcode.us/lib/huntington_beach_ca/pub/municipal_code/item/charter-preamble

### iii. Cases *City of South Lake Tahoe* and *Burbank-Glendale-Pasadena Airport Auth* are Distinguishable and Inapplicable

In *City of South Lake Tahoe v. California Tahoe Reg'l Planning Agency,* 652 F.2d 231 (9th Cir 1980), the Ninth Circuit Court of Appeal held the City could not bring a claim under the Fourteenth Amendment, and that the councilmembers did not have a judicially cognizable concrete injury. *South Lake Tahoe* at 233-238. The Ninth Circuit focused on two narrow issues to determine the City and its councilmembers did not have standing. The City of South Lake Tahoe ***was a general law city*** that was created by State law, and had challenged the plans of another political subdivision, the California Tahoe Regional Planning Agency[3] under the Fifth and Fourteenth Amendment. *Id.* at 232-233. The Court concluded in that case that the City of South Lake Tahoe was a political subdivision and could not challenge a political subdivision. *Id.* at 233-238.

The facts of *South Lake Tahoe* are not present in this case. The City of Huntington Beach is **a Charter City**, not a general law city. General law cities have been found to be political subdivisions of the State, and this is not in dispute by Plaintiffs here. However, unlike general law cities, State law does not create Charter Cities; instead, Article XI of the Cal. Constitution provides that ***the people*** of a city create a Charter City, (and) a Municipal Corporation, for themselves.

The City's Charter Preamble states "We, the people of the City of Huntington Beach, State of California believe fiscal responsibility and the prudent stewardship of public funds is essential for confidence in government, that ethics and integrity are the foundation of public trust and that just governance is built upon these values. Through the enactment of this Charter as the fundamental law of the City of Huntington Beach ***under the Constitution of the State of California***, we do hereby exercise the privilege of retaining for ourselves, the benefits of local government, by

---

[3] Per Cal Gov Code § 67040, the California Tahoe Reg'l Planning Agency was defined as a political subdivision of the State.

enacting the laws, rules, regulations and procedures set forth herein pertaining to the governance and operation of our City." See Preamble in RJN 1 (emphasis added).

It is the Constitution, not any State law, that provides autonomy to Charter Cities and vests them with control over Municipal Affairs.  In fact, the California Constitution shields Charter Cities from State interference; see Section 5 of Article XI, which states "and with respect to Municipal Affairs shall supersede all laws inconsistent therewith." Cal Const., Art XI, § 5.  As introduced, *supra*, Courts of Appeal have recognized that Charter Cities are "distinct, individual entities" and "are not connected political subdivisions of the state." *Haytasingh,* 66 Cal. App. 5th 429 at 436.  Charter cities are ***independent*** political organizations and do not pretend to exercise any functions of the state. *Id.* (emphasis added); also *Otis v. Los Angeles*, 52 Cal. App. 2d 605, 611-612 (1942).

Second, unlike in *South Lake Tahoe,* the State here has sued the City in State Court.  See RJN 2.  To illustrate the threat of injury is not abstract, the State recently filed a Motion for Temporary Relief for a court order that the City approve all permits for affordable housing.  See RJN 3.  The State Defendants' proposed Amended Complaint (not deemed filed by the State court) seeks fines, fees, and costs against the City.  The threat is not speculative.

Third, the Plaintiffs alleged other constitutional violations in the case at bar, including among others First Amendment Speech, Dormant Commerce Clause, and Bill of Attainder.  As the U.S. Supreme Court has noted, school boards (which were created by the state), have standing to challenge the validity of a state statute as violating the First Amendment. See *Board of Education v. Allen*, 392 U.S. 236 (1968).  Accordingly, *South Lake Tahoe* does not bar the City's challenges.

The facts of the case in *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank,* 136 F.3d 1360 (9th Cir. 1998) are also unlike the case at bar and the legal holdings by the Ninth Circuit in that case are inapplicable to this case. *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank* involved a series of complex

conflicts of authorities, among other things, that Burbank had entered into a Joint Powers Agreement (JPA as "Authority") to create a public airport, subject to other State laws, federal laws, and the FAA.  Preemption issues, including federal, were presented.  The controversy surrounded the City of Burbank's ability or authority to review proposed plans to expand the airport, and whether there was a violation of the JPA.  The Authority filed an action in the federal district court challenging the validity of the City of Burbank's review of the proposed expansion plan, and the validity of Public Utilities Code section 21661.6, under the U.S. Constitution.

The Ninth Circuit stated that the issue of federal standing **as a Charter City** *was not before the Court* (*Id*. at 1364-1365); although it indicated that "generally" a political subdivision of a state lacks standing under federal law to challenge the constitutionality of a state statute. *Id.*  Plaintiffs do not question this for general law cities, but Plaintiffs do rely on *Haytasingh* and *South Lake Tahoe* for the truth that *as a Charter City*, Huntington Beach is ***not*** a political subdivision of the State.

To be clear, the Ninth Circuit in *Burbank-Glendale-Pasadena Airport did not* take a position on, or decide the question, whether **a Charter City** was a political subdivision of the State.  That was not the question before the Ninth Circuit, and the excerpt relied upon by the State Defendants from that case does not even constitute *dicta*.  The State Defendants cannot rely on *Burbank-Glendale-Pasadena Airport* to prove Chartered City of Huntington Beach, a Municipal Corporation, is barred from pursuing its claims in federal court.  Finally, there is no federal or state statute that instructs that Charter Cities are precluded from filing a lawsuit alleging constitutional violations.  This Court should therefore rely on the 2021 decision by the Court of Appeal in *Haytasingh*, and what the *South Lake Tahoe, supra*, stands for by the Ninth Circuit.

**E. *Ex Parte Young* Applies to Governor Newsom and Director Velasquez**

The State's Motion to Dismiss argues the Eleventh Amendment bars the City from suing Governor Newsom and the California Department of Housing and

Community Development (however, not specifically HCD Director Gustavo Velasquez).  The Supreme Court recognized an exception to this rule, which applies to both Governor Newsom and Director Velasquez, and allows the Plaintiffs' lawsuit to proceed against them. See *Ex Parte Young*, 209 U.S. 123, 28 (1908).

In *Ex Parte Young,* the exception to the Eleventh Amendment applies when the lawsuit challenges the constitutionality of a state official's action, a state official's alleged constitutional violations must be ongoing and continuous, and the state official must have some connection with the enforcement of the unconstitutional act such that the suit against the official is not equated with a suit against the state.  All elements are met as detailed in the Plaintiffs' Complaint, and recently, the Ninth Circuit ruling in *Riley's Am. Heritage Farms v. Elsasser,* 29 F.4th 484 (9th Cir. 2022) which held claims seeking prospective injunctive relief against state officials to remedy a state's ongoing violation of federal law are not barred by the Eleventh Amendment.  To bring a claim for prospective injunctive relief, a plaintiff must identify a policy, or procedure that animates the constitutional violation at issue. *Id.* at 506.

In a 2021 federal case, the Court permitted the plaintiffs to seek prospective injunctive and declaratory relief against Governor Newsom and Attorney General Becerra for ongoing federal violations arising from health restrictions imposed by the Governor. *Culinary Studios, Inc. v. Newsom*, 517 F. Supp. 3d 1042, 1059 (E.D. Cal. 2021); also *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147 (9th Cir. 2018); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016).

In this lawsuit, the City seeks prospective injunctive and declaratory relief against the named State actors and other State Defendants, not monetary damages. The Complaint alleges both Governor Newsom and Director Velasquez violated the U.S. Constitution as to Plaintiffs. Both have been personally involved in both misleading cities like Huntington Beach and the public with the reasons for their aggressive State RHNA Laws and are directly involved in enforcing the RHNA

Laws that violate Plaintiffs' constitutional rights. See Plaintiffs' Complaint at p. 11; RJN 4-7.  In fact, both have promised, to come after Huntington Beach and "take every step necessary" to ensure that Plaintiffs comply with the State-mandated 13,368 high-density RHNA housing units.  Director Velasquez stated that "Huntington Beach continues to brazenly violate state housing laws-wasting valuable time and taxpayer money instead of working on solutions.  HCD is committed to ensuring… building housing for all."[4]  The Eleventh Amendment immunity does not bar the City's lawsuit against Governor Newsom, nor was it alleged to bar suit against Director Velasquez.

## V.   ABSTENTION IS *NOT* APPROPRIATE HERE

### A. The *Younger v. Harris* Abstention Doctrine Does Not Apply

Abstention is rarely favored.  *Cleveland Hous. Renewal Project v. Deutsche Bank Trust Co.*, 621 F.3d 554, (6th Cir. 2010).  The power to dismiss based on abstention is extraordinary and narrow. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 726 (1996).  If a case presents a "difficult question" of law, this finding cannot be the sole basis for abstention.  *Cleveland Hous. Renewal Project* at 565. Abstention from federal jurisdiction is not required where the question is whether the state statute on its face is unconstitutional.  *Haw. Hous. Auth. v. Midkiff*, 467 U.S. 229 (1984).  The Ninth Circuit held the doctrine of abstention represents an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it.  *City of Tucson v. U.S. West Commc'n, Inc.*, 284 F.3d 1128 (9th Cir. 2002).

The State Defendants claim that if the City had standing, their lawsuit currently in State Court forces abstention in this lawsuit.  This is not true.  In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court held that a federal court could not hear civil matters brought by a person who is currently being *criminally prosecuted* for a matter in state court, which is not at issue here. Additionally,

---

[4]  https://www.gov.ca.gov/2023/04/10/california-sues-huntington-beach-for-violating-state-housing-element-law/

district courts have denied motions to dismiss on the grounds of failure to show special circumstances warranting abstention. *Corporacion Insular de Seguros v. Garcia*, 680 F. Supp. 476 (D.P.R. 1988).  To properly abstain, **a plaintiff** must be "ensured an adequate and fair opportunity to have his federal claims heard in a state forum…" *Id.* at 478.  Where there is no duplicative litigation, abstention is not warranted. *Id.* at 479.

In this case, the State is not the Plaintiff and the State Defendants, as the defendants, do not get to choose the forum for Plaintiffs' legal recourse.  The State is pretending now it filed *a civil* lawsuit on March 8, 2023 with the same claims are presented in this federal case.  This is also not true; nor was/is SCAG a party to that lawsuit.  The State has not been forthcoming with this Court; its State Court lawsuit filed on March 8, 2023 has been mooted for over a month (at least as of the date the City's Answer was filed on April 3, 2023, which explained the mootness).  Instead, the State attacks the City arguing "it could not be more obvious" the City's objective is to halt the State's "pending" lawsuit.  State's MTD p. 13.  The City's federal lawsuit filed on March 9, 2023 had been in development for months without any thought the State would too file suit against the City (for compliance with ADU and SB 9 laws).

The State has very recently recognized the mootness hurdle it faces in State Court and asked that Court for leave to quickly amend to add a new claim arising from facts that occurred long *after* the filing of that lawsuit.  Knowing the City was preparing to challenge the State's RHNA Laws in Federal Court on March 9, 2023, the State quickly filed its ADU/SB 9 lawsuit on March 8, 2023.  However, the State Defendants describe the State's current lawsuit to this Court now as "seeking a writ of mandate due to [the City's] failure to comply with state housing laws." State's MTD p. 12.  This is, again, also not true.  The State's current lawsuit alleges the City has not processed permits for ADU and SB 9, which the State acknowledged not too long ago as moot.

Thus, abstention of this matter does not fit reasons for the Abstention Doctrine.  Moreover, abstention (with deference to the current State Court action) would deprive the City a full and fair and adequate opportunity to litigate all of the federal claims presented in this lawsuit.  If abstention occurred, the City would lose one of the named defendants, SCAG, and the City would not have a chance to challenge SCAG's role in the of 13,368 units of high-density RHNA on the City, which are intertwined in the Plaintiffs' federal claims of violations of constitutional rights.  Thus, the Abstention Doctrine does not bar this lawsuit from proceeding in Federal Court.  If anything, the State Court matter should be stayed pending this case; especially since any similar question of law raised by the State Defendants to the State Court was presented after the City had filed this action on March 9, 2023.

## VI.  THERE ARE VIABLE FIRST AMENDMENT VIOLATIONS CLAIMS

### A. RHNA Laws, CEQA Violate First Amendment Rights of Plaintiffs

The U.S. Supreme Court has long held that "legislators be given the widest latitude to express their views of policy," *Bond v. Floyd*, 385 U.S. 116, 135-37, (1966).  The U.S. Supreme Court has long recognized that government employees have freedom of speech protected by the First Amendment. *Shurtleff v. City of Boston*, 142 S. Ct. 1583, 1589 (2022).  State laws compelling speech have triggered First Amendment protections. See *Expressions Hair Design v. Schneiderman*, (2017) 137 S. Ct. 1144; also *Bond v. Floyd*, 385 U.S. 116, 135-37, (1966).

As was alleged in the Plaintiffs' Complaint, citizens do not surrender their First Amendment rights by accepting public employment. *Lane v. Franks*, 573 U.S. 228, 231 (2014).  Employees speaking as citizens on a matter of public concern may implicate First Amendment protections. *Garcetti v. Ceballos*, 547 U.S. 410, 418, (2006)(discussing whether an employee spoke as a citizen on a matter of public concern and restrictions by employer on employee expression); *Boquist v. Courtney*, 32 F.4th 764, 780 (9th Cir. 2022).  In *Boqueist*, the Ninth Circuit Court held that in light of "[t]he manifest function of the First Amendment in a representative

government" and the "require[ment] that legislators be given the widest latitude to express their views of policy,' we conclude that an elected official's speech is protected regardless whether the official is speaking 'as a citizen upon a matter of public concern,'" *Boquist v. Courtney*, 32 F.4th 764, 775 (9th Cir. 2022).

The Ninth Circuit set forth a three part test to determine if an elected official's speech is protected:  (1) the elected official engaged in constitutionally protected activity; (2) as a result, he/she was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action. *Id*. at 780.

The Ninth Circuit discussed *Bond v. Floyd*, wherein the U.S. Supreme Court held that excluding a representative from membership in the Georgia House of Representatives based on his views, statements, and position on war policies violated his First Amendment rights. *Bond v. Floyd,* 116, 135-37 (1966).  The U.S. Supreme Court specifically discussed that although he was a representative, there was no reason to treat his political comments differently than that of a private person expressing his views. *Id.* at 132-136. Thus, disqualifying the representative violated his right of free expression under the First Amendment. *Id.* at 137.

To determine whether sufficient allegations exist to demonstrate a First Amendment violation, a plaintiff need only show a credible threat of enforcement. *Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1171-1172, (9th Cir. 2018). The Ninth Circuit set a three-part test to allege a First Amendment violation against a state actor.  First, a plaintiff must show the likelihood the law at issue will be enforced against the plaintiff.  Second, there should be a showing that the plaintiff intends to violate the law and third, there must be a showing of whether the law applies to the plaintiff.

In this case, the Plaintiffs' Complaint sufficiently states facts alleging First Amendment violations as applied to the Mayor, Mayor Pro Tem, and the City

Council Members.  The State mandates *force* the implementation the high-density RHNA quota in Huntington Beach of 13,368 RHNA Units, the Mayor, Mayor Pro Tem, and City Council Members are being forced to speak and vote *in a certain, pre-ordained* way such that the discretion that the voters of Huntington Beach vested in the City Council Members is completely trampled by the State.

The Mayor, Mayor Pro Tem, and other Council Members are required by the State's RHNA Laws and CEQA to make specific environmental findings in order to certify the proposed Housing Element.  Again, the Council Members *must*, under the State's RHNA Laws in conjunction with the State's CEQA law (see relevant CEQA statute at CA Gov. Code, Section 15093[5]) adopt a formal Statement of Overriding Considerations, which necessarily says in this case that "the benefits of the proposed 13,368 units of high-density RHNA housing outweigh the significant and unavoidable impacts to the City's environment." See Declarations of Tony Strickland and Gracey Van der Mark, ¶ 3.  To place findings in the record, which is required by CEQA and the Housing Element implementation process, they Council Members must testify that there is a housing crisis and Huntington Beach needs more affordable housing requiring more high-density development in the City.

This is State Housing and RHNA Laws compelling a particular State-mandated action and speech/viewpoint that must be contained in a written statement required by Gov. Code Sections 65589.5 *et. seq.*, to certify the Housing Element. Without this compelled speech by adopting the Statement of Overriding Considerations, the Housing Element cannot legally be certified under State law by either City Council or HCD.  If the City Council Members were to make the findings in favor of the 13,368 high-density RHNA units and against the City's environment in order to comply with State RHNA Laws and the requirements of CEQA, the City's Housing Element would be certified (against their beliefs) but would then violate CEQA.

---

[5] "Government Code" or "Gov. Code Sections" at all times refer to the California Government Code, which contains the relevant CEQA and Housing and RHNA Laws.

1    In response to the City Council *not* adopting the Statement of Overriding

2    Considerations, the State has sought to punish the City. See RJN , 4-7. The State

3    Defendants allege that because the City failed to comply with State RHNA Laws by

4    not certifying the Housing Element, i.e., not making certain findings under CEQA

5    that the benefits of the high-density housing outweigh the negative impacts to the

6    environment, the City is subject to excessive fines, fees, costs and court-imposed

7    land use planning.  This is what the U.S. Supreme Court has held against in *Bond*.

8    **B. The *Nev. Comm'n on Ethics v. Carrigan* Case is Completely Inapplicable**

9    In *Nev. Comm'n on Ethics v. Carrigan,* 564 U.S. 117 (2011), the Supreme

10   Court held that a state law on conflict-of-interest **recusals** to vote was not a First

11   Amendment concern. That case has no application here.  As was stated in Justice

12   Kennedy's concurring opinion, the issues addressed in *Nev. Comm'n on Ethics* did

13   *not* challenge burdens imposed on First Amendment speech rights of legislators and

14   constituents apart from casting a vote or partaking in the voting process. *Id.* at 129.

15   The State Defendants' Motions to Dismiss relies heavily on *Nev. Comm'n on*

16   *Ethics v. Carrigan* to argue the City Council Members are not making speech, but

17   simply "voting."  In this case, however, there are two major differences to *Nev.*

18   *Comm'n on Ethics v. Carrigan*.  Here, the State's mandates to advance and

19   implement the high-density RHNA quota in Huntington Beach of 13,368 RHNA

20   Units, the City Council Members are being ***forced** to make findings, speak, and vote*

21   *in a certain, pre-ordained* way – such that the speech and discretion that the voters

22   of Huntington Beach vested in the City Council Members is completely trampled, or

23   commandeered, by the State Defendants.  Again, under the RHNA Laws in

24   conjunction with the State's CEQA law, the Council Members *must* adopt a formal

25   Statement of Overriding Considerations, which says that "the benefits of the

26   proposed 13,368 units of high-density RHNA housing outweigh the significant and

27   unavoidable impacts to the City's environment." See Decl. of Tony Strickland and

28   Gracey Van der Mark, ¶ 3.  Then, in order to place findings on the record, which is

also required by the Housing Element implementation process, they must also say that there is a housing crisis and Huntington Beach needs more affordable housing. These are statements based on the ***agenda of the State*** and contrary to the findings or personal assessment of the individual City Council Members, and to the findings expressly stated within the official environmental impact report ("EIR").  Since all of this is more than simply whether *to* vote, *Nev. Comm'n on Ethics v. Carrigan* is inapplicable.

## VII. THE RHNA LAWS ARE UNCONSTITUTIONALLY VAGUE

A law is unconstitutionally vague if it "fails to provide a person of ordinary intelligence fair notice of what is prohibited or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014).  Vague statutes are invalidated for three reasons: (1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of laws based on arbitrary and discriminatory enforcement by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms. *Id.* at 945.

In this case, the RHNA Laws (Gov. Code 65583, *et. seq.*) are unconstitutionally vague, as was explained in the Plaintiffs' First Amended Complaint.  The RHNA Laws themselves are unclear and oft delegate prescription-making and decision-making to the State's administrative agency, the Department of Housing and Community Development ("HCD").  These same RHNA Laws also create a flawed allocation process that has, not legislatively, but almost "extra-legislatively," allocated 13,368 RHNA units to the City.  There is nothing in any of the RHNA government code sections (Gov. Code 65583, *et. seq.*) that prescribe to the Plaintiffs, or any city, what their RHNA quota will be prior to the ultimate political wrangling that produces discriminatory, RHNA quotas, like the ones being imposed on the City.

1  Moreover, because of the illicit actions of the named State actors and
2  Defendants, *they violated the same vague RHNA Laws*, in part, as will be proven at
3  trial, because the RHNA Laws are so vague, there was insufficient, inadequate
4  legislative direction/guidance given on the issue of what a City should do to meet its
5  future housing needs.  In addition, the RHNA Laws unconstitutional vagueness has
6  resulted in the Independent State Auditor issuing a scathing indictment of the State
7  Defendants, finding that HCD's RHNA process was "flawed" and the RHNA quotas
8  were "not supported by evidence." See Plaintiffs' Complaint at p. 26 ¶ 94, p.48 p.
9  192-p. 49 ¶ 196, p. 60, ¶ 240 .  This is what the Ninth Circuit in *United States v.*
10 *Osinger* contemplated as offensively unconstitutionally vague.  In fact, the State,
11 recently recognizing the vague, arbitrary, and unpredictable process to calculate and
12 allocate State-mandated RHNA quotas has called for full-scale reform of the RHNA
13 Laws' RHNA process. See RJN 8.  See also Plaintiffs' Complaint at p. 26 ¶ 95-96.
14 As will be proven and as have been pled, RHNA Laws are unconstitutionally vague.

15 **VIII.  PROCEDURAL DUE PROCESS IS SUFFICIENTLY PLED**

16 A procedural due process claim has two distinct elements: (1) a deprivation of a
17 constitutionally protected liberty or property interest, and (2) a denial of adequate
18 procedural protections." *Brewster v. Bd. Of Educ. Of Lynwood Unified Sch. Dist.*,
19 149 F.3d 971, 982 (9th Cir. 1998).  To determine whether due process has been
20 afforded, courts look to a three-factor balancing test: "(1) the private interest that
21 will be affected by the official action; (2) the risk of erroneous deprivation of such
22 interest through the procedures used, and probable value, if any, of additional
23 procedural safeguards; and (3) the Government′s interest, including the fiscal and
24 administrative burdens that the additional or substitute procedures would entail."
25 *Mathews v. Eldridge*, 424 U.S. 319, 321 (1976).

26 The State and SCAG both argue that the Plaintiffs cannot allege a deprivation
27 of constitutional liberty or property interest due to the lack of a "private interest" as
28 articulated in *Mathews* balancing test. *Id.*  The State also argues that the City has

28

already been afforded due process despite the City only having momentary, brief access to an administrative process overseen by the same parties who are adversaries to the City: SCAG and HCD.  This legislatively-created built-in conflict of interest, the agencies designated by the RHNA Laws to certify the City's Housing Element are not only the ones that issue the burdensome 13,368 units of high-density RHNA, but are also the agencies designated by the RHNA Laws to sit as adjudicators at appeal hearings, and armed by the RHNA Laws to punish the City for non-compliance.

The City has a private interest at stake because the Chartered City of Huntington Beach is not a political subdivision of the State, discussed *supra*, and is a Municipal Corporation.  A Municipal Corporation is a "person" within the meaning of the Fourteenth Amendment and is entitled to its protection. (See *River Vale v. Orangetown,* 403 F.2d 684 688 (2nd Cir. 1968).  The City's private interest in its municipal right to zone for itself, as well as the individual roles of the City Council Members to take active roles in deciding what is best for the City of Huntington Beach will be affected by the State, State actors, and SCAG's actions. Additionally, as was discussed, the Plaintiffs are also facing deprivation of First Amendment rights, satisfying the first element of this procedural due process claim.

The State Defendants argue that sufficient process has already been afforded to the City through a limited appeal processes; however, the process afforded begins and ends with SCAG and HCD.  Unconstitutional deprivation of the Plaintiffs' municipal right to zone for the City is evidenced through SCAG's failure to follow the proper methodology in set forth in Gov. Code § 65584.04, while the State *eliminates judicial review* as a means of recourse.  Judicial review is required constitutionally to give a plaintiff a fair, unbiased opportunity to be heard.  In the City's case, a fair opportunity to challenge the legality of aforementioned RHNA Laws and actions of the named State actors in the face of 13,368 RHNA Units can only occur *by this judicial review*. Accordingly, the Plaintiffs met both elements of a

Procedural Due Process claim because of First Amendment rights deprivations and zoning rights without protections.

## IX.  A MORE RESTRICTIVE REVIEW STANDARD IS APPLIED

If a land use regulation "infringes upon a constitutionally protected personal liberty or fundamental right, 'it must be narrowly drawn and must further a sufficiently substantial government interest.'" *Terminal Plaza Corp. v. City*, 177 Cal. App. 3d 892, 908.  Where property regulation implicates a fundamental right "the standard of constitutional review is elevated from the traditional rational relationship test to the more restrictive strict scrutiny standard, under which the state bears the burden of establishing not only that it has a compelling state interest which justifies the law but that the distinctions drawn by the law are necessary to further its purpose." *Nash v. City of Santa Monica, supra,* 37 Cal.3d 97, 103.

In this case, the RHNA Laws and actions of the named State actors violate the Mayor, Mayor Pro Tem, and City Council Members' First Amendment rights, which is a fundamental right under the U.S. Constitution.  The State Defendants incorrectly argue rational basis review is the level of scrutiny; however, the State Defendants assume no circumstance is present to trigger a higher scrutiny level. As demonstrated in the Plaintiffs' Complaint, the burden shifts to the State Defendants to meet a more restrictive strict scrutiny standard because a fundamental right protected under the First Amendment was alleged to have been violated. *Terminal Plaza Corp. v. City*, 177 Cal. App. 3d 892, 908 (1986).  The Motion to Dismiss failed to address how the State's RHNA Laws and the actions of the State actors have met the stricter standard.

## X.  RHNA LAWS VIOLATE FOURTEENTH AMENDMENT RIGHTS

Assuming the level of scrutiny under the substantive due process claim was rational basis review, which it is not, the State's RHNA Laws still violate Plaintiffs' constitutional rights.  Under rational basis review, a classification will be upheld if there is a rational relationship between the disparity of treatment and some

legitimate governmental purpose. *Heller v. Doe*, 509 U.S. 312, 319 (1993).  A law will not survive rational basis unless it is "narrow enough in scope and grounded in a sufficient factual context for [the court] to ascertain some relation between the classification and the purpose it serves." *Romer v. Evans*, 517 U.S. 620, 634-35 (1996).  Rational basis review asks whether "there is a rational relationship between disparity of treatment and some legitimate government purpose." *Cent. State Univ. v. Am. Ass'n of Univ. Prof.*, 526 U.S. 124, 128 (1999).  Under the review, "legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." *Erotic Serv. Provider Legal Educ. & Research Project v. Gascon*, 880 F.3d 450, 457 (9th Cir. 2018).  To determine whether the laws at issue meet rational basis review, a two-step inquiry is employed.  First, it must be shown that the law has a legitimate purpose. *Id.*  Second, the law must promote that legitimate purpose. *Id.*

Here, the State Defendants and named State actors claim the intent of the RHNA Laws is more affordable housing.  However, there is no evidence that since the State began this more aggressive housing agenda in 2017, any housing has become more affordable.  The State Defendants fail, and will fail again in this Court, to prove that RHNA Laws are a matter of "Statewide Concern," the legal standard the State must meet to preempt the City's Charter City Home Rule local authority.

In addition, Marin County has been allowed to skirt the same RHNA Law mandates that impose the burdensome 13,368 Units of high-density RHNA on the City of Huntington Beach, in part because Assemblyman Marc Levine of San Rafael sponsored a provision that exempts Marin County from some of the RHNA requirements. See SB 106 (2018).  In addition, the State Legislature also gave Napa and the City of Commerce special, RHNA mandate-avoiding treatment in the RHNA Laws.  The State is not at liberty to give special treatment to some areas of the State, while at the same time claiming that the same legislation is a matter of "Statewide Concern." Though Marin County, Napa, and the City of Commerce enjoy special

legislative treatment, the State Legislature has imposed RHNA Laws on Charter Cities based on the notion that a "housing crisis" is a matter of "Statewide Concern." If a housing crisis was a matter of Statewide Concern, then RHNA Laws would equally impose RHNA quotas on all cities equally; they do not.

Moreover, the State Defendants will not be able to prove that increased high-density housing policy, or their RHNA Laws, will be able to produce lower income, affordable housing. Not all RHNA quota units are designated as "affordable" so the State's legislative scheme through the RHNA Laws to "create more affordable housing" does not meet its own standard. Approximately little more than 50% of a RHNA quota mandate is designated as "affordable." To that end, in high-density housed cities like in Los Angeles and San Francisco, the cost of living is far higher than in suburban cities like Huntington Beach. There is no causal link between allocating thousands of high-density housing in the City and meeting the goal of making housing more affordable. These RHNA Laws are not designed to create more affordable housing, they are designed to give the State the power to commandeer local land use decision-making. This deprives Plaintiffs of their constitutional rights and decision-making control over the City that the voters of Huntington Beach vested the City Council Members with. These laws are vague, arbitrary, and lack standards to achieve the goal of affordable housing in California.

**XI. COMMERCE CLAUSE VIOLATIONS ARE SUFFICIENTLY PLED**

The Dormant Commerce Clause bars state protectionism, prohibiting state legislation that discriminates or unduly burdens interstate commerce. The Commerce Clause of the U.S. Constitution provides that "Congress shall have [the] [p]ower . . . [t]o regulate Commerce . . . among the several States." U.S. Const. Art. I, § 8, cl. 3. The Commerce Clause is a "self-executing limitation on the power of the [s]tates to enact laws [that place] substantial burdens on [interstate] commerce." *S.-Cent. Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 87 (1984); see also *Gen. Motors Corp. v. Tracy*, 519 U.S. 278, 287 (1997) ("The negative or dormant implication of the

Commerce Clause prohibits state taxation or regulation that discriminates against or unduly burdens interstate commerce and thereby 'imped[es] free private trade in the national marketplace.'" (quoting *Reeves, Inc. v. Stake*, 447 U.S. 429, 437 (1980)). Dormant Commerce Clause protects interstate commerce from "the evils of 'economic isolation' and protectionism" that state regulation otherwise could bring about. *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).

In this case, the State Defendants and named State actors are violating the Dormant Commerce Clause by entering the free marketplace of natural supply and demand among housing developers and buyers of homes.  While the State Defendants are imposing 13,368 new units of high-density housing on the City, it is also imposing over 1,300,000 units of high-density RHNA on the State.  If the State refrained from such interference, the natural forces of the housing market would provide the supply of home development consumers were willing to pay for. Instead, the State is *entering the market*, the State is *interfering in the market*, and the State is forcing cities in California to zone for millions of new housing units. This aggressive scheme of interference by the State will dramatically affect the housing market both within the State of California by producing unintended consequences, but also in other states by causing the intrastate supply chain to no longer be a free and natural among states in the national marketplace.  As will be proven, the State's scheme will cause California to consume a disproportionate amount of housing/building supplies and disrupt the natural patterns of residency among many states, not just California.  An activity does not need to have a direct effect on interstate commerce to fall within the commerce power, as long as the effect is substantial and economic. *Wickard v. Filburn*, 317 U.S. 111 (1942).  If the cultivation of wheat on a private farm for private consumption can be drawn into scrutiny under the Commerce Clause, so too should the State's mandates to plan for over 1,300,000 units of high-density housing throughout the State.

**XII. SUPPLEMENTAL JURISDICTION SHOULD BE EXERCISED**

A federal court has supplemental jurisdiction over state law claims that are so related to claims over which the court has original jurisdiction that they form the same case or controversy under Article III of the U.S. Constitution. 28 U.S.C. § 1367(a); *Kuba v. 1-A Agr. Ass'n*, 387 F.3d 850, 855 (9th Cir. 2004).  Claims form part of the same case or controversy when they arise from "a common nucleus of operative facts" such that a plaintiff "would ordinarily be expected to try them all in a single judicial proceeding." *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).  The mere fact that a plaintiff's state claims outnumber federal claims, without more, is insufficient to satisfy the "substantially predominate" standard. *Borough of West Mifflin v. Lancaster,* 45 F.3d 780, 790 (3rd Cir. 1995).

**XIII.  PLAINTIFFS' STATE CLAIMS WERE SUFFICIENTLY PLED**

**A. The Violations of the California Const., Art XI. § 5 was Sufficiently Pled**

SCAG argues the Courts and State Legislature have previously found that housing was a matter of "Statewide Concern," and therefore, Plaintiff's claim for violating the California Constitution, Art XI. § 5 is legally barred.  In order for a State law to have such preemptive effect that it deprives a Charter City of this Constitutional Home Rule authority to make zoning decisions for itself, the State law has to meet the high standard of "Statewide Concern."  Prior cases, analyzing other housing laws, indicating that the State indicates those housing laws were a matter of Statewide Concern, *does not mean that these unconstitutional RHNA Laws are too a matter of Statewide Concern.*  They are not, and that will be proven.

The Court of Appeal in one district recognized that a *certain* housing law had preemptive effect over local control because it met its goal on addressing a "housing crisis," does not mean that *all housing laws* have preemptive effect over local control.  To be clear, as the Plaintiffs have pled the allegations, there are certain housing laws that are a matter of Statewide Concern.  Those laws are specific to a category of housing laws known as "process laws," i.e., that if a city is going to

engage in zoning, that the city must undertake certain procedures.  The State interest, or the goals of those laws, is to have consistency across all cities *in the way the cities go about zoning*.  However, as the Complaint spells out, when it comes to the <u>substance</u> of what is being zoned, or what is produced by the zoning, those decisions have been recognized by the State Legislature for many decades as within the purview of local decision-makers and *not* the purview of the State.

This is in party why the Plaintiffs are challenging the RHNA Laws and the actions of the named State Defendants.  The State Defendants maintain the State has the power to dictate the *substance* of 13,368 RHNA Units of high-density housing for the City, and dictate, over First Amendment concerns, the City Council must agree to this plan by making certain statements during their official legislative activities to execute on the will of the State.  While Courts of Appeal have agreed with the State on other housing laws challenges, **the California Supreme Court has yet to declare that any of the recent housing laws are a matter of "Statewide Concern."**  Equally important is that there is no statute or case that holds that a State administrative agency's determination (here of 13,368 RHNA for the City) has any preemptive effect over local authorities.

For State preemption over a Charter City's Cal., Art XI., § 5, Home Rule authority to take effect, the State's instrument of preemption needs to be present in State law.  However, the State's RHNA government code sections (Gov. Code 65583, *et. seq*.) does not prescribe what a city's RHNA quota is prior to the administrative agency, HCD's, decision-making and ultimate political wrangling at SCAG that produces the discriminatory RHNA quotas like the 13,368 units.  It is through the State's administrative agency's work (HCD), that the 13,368 units of RHNA for the City is determined.  Yet, there is no case law anywhere that holds that a State's administrative agency, including HCD, has preemptive authority over local zoning or decision-making of cities.  The RHNA Laws providing for a determination of 13,368 units for the City by the State's administrative agency, HCD (then SCAG)

necessarily means the mandate of 13,368 units on the City is *not* a preemptive State law.  As such, the State's claim of preemption over the Charter City Home Rule authority will fail.

Moreover, several things can *undermine* the State's claim that one of its laws has preemptive effect as a matter of Statewide Concern.  First, the State's "housing laws" provide no legislative incentives to developers to work with cities to develop undeveloped, but developable, areas of the State.  As the Complaint points out, according to the 2010 Census, 95% of the State's population lives in only 5% of the State's territory. If the State was serious about housing and its legislative housing program was a matter of Statewide Concern, the State housing laws would touch all corners of the State, and have equal and consistent application to all cities, including incentives to develop housing in the undeveloped 95% of the State's territory.  They do not.

Plaintiffs will prove at trial that the RHNA Laws and the resulting 13,368 Units of RHNA being imposed on the City, are not a matter of Statewide Concern, and as such, have no preemptive effect over the Plaintiffs' Constitutional Charter City Home Rule authority under Section 5 of Article XI of the California Constitution.

**B. Judicial Review Should Not Be Precluded**

SCAG argues that *City of Irvine* precludes judicial review.  However, the Court of Appeal in *City of Irvine* only held "the Legislature clearly intended to eliminate judicial remedies for challenging a municipality's RHNA allocation" *City of Irvine v. Southern California Ass'n of Governments*, (2009) 175 Cal.App.4th 506, 522.  But the Court of Appeal said nothing about being legislatively foreclosed to challenge the unconstitutional conduct of the State Defendants, the various constitutional violations inherent in the RHNA Laws, whether the State Defendants violated law by their actions, or whether the RHNA determination or process was flawed or unconstitutional.  If the *City of Irvine* case stands for what the State

Defendants claim it stands for, there would then be another Separation of Powers argument for the Plaintiffs to make.

**C. State RHNA Laws Violate Separation of Powers**

"The powers of state government are legislative, executive, and judicial. Persons charged with the exercise of one power may not exercise either of the others except as permitted by this Constitution." Cal. Const., Art. III, § 3.  Although the Separation of Powers doctrine "does not prohibit one branch from taking action that might affect another, the doctrine is violated when the actions of one branch defeat or materially impair the inherent functions of another." *In re D.N.,* 14 Cal. 5th 202, 212 (2022); also *Steen v. Appellate Div. of Sup. Ct.*, 59 Cal.4th 1045, 1053 (2014).

In this case, HCD's RHNA quotas determinations and allocation process violates Separation of Powers because HCD and SCAG are designated by the State's Housing and RHNA Laws to be a quasi-legislature, the executor, and the judge against cities.  In addition, the RHNA Laws purport, as previously discussed, to bar judicial review of "a municipality's RHNA allocation," *City of Irvine*, at 522.  In fact, there is no process other than seeking redress in this Court to challenge the RHNA Laws that the State Defendants both created, control, and use to punish cities for non-compliance.  As the State's Independent Auditor found in 2022, the RHNA methodology, process, and allocation for the RHNA units is flawed, yet SCAG argues that Plaintiffs have no judicial rights under the same RHNA Laws. Because of this, the State's Housing and RHNA Laws violate Separation of Powers.

**D. Plaintiffs' Bill of Attainder Claim is Sufficiently Pled**

SCAG argues that RHNA Laws do not fall within the historical meaning if legislative punishment. However, the legislative history of SB 1333 (which is now a part of the Plaintiffs' RHNA Laws challenge) demonstrates SB 1333 was enacted with the City of Huntington Beach in mind to strip local authority of Charter Cities to control zoning in their cities. As is pled, Governor Newsom began to call out Huntington Beach in press releases and other public communications as a target for

State punishment.  In 2019, at a Press Conference, Governor Newsom proclaimed that as part of his new housing laws package, he sought to punish cities like Huntington Beach, as he said "the State's vision [for housing] will be realized at the local level" and "ask the folks down in Huntington Beach." (RJN 4, 6.) On February 15, 2023, the Office of the Governor of California tweeted on social media "Huntington Beach is playing chicken with housing. The state will hold them accountable. California law lets judges appoint a state agent to do their housing planning for them HB can do it themselves or the court will take control." (RJN 7.) State Defendants will impose fines, fees, and overtake local control over the City's property if the City does not comply.

**E. Plaintiffs Must Violate CEQA to Certify the Housing Element**

SCAG argues that the RHNA Laws do not require a violation of CEQA. As if SCAG does not know how the laws work, SCAG then admits that a finding by Council Members must be made in order to certify the Housing Element. SCAG's MTD at p. 20.  As Plaintiffs have demonstrated, the RHNA Laws require Council Members to adopt a "Statement of Overriding Considerations" pursuant to CEQA. In *County of Amador v. El Dorado County Water Agency* (1999) 76 Cal. App. 4th 931, the Court of Appeal held that public officials must reject or certify the EIR, as it demonstrates accountability, allowing the public to know which action that was environmentally significant was rejected or accepted.

In this case, the City Council Members voted in favor of what CEQA seeks to accomplish, which is to protect the environment, i.e., to recognize the environmental impacts of a proposed development or zoning change, mitigate where possible, or accept the negative environmental impacts if the benefits of the proposal outweigh the negative impacts.  If CEQA is to be taken seriously and its legislative intent honored, City Councils would not be forced to, simply "ignore" the negative environmental impacts by a proposed project or zoning change.  However, on the other hand, if the City Council were to place priority on high-density zoning, and

ignored the serious negative environmental impacts of a proposed project or zoning change, then City Council could simply approve the environmental review with the Statement of Overriding Considerations and move ahead with the proposal, regardless of the environmental impact.  This, as a matter of policy-making, presents a conflict to City Council Members engaged in the local legislative process of updating City zoning.  As the City Council did here, it could not agree with the Statement of Overriding Considerations, i.e., that the benefits of the proposed 13,368 units of high-density housing outweighed the significant negative and unavoidable impacts to the environment. See Decl. of Tony Strickland and Gracey Van der Mark, ¶¶ 3-9.

Plaintiffs sufficiently pled that the RHNA Laws are pitted against CEQA, thereby putting the City Council in an impossible, irreconcilable impasse. More importantly, the high-density development goals of the RHNA Laws *compel* the City Council to arrive at a pre-ordained, "fixed," State-approved conclusion (of implementing high-density development zoning, i.e., the State Defendants' RHNA Units) even before the City Council's consideration by way of conducting local public hearings before adopting a Statement of Overriding Considerations. For the two State laws, RHNA Laws and CEQA, to be in direct competition or conflict forces local City Council's in Huntington Beach to relinquish local decision-making one way or the other. Following the Housing and RHNA Laws forces the City Council to essentially violate CEQA or set aside their discretion to subscribe to a Statement of Overriding Considerations to satisfy RHNA Laws.

### F. The RHNA Laws are a Special Statute

"A law applicable to one county, and not founded upon any natural, intrinsic, or constitutional distinction, and no reason appearing as to why the act is not made to apply generally to all classes, is special and local, and therefore unconstitutional. *Chitwood v. Hicks*, 219 Cal. 175, 177 (1933).  The RHNA Laws give special treatment Marin County allowing it to skirt the State-mandated RHNA quotas, as

demonstrated in SB 106, for no valid reason other than as favor to politicians. Napa and City of Commerce are likewise given special treatment to avoid the effects of the RHNA Laws. A law must apply generally to all classes and not exempt certain wealthy counties from their RHNA obligations. Plaintiffs have sufficiently pled, and will prove at trial, violations of Article IV, Section 16 of the California Constitution.

## XIV.  LEAVE TO AMEND SHOULD BE AVAILABLE

"The standard for granting leave to amend is generous." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988). "Federal Rule of Civil Procedure 15(a) provides that a trial court shall grant leave to amend freely 'when justice so requires.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). "It is black-letter law that a district court must give plaintiffs at least one chance to amend a deficient complaint, absent a clear showing that amendment would be futile." *Nat'l Council of La Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015). "Amendment is futile if the claim sought to be added is not viable on the merits." *Hooper v. Shinn*, 985 F.3d 594, 622 (9th Cir. 2021). Here, should the Court find any deficiencies pled in Plaintiffs' Complaint, Plaintiffs seek leave to amend to cure such deficiency.

## XV. CONCLUSION

The Plaintiffs respectfully request this Court deny the Defendants' Motions to Dismiss for the reasons discussed herein.


Dated:         June 6, 2023         MICHAEL E. GATES, CITY ATTORNEY


By:_____*/s/  MICHAEL E. GATES*_____
MICHAEL E. GATES, CITY ATTORNEY
Attorney for Plaintiffs,
CITY OF HUNTINGTON BEACH,
HUNTINGTON BEACH CITY COUNCIL,
MAYOR TONY STRICKLAND and
MAYOR PRO TEM GRACEY VAN DER MARK