Deborah J. Fox (SBN: 110929)
dfox@meyersnave.com
David Mehretu (SBN: 269398)
dmehretu@meyersnave.com
Kristof D. Szoke (SBN: 331561)
kszoke@meyersnave.com
MEYERS NAVE
707 Wilshire Blvd., 24th Floor
Los Angeles, California 90017
Telephone: (213) 626-2906
Facsimile: (213) 626-0215

Attorneys for Defendant
SOUTHERN CALIFORNIA
ASSOCIATION OF GOVERNMENTS

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| CITY OF HUNTINGTON BEACH, a California Charter City, and Municipal Corporation, the HUNTINGTON BEACH CITY COUNCIL, MAYOR OF HUNTINGTON BEACH, TONY STRICKLAND, and MAYOR PRO TEM OF HUNTINGTON BEACH, GRACEY VAN DER MARK,<br><br>Plaintiffs,<br><br>v.<br><br>GAVIN NEWSOM, in his official capacity as Governor of the State of California, and individually; GUSTAVO VELASQUEZ in his official capacity as Director of the State of California Department of Housing and Community Development, and individually; STATE LEGISLATURE; STATE OF CALIFORNIA DEPARTMENT OF HOUSING AND COMMUNITY DEVELOPMENT; SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 8:23-cv-00421<br><br>The Hon. Fred W. Slaughter<br><br>**SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Judge: Hon. Fred W. Slaughter<br>Date: July 27, 2023<br>Time: 10:00 a.m.<br>Crtrm.: 10 D<br><br>Compl. filed: March 9, 2023<br>First Am. Compl. filed: March 27, 2023<br><br>Trial Date: September 10, 2024 |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT ....................................................................................................... 1

    A. The City Lacks Standing to Assert Constitutional Challenges. .............. 1

    B. The City's Federal Constitutional Claims Each Lack Merit. ................. 3

        1. The City's First Amendment Claim Fails. ................................... 3

        2. The City's Procedural Due Process Claim Fails. ........................ 4

        3. The City's Substantive Due Process Claim Fails. ....................... 5

        4. The City's Commerce Clause Claim Fails. ................................. 6

    C. Each of the City's State Law Claims Lack Merit. ................................. 7

        1. The City's "Home Rule" Challenge Fails. .................................. 7

        2. The City's RHNA Allocation Claim Fails. ................................. 8

        3. The City's Separation of Powers Claim Fails. ............................ 8

        4. The City's RHNA Allocation Claim Fails. ................................. 8

        5. The City's CEQA Claim Fails. .................................................... 9

        6. The RHNA Laws Have a Rational Basis. ................................... 9

    D. The Case Should Be Dismissed Under *Younger* Abstention. ............. 10

    E. The City's Facial Vagueness Argument is Precluded. ......................... 10

III. CONCLUSION .................................................................................................. 10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Benton v. Maryland*,
    395 U.S. 784 (1969) ................................................................................... 5

*Bond v. Floyd*,
    385 U.S. 116 (1966) ................................................................................... 3

*Boquist v. Courtney*,
    32 F. 4th 764 (9th Cir. 2022) ..................................................................... 3

*Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank*,
    136 F.3d 1360 (9th Cir. 1998) ............................................................... 1, 2

*Burke v. Custom Marine Grp.*,
    847 F. App'x 578 (11th Cir. 2021) .......................................................... 10

*City of South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency*,
    625 F.2d 231 (9th Cir. 1980) ................................................................. 1, 2

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985) ................................................................................... 5

*F.C.C. v. Beach Comm'n, Inc.*,
    508 U.S. 307 (1993) ................................................................................... 6

*Fowler Packing Co., Inc. v. Lanier*,
    844 F.3d 809 (9th Cir. 2016) ..................................................................... 9

*Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.*,
    805 F.2d 1353 (9th Cir. 1986) ................................................................. 10

*Garcetti v. Ceballos*,
    547 U.S. 410 (2006) ................................................................................... 4

*Herrera v. City of Palmdale*,
    918 F.3d 1037 (9th Cir. 2019) ................................................................. 10

*Levald, Inc. v. City of Palm Desert*,
    998 F.2d 680 (9th Cir.1993) .................................................................... 10

*Nevada Comm'n on Ethics v. Carrigan*,
    564 U.S. 117 (2011) ............................................................................................... 3, 4

*Palko v. Connecticut*,
    302 U.S. 319 (1937) ..................................................................................................... 5

*Railroad Comm'n v. Rowan & Nichols Oil Co.*,
    311 U.S. 570 (1941) ..................................................................................................... 5

*River Vale Tp. v. Town of Orangetown*,
    403 F.2d 684 (2nd Cir. 1968) ...................................................................................... 4

*Trainor v. Hernandez*,
    431 U.S. 434 (1977) ................................................................................................... 10

*U.S. v. O'Brien*,
    391 U.S. 367 (1968) ..................................................................................................... 9

*W. Union Tel. Co. v. City of Richmond*,
    224 U.S. 160 (1912) ..................................................................................................... 7

*White v. Mass. Council of Const. Emps., Inc.*,
    460 U.S. 204 (1983) ..................................................................................................... 6

*Younger v. Harris*,
    401 U.S. 37 (1971) ..................................................................................................... 10

**State Cases**

*Buena Vista Gardens Apartments Ass'n v. City of San Diego Planning Dep't*,
    175 Cal. App. 3d 289 (1985) ....................................................................................... 7

*Cal. Renters Legal Advoc. & Educ. Fund v. City of San Mateo*,
    68 Cal. App. 5th 820 (2021) ........................................................................................ 7

*City of Coronado v. San Diego Ass'n of Gov'ts*.
    80 Cal. App. 5th 21 (2022) .......................................................................................... 7

*City of Irvine v. S. Cal. Ass'n of Gov'ts*,
    175 Cal.App.4th 506 (2009) .................................................................................... 5, 8

*Drouet v. Sup. Ct.*,
    31 Cal. 4th 583 (2003) ................................................................................................. 6

*Haytasingh v. City of San Diego*,
   66 Cal. App. 5th 429 (2021) ................................................................................... 2

*Nash v. City of Santa Monica*,
   37 Cal. 3d 97 (1984) ............................................................................................... 6

*Steen v. Appellate Div. of Sup. Ct.*,
   59 Cal. 4th 1045 (2014) .......................................................................................... 8

*Terminal Plaza Corp. v. City & Cnty. of San Francisco*,
   177 Cal. App. 3d 892 (1986) ................................................................................... 5

*White v. State*,
   88 Cal. App. 4th 298 (2001) ................................................................................... 9

*Zolly v. City of Oakland*,
   13 Cal. 5th 780 (2022) ............................................................................................ 5

**State Statutes**

California Government Code
   Section 65580 ........................................................................................................ 6
   Section 65584.05 .................................................................................................... 8

California Harbors & Navigation Code Section 650.1 ............................................... 2

## I. INTRODUCTION

As SCAG established in its opening brief, the City of Huntington Beach and its councilmembers (collectively "the City" or "Plaintiffs") lack standing to bring this action and accordingly the Court lacks subject matter jurisdiction to hear this case. Under the Ninth Circuit's *per se* rule articulated in *City of South Lake Tahoe v. Cal. Tahoe Reg'l Planning Agency* ("*Tahoe*") and its progeny, cities – both general law and charter – and their councilmembers are categorically precluded from challenging State laws on federal constitutional grounds. *Tahoe*, 625 F.2d 231, 233 (9th Cir. 1980). In its opposition, the City points to no authority to rebut this rule. Indeed, it fails to cite a single case where any city's federal constitutional claims were upheld against the State or any of its subdivisions. As such, dismissal of this case for lack of subject matter jurisdiction is mandated as a matter of law.

In any event, the City's individual federal and state claims are deficient. The City ignores most of SCAG's authority demonstrating that the City has failed to state any colorable claims, and instead invites the Court to consider irrelevant decisions, misguided concepts, and novel, baseless contentions. In sum, the City's entire complaint lacks merit and should be dismissed without leave to amend.

## II. ARGUMENT

### A. The City Lacks Standing to Assert Constitutional Challenges.

In its opening brief, SCAG explained that political subdivisions of the state, such as the City, lack Article III standing to bring federal constitutional claims against the State or other political subdivisions of the State such as SCAG. (SCAG's Motion to Dismiss ("Mot."), Dkt. 44, at 5-7.) In its opposition, the City strains, unsuccessfully, to distinguish the two key cases on this issue – *Tahoe* (625 F.2d at 233) and *Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank* ("*Burbank*"), 136 F.3d 1360, 1364 (9th Cir. 1998). The City instead offers an irrelevant California case discussing California's Harbors & Navigation Code. The City's contentions lack merit.

  The Ninth Circuit has long held that *Tahoe* establishes a *per se* rule that political subdivisions lack standing to challenge state law on constitutional grounds. *Burbank*, 136 F.3d at 1364 ["This court... has not recognized any exception to the per se rule"]. The City tries to distinguish *Tahoe* on the basis that it concerns a general law city, not a charter city. (Opp. at 17.) However, this claimed distinction – charter city versus general law city – was expressly contemplated and rejected in *Burbank* (which is controlling precedent). *Burbank*, 136 F.3d at 1364.

  The City also argues that the California decision *Haytasingh v. City of San Diego* confers standing to the City in this federal action. (Opp. at 16 (citing 66 Cal. App. 5th 429, 436 (2021)).) *Haytasingh*, however, is irrelevant. *Haytasingh* was a statutory construction case addressing the meaning of the term "subdivision of the state" as defined within California Harbors & Navigation Code § 650.1. The Court of Appeal concluded that the statutory term did not include any cities (both charter and general law cities), and instead only referred to counties. However, *Haytasingh* had nothing to do with federal standing jurisprudence, nor did it suggest that it was intended to address the Ninth Circuit's controlling decisions in *Tahoe* and *Burbank*. The City's suggestion that federal standing law depends on the meaning of a statutory term in the state's Harbors & Navigation code is absurd. But in any event, the *Haytasingh* court's interpretation of the statutory term was found to be misguided. The California legislature amended Harbors & Navigation Code § 650.1 in 2022 to state that "subdivisions of the state" *do* include all cities following the *Haytasingh* decision. Harb. & Nav. Code, § 650.1(c) (amended by Stats.2022, c. 203 (A.B.1682), § 1, eff. Jan. 1, 2023.).

  The remainder of the City's standing arguments – that its individual councilmembers have standing, and that Eleventh Amendment law applies (opp. at 13-15) – are meritless. First, the City fails to address SCAG's cases establishing that the alleged interests of the City's councilmembers are merely derivative of the City's interests, which is insufficient to confer standing. (Mot. at 6.) Second, the

City's proffered Eleventh Amendment authority – which concerns sovereign immunity – is inapplicable. Specifically, the City conflates the term "arm of the state" as construed in Eleventh Amendment cases with the term "political subdivision" used in federal standing jurisprudence, and argues that because the City is not an "arm of the state," it cannot be a "political subdivision" for purposes of standing to sue. (Opp. at 15-16.) However, the City points to no authority to suggest that the criteria for Eleventh Amendment immunity is synonymous with the criteria for being a subdivision of the state for purposes of standing. The City's attempt to comingle these areas of jurisprudence – especially in the face of controlling Ninth Circuit authority to the contrary – should be rejected.

**B.     The City's Federal Constitutional Claims Each Lack Merit.**

**1.     The City's First Amendment Claim Fails.**

The City concedes that a legislator's vote is not speech under First Amendment jurisprudence. (Opp. at 27.) However, relying on several inapposite cases – *Bond v. Floyd*, 385 U.S. 116 (1966) and *Boquist v. Courtney*, 32 F. 4th 764 (9th Cir. 2022) – the City contends that because its councilmembers would not sincerely believe in the truth of any such required vote and companion adoption of necessity findings, the councilmembers' First Amendment rights have been violated. (Opp. at 23-27.) The City is wrong.

*Bond* concerned how an elected official may raise a First Amendment retaliation claim against peer legislators who had excluded him from membership in the legislative body for statements he made criticizing the Vietnam War. *Boquist* concerned a state senator's First Amendment retaliation action against peer senators for their requirement that he provide 12-hour notice of his intent to enter the state capitol following statements he made about leaving the capitol to prevent a quorum. In other words, neither *Bond* nor *Boquist* related to whether a legislator's vote can ever constitute "speech" under the First Amendment, and neither of these cases purported to overrule *Nevada Comm'n on Ethics*, under which a legislator's vote is

not deemed First Amendment speech.

Indeed, the rule in *Nevada Comm'n on Ethics v. Carrigan*, 564 U.S. 117 (2011) provides a specific application of the more general rule that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006). Were it otherwise, government would have no power to tell its officials or entities to perform things in ways that the officials disagreed with. For example, an appeals court would be unable to order a lower court to make findings consistent with the appeal court's order without violating the First Amendment lest the judge personally disagrees with the higher court. That outcome – which the City's position logically implies – is not consistent with the law.

### 2. The City's Procedural Due Process Claim Fails.

SCAG established that the City has failed to allege a deprivation of a private protected interest, and that the City received adequate process. (Mot. at 10-11.) In its opposition, the City concedes that Due Process only protects private interests. (Opp. at 28.) However, the City argues that its right to engage in zoning *is* a "private interest" because the City is a charter city. The City further argues that the elimination of judicial review of the RHNA allocations, by itself, is a sufficient basis to find that the City was denied due process. (Opp. at 29-30.) Wrong.

The City offers no applicable authority in support of its assertion that the City's status as a charter city means its zoning determinations somehow become a private property right. Instead, the City points to a Second Circuit holding that municipal corporations can be "persons" under the Fourteenth Amendment. (Opp. at 29 (citing *River Vale Tp. v. Town of Orangetown*, 403 F.2d 684, 688 (2nd Cir. 1968) ("*River Vale*"). However, *River Vale* is irrelevant as it says nothing concerning the nature of a city's property rights under the Due Process clause, as the issue was not before the court.

Even if a private property interest were at stake (it's not), the City's sole contention is that the elimination of judicial review of an entity's RHNA allocation means that the RHNA Laws do not afford cities with sufficient process. (Opp. at 29.) However, the City fails to cite any cases to support this baseless claim. And, in any event, it is well settled that Due Process generally requires only that the plaintiff receive notice and a meaningful opportunity to respond. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Judicial review is unnecessary for a procedure to comport with due process. *Railroad Comm'n v. Rowan & Nichols Oil Co.*, 311 U.S. 570 (1941). Indeed, courts have held that the elimination of judicial review of a RHNA allocation under the RHNA Laws does not offend Due Process. *City of Irvine v. S. Cal. Ass'n of Gov'ts*, 175 Cal.App.4th 506, 520, 522 (2009) [describing "lengthy and extensive administrative procedure" for such challenges].

### 3. The City's Substantive Due Process Claim Fails.

In its opposition, the City argues that the rational basis test is inapplicable to its Due Process claim. It argues that strict scrutiny should instead apply because a "fundamental liberty interest" is at play involving the City's alleged "private property right" to engage in zoning. The City also argues that even if the rational basis test applied, the RHNA Laws lack a rational basis. Both arguments fail.

First, strict scrutiny is only implicated where legislation affects rights so fundamental that they require a more searching level of review. *Palko v. Connecticut*, 302 U.S. 319, 325 (1937), overruled on other grounds by *Benton v. Maryland*, 395 U.S. 784 (1969). It is well established that few rights rise to such level, and the cases cited by the City fail to establish that its authority to engage in zoning constitutes private property rights, much less "fundamental rights." Indeed, the courts in the cases cited by the City rejected the plaintiffs' requests to apply strict scrutiny and instead reviewed the challenged laws under a rational basis test. *Terminal Plaza Corp. v. City & Cnty. of San Francisco*, 177 Cal. App. 3d 892, 908 (1986), superseded on other grounds by *Zolly v. City of Oakland*, 13 Cal. 5th 780

(2022); *Nash v. City of Santa Monica*, 37 Cal. 3d 97, 103 (1984), superseded on other grounds by *Drouet v. Sup. Ct.*, 31 Cal. 4th 583 (2003).

Second, the City argues that the RHNA Laws lack a rational basis because they allegedly fail to result in the provision of more affordable housing. (Opp. at 31-32.) This entirely misses the point. In order to state a substantive Due Process claim under the rational basis test, a plaintiff must "negative *every* conceivable basis which might support [the law]." *F.C.C. v. Beach Comm'n, Inc.*, 508 U.S. 307, 315 (1993) (emph. supplied). The City's baseless contentions that defendants have to prove that the RHNA Laws actually provide more affordable housing therefore suggests a fundamental misunderstanding of the applicable law and standard for finding a violation of the rational basis test. Rather, rational basis review only requires a *conceivable* – not actual – legitimate government purpose. This standard is easily satisfied here because the California legislature expressly provided the rational basis for the RHNA Laws, namely the legislature's findings that the RHNA Laws are important to planning to accommodate and facilitate the development of more housing for the state. *See, e.g.* California Gov't Code § 65580.

### 4. The City's Commerce Clause Claim Fails.

SCAG has established that the City failed to allege or show that the RHNA Laws discriminate between out-of-state-interests and in-state interests, or that the burdens on interstate commerce are "clearly excessive" in relation to the local benefits, the requirements for a Commerce Clause claim. (Mot. at 13-14.)

In response, the City argues that because the State has purportedly "entered the market" by mandating that cities zone for additional housing, the State has "affect[ed]" and thereby impermissibly "interfered" with the market. (Opp. at 33.) The City does not offer any authority for this contention, nor bother to address SCAG's authorities. However, the City's sole argument – that the state has "entered the market" – is insufficient to state a Commerce Clause claim as a matter of law. *See White v. Mass. Council of Const. Emps., Inc.*, 460 U.S. 204, 207 (1983)

[Commerce Clause inapplicable where state participates in market]; *W. Union Tel. Co. v. City of Richmond*, 224 U.S. 160, 169 (1912) [Commerce Clause does not forbid state from requiring entities to build wiring underneath city streets]. This is because most (if not all) laws have *some* effect on interstate commerce. The relevant test, however, is whether such laws "intentionally discriminate against out-of-state interests" – which the City does not and cannot allege – or "excessively burden out-of-state interests in comparison to the putative local benefit" – which the City likewise fails to show. (Mot. at. 14.)

### C. Each of the City's State Law Claims Lack Merit.

#### 1. The City's "Home Rule" Challenge Fails.

In an effort to avoid the import of SCAG's cases, the City's tries to distinguish between substantive and process-related RHNA provisions. (Opp. at 34-36.) It is simply irrelevant, however, that some of the RHNA Laws might be "process oriented" and others "substance oriented." The relevant inquiry – for purposes of determining whether the RHNA Laws address a matter of statewide concern – is the general subject matter of the legislation.

As the Court of Appeal recognized, the RHNA Laws' objective of addressing the Legislature's finding of a statewide housing shortage is a matter of statewide concern. *Buena Vista Gardens Apartments Ass'n v. City of San Diego Planning Dep't*, 175 Cal. App. 3d 289, 306-07 (1985) [upholding RHNA Laws to home rule challenge]; *Cal. Renters Legal Advoc. & Educ. Fund v. City of San Mateo*, 68 Cal. App. 5th 820, 847-49 (2021) [same]. Indeed, the distinction the City invites the Court to make between procedural versus substantive provisions has already been considered and rejected by the California Court of Appeal in *City of Coronado v. San Diego Ass'n of Gov'ts*. 80 Cal. App. 5th 21, 41-42 (2022) [holding that purported distinction between "procedural" versus "substantive" challenge to RHNA Laws is meritless]. Here, as established by SCAG's cases, the objective of the RHNA Laws has been repeatedly found to be a matter of statewide concern.

## 2. The City's RHNA Allocation Claim Fails.

In a slight of hand, the City argues that it should be allowed to judicially challenge the specific allocation of its 13,368 number of housing units because it is challenging the RHNA laws generally. (Opp. at 36-37.) The City is wrong. The City's Sixth Cause of Action challenges the City's RHNA allocations **under the RHNA Laws themselves** (FAC at ¶ 188), which is statutorily precluded. *City of Irvine*, 175 Cal.App.4th at 511. The City makes no effort to contest this point.

## 3. The City's Separation of Powers Claim Fails.

The City does not address SCAG's authorities, nor does it address how the Legislature may have unlawfully delegated its authority. (Opp. at 37.) Instead, the City makes a new argument, that an unlawful delegation of authority has occurred because the housing allocation process under the RHNA Laws is allegedly quasi-legislative, executive, and/or judicial, and that this somehow "materially impairs" the functions of various branches of government. (Opp. at 37.) Yet, the City still fails to allege a claim as a matter of law because a separation of powers violation only occurs when one government branch usurps "to itself the core functions of another branch." *Steen v. Appellate Div. of Sup. Ct.*, 59 Cal. 4th 1045, 1053 (2014). None of the City's allegations show that SCAG's calculation of housing units usurps the core function of one branch of government or another. Indeed, the RHNA Laws specifically designate SCAG (and other similar councils of governments) as the entities responsible for allocating the regional housing numbers among their constituent jurisdictions. Cal. Gov't Code § 65584.05. This claim should be dismissed.

## 4. The City's RHNA Allocation Claim Fails.

The City ignores SCAG's authority and does not attempt to demonstrate how the challenged RHNA Laws fall within *any* of the three relevant categories for a law to be found an unconstitutional bill of attainder. (Opp. at 38.) Instead, the City's sole argument is that the RHNA Laws *must* be a bill of attainder because Governor

Newsom "began to call out Huntington Beach in press releases" before certain provisions of the RHNA Laws were passed. But even if this were true, it still does not satisfy the relevant test because the Governor is not the Legislature, and "calling out" Huntington Beach in press releases is insufficient to establish an "intent to punish" as a matter of law. *Fowler Packing Co., Inc. v. Lanier*, 844 F.3d 809, 818–19 (9th Cir. 2016) [single assembly member's comments did not evince intent].

### 5. The City's CEQA Claim Fails.

The City argues that because its councilmembers would not *sincerely* believe in any statement of overriding consideration – i.e., they would not sincerely believe that more housing justifies the RHNA-mandated revision to the City's Housing Element – that any such statement of overriding consideration would constitute a violation of CEQA. (Opp. at 39.) However, the City cites no authority for this novel proposition. There is in fact no "sincerity requirement" under CEQA. Indeed, it is well-established that the subjective views of legislators are generally irrelevant to the lawfulness of the resulting legislative action taken. *U.S. v. O'Brien*, 391 U.S. 367, 383 (1968) [legislative motive irrelevant to legality of statute].

### 6. The RHNA Laws Have a Rational Basis.

In its opposition, the City simply reiterates its allegations that the RHNA Laws constitute impermissible "special statutes" because they are not completely uniform in application and in the same manner to all counties in the state. (Opp. at 39-40.) But, as already explained, this is insufficient as a matter of law. The test to determine if a law constitutes an impermissible "special statute" is not whether the Legislature could have conceivably enacted a statute affecting every locality identically; rather, the test is whether the Legislature's singling out a locality has a rational basis. *White v. State*, 88 Cal. App. 4th 298, 305 (2001). If it does, no special statute exists. *Id*. The City does not rebut SCAG's arguments that there is a rational relationship between A.B. 1537 and the relevant counties. (Mot. at 22.)

### D. The Case Should Be Dismissed Under *Younger* Abstention.

The City argues that *Younger* abstention is inappropriate. As discussed below, its points are meritless. *First*, simply because *Younger v. Harris*, 401 U.S. 37 (1971) concerned a pending state criminal matter is irrelevant. *Younger* abstention has been applied in a legion of civil cases. *See, e.g., Fresh Int'l Corp. v. Agric. Lab. Rels. Bd.*, 805 F.2d 1353, 1360, n. 8 (9th Cir. 1986); *see also Trainor v. Hernandez*, 431 U.S. 434, 443 (1977). *Second*, the pending state action *is* sufficiently similar to this federal action. Although the State initially sued the City for its failure to comply with certain specific provisions of the RHNA Laws, the State has sought leave of the court to amend its claims to sue the City for failing to pass a compliant housing element – the very action that the City here seeks to forestall through this litigation. Finally, that SCAG is not a party in the state litigation is of no moment. *See, e.g., Herrera v. City of Palmdale*, 918 F.3d 1037, 1047 (9th Cir. 2019). The City ignores this authority. *Younger* abstention applies.

### E. The City's Facial Vagueness Argument is Precluded.

The City finally invites the Court to consider an entirely new facial challenge to the RHNA Laws on the grounds that they are unconstitutionally vague. (Opp. at 27.) This challenge is deficient as the City did not bring a separate count on this claim, nor do the City's generic allegations in the complaint under its due process counts provide sufficient notice that it is separately bringing a void for vagueness challenge. *See, e.g., Burke v. Custom Marine Grp.*, 847 F. App'x 578, 581 (11th Cir. 2021) [affirming dismissal where single count contained "distinct theories of liability" that "should be asserted independently"]. In any event, such claim would be barred by the 1-year limitations period for vagueness challenges. *See Levald, Inc. v. City of Palm Desert*, 998 F.2d 680, 687-88 (9th Cir.1993).

## III. CONCLUSION

For the foregoing reasons, SCAG's Motion should be granted and the First Amended Complaint should be dismissed without leave to amend.

| | |
|---|---|
| DATED: June 22, 2023 | MEYERS NAVE |
| | By:    /s/  Deborah J. Fox<br>DEBORAH J. FOX<br>DAVID MEHRETU<br>KRISTOF D. SZOKE<br>Attorneys for Defendant<br>SOUTHERN CALIFORNIA ASSOCIATION OF GOVERNMENTS |

5383931